WENDY J. OLSON, Bar No. 7634
wendy.olson@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702
Telephone: 208.389.9000

WENDY S. HEIPT (admitted pro hac vice)
wheipt@legalvoice.org
LEGAL VOICE
907 Pine Street, #500
Seattle, WA 98101
Telephone: 206.954.6798

KELLY O'NEILL, Bar No. 9303
koneill@legalvoice.org
LEGAL VOICE
P.O. Box 50201
Boise, ID 83705
Telephone: 208.649.4942

JAMILA A. JOHNSON (admitted pro hac vice)
jjohnson@lawyeringproject.org
THE LAWYERING PROJECT
3157 Gentilly Blvd. #2231
New Orleans, LA 70122
Telephone: 347.706.4981

PAIGE SUELZLE (admitted pro hac vice)
psuelzle@lawyeringproject.org
THE LAWYERING PROJECT
2501 SW Trenton Street #1097
Seattle, WA 98106
Telephone: 347.515.6073

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LOURDES MATSUMOTO, the NORTHWEST ABORTION ACCESS FUND, and the INDIGENOUS IDAHO ALLIANCE, <br><br> Plaintiffs, <br><br> v. <br><br> RAÚL LABRADOR, in his capacity as the Attorney General for the State of Idaho, <br><br> Defendant. | Case No. 1:23-cv-00323-DKG <br><br> MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION ....................................................................................................... 1

II. FACTUAL BACKGROUND ....................................................................................... 2

    A.    Idaho Enacts Its Abortion Travel Ban. ................................................................. 2

    B.    Plaintiffs Are Unable to Exercise Their Fundamental Rights Because of Threat of Prosecution Under Idaho Code § 18-623. ................................................. 3

    C.    The Abortion Travel Ban Has Harmful Effects ..................................................... 6

III. ARGUMENT ............................................................................................................... 8

    A.    Plaintiffs Are Likely to Succeed on Their Claims That Idaho Code § 18-623 Is Void for Vagueness and Violates Their First Amendment Rights. ................... 9

        1.    Plaintiffs Have Standing. ............................................................................ 9

        2.    Defendant's Enforcement of § 18-623 Violates Plaintiffs' First Amendment Rights of Free Speech and Association ............................... 10

        3.    Defendant's Enforcement of Idaho Code § 18-623 Violates Plaintiffs' Fourteenth Amendment Due Process Rights Because § 18-623 Does Not Provide Fair Notice of the Conduct It Prohibits and Invites Arbitrary Enforcement. ........................................................................... 13

    B.    Plaintiffs Will Be Irreparably Harmed by Violation of Their Constitutional Rights. .................................................................................................................. 17

    C.    The Balance of Equities and Public Interest Favors an Injunction ..................... 18

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION - i

120345273.1 0099880-01499

# TABLE OF AUTHORITIES

**Page**

## Cases

*All. for Wild Rockies v. Pierson*,
  550 F. Supp. 3d 894 (D. Idaho 2021), *vacated on other grounds*, 68 F.4th 475
  (9th Cir. 2023)......................................................................................................19

*Am. Beverage Ass'n v. City & County of San Francisco*,
  916 F.3d 749 (9th Cir. 2019) .............................................................................19

*Animal Legal Def. Fund v. Wasden*,
  878 F.3d 1184 (9th Cir. 2018) ...........................................................................10

*Ashcroft v. ACLU*,
  535 U.S. 564 (2002)............................................................................................10

*Bigelow v. Virginia*,
  421 U.S. 809 (1975)............................................................................................11

*Boy Scouts of Am. v. Dale*,
  530 U.S. 640 (2000)............................................................................................12

*Cal. Tchrs. Ass'n v. State Bd. of Educ.*,
  271 F.3d 1141 (9th Cir. 2001) ...........................................................................14

*Coffman v. Queen of Valley Med. Ctr.*,
  *895 F.3d 717 (9th Cir. 2018)* ...............................................................................9

*Diamontiney v. Borg*,
  918 F.2d 793 (9th Cir. 1990) .............................................................................17

*Drakes Bay Oyster Co., v. Jewell*,
  747 F.3d 1073 (9th Cir. 2014) ..............................................................................9

*E. Bay Sanctuary Covenant v. Trump*,
  950 F.3d 1242 (9th Cir. 2020) .......................................................................9, 10

*Elrod v. Burns*,
  427 U.S. 347 (1976)............................................................................................17

*Farris v. Seabrook*,
  677 F.3d 858 (9th Cir. 2012) .............................................................................17

*Gordon v. Holder*,
  721 F.3d 638 (D.C. Cir. 2013) ...........................................................................18

# TABLE OF AUTHORITIES

**Page**

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972)..........................................................................................14

*Hecox v. Little*,
  479 F. Supp. 3d 930 (D. Idaho 2020) ....................................................................9

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010).............................................................................................13

*Idaho v. Coeur d'Alene Tribe*,
  49 F. Supp. 3d 751 (D. Idaho 2014) .....................................................................9

*Isaacson v. Brnovich*,
  610 F. Supp. 3d 1243 (D. Ariz. 2022) ..................................................................17

*Johnson v. United States*,
  576 U.S. 591 (2015)..........................................................................................13

*Jordan v. De George*,
  341 U.S. 223 (1951)..........................................................................................14

*Klein v. City of San Clemente*,
  584 F.3d 1196 (9th Cir. 2009) .......................................................................10, 17

*Kolender v. Lawson*,
  461 U.S. 352 (1983)..........................................................................................13

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..........................................................................................10

*McCormack v. Heideman*,
  900 F. Supp. 2d 1128 (D. Idaho 2013) .................................................................18

*Moses v. Lake*,
  No. 3:22-cv-0063, 2023 WL 4546242 (D.V.I. July 14, 2023) ..................................9

*Recycle for Change v. City of Oakland*,
  856 F.3d 666 (9th Cir. 2017) ..............................................................................9

*Reed v. Town of Gilbert, Ariz.*,
  576 U.S. 155 (2015)..........................................................................................12

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984)..........................................................................................12

# TABLE OF AUTHORITIES

**Page**

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995) ........................................................................................12

*Spence v. Washington*,
    418 U.S. 405 (1974) ........................................................................................11

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ...........................................................................8

*Texas v. Johnson*,
    491 U.S. 397 (1989) ........................................................................................11

*Tingley v. Ferguson*,
    47 F.4th 1055 (9th Cir. 2022) .........................................................................13

*United States v. Idaho*,
    623 F. Supp. 3d 1096 (D. Idaho 2022) ..........................................................16

*United States v. Stevens*,
    559 U.S. 460 (2010) ........................................................................................10

*Winter v. Nat. Res. Def. Council, Inc.*,
    *555 U.S. 7 (2008)* ..........................................................................................9

**Statutes**

Idaho Code § 18-306 .................................................................................................15

Idaho Code § 18-604 ...................................................................................................2

Idaho Code § 18-609A(1)(b) .......................................................................................7

Idaho Code § 18-622(1) ...............................................................................................1

Idaho Code § 18-622(2) ...............................................................................................3

Idaho Code § 18-623 ........................................................................................... passim

Idaho Code § 18-623(1) .............................................................................................12

Idaho Code § 18-623(2) ...............................................................................................2

Idaho Code § 18-623(4) .........................................................................................3, 17

# TABLE OF AUTHORITIES

**Page**

**Regulations**

*ACOG Committee Opinion No. 554: Reproductive and Sexual Coercion*, 121
  Obstetrics & Gynecology 411, 411-15 (2013 *reaffirmed* 2022)..................................................8

**Constitutional Provisions**

Idaho House Bill 242 ...........................................................................................................2

First Amendment to the U.S. Constitution .......................................................................... passim

Fourteenth Amendment to the U.S. Constitution..........................................................10, 11, 13

**Other Authorities**

Ann L. Coker, *Does Physical Intimate Partner Violence Affect Sexual Health? A
  Systematic Review*, 8 Trauma, Violence, & Abuse 149, 151-53 (2007)...................................8

Elizabeth Miller et al., *Pregnancy Coercion, Intimate Partner Violence, and
  Unintended Pregnancy*, 81 Contraception 316-17....................................................................8

https://www.acog.org/-/media/project/acog/acogorg/clinical/files/committee-
  opinion/articles/2013/02/reproductive-and-sexual-coercion.pdf .............................................8

https://www.reuters.com/article/us-health-teens-abortions/parental-notification-law-
  appears-to-limit-delay-abortions-idUSKBN1EJ0QO;...............................................................7

Idaho Reports (Apr. 5, 2023),
  https://blog.idahoreports.idahoptv.org/2023/04/05/abortion-trafficking-bill-
  signed-despite-washington-governors-plea/ ............................................................................2

KTVB.com (Mar. 10, 2023), https://www.ktvb.com/article/news/health/planned-
  parenthood-ontario-oregon-clinic-soft-opens-for-staff-training/277-972e8464-
  89b1-4685-bd93-1e8c42c6d032 ............................................................................................6

The Seattle Times (June 28, 2023), https://www.seattletimes.com/seattle-
  news/politics/in-the-wa-v-idaho-abortion-wars-data-shows-idaho-is-losi ..............................6

# TABLE OF AUTHORITIES

**Page**

Sophia Naide, Guttmacher Institute, "Parental Involvement" Mandates for Abortion Harm Young People, But Policymakers Can Fight Back (Feb. 19, 2020), https://www.guttmacher.org/article/2020/02/parental-involvement-mandates-abortion-harm-young-people-policymakers-can-fight-back#:~:text=Research%20also%20shows%20that%20most,people%20by%20delaying%20medical%20care.HYPERLINK "<https://www.reuters.com/article/us-health-teens-abortions/parental-notification-law-appears-to-limit-delay-abortions-dUSKBN1EJ0QO >"https://www.reuters.com/article/us-health-teens-abortions/parental-notification-law-appears-to-limit-delay-abortions-idUSKBN1EJ0...........................................7

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION - vi

120345273.1 0099880-01499

Plaintiffs Lourdes Matsumoto, Northwest Abortion Access Fund ("NWAAF"), and Indigenous Idaho Alliance ("IIA") seek a Temporary Restraining Order, or, in the alternative, a Preliminary Injunction, enjoining Defendant Raúl Labrador from enforcing Idaho Code § 18-623.

## I.  INTRODUCTION

Idaho has some of the most oppressive criminal abortion statutes in the United States. Under its Total Abortion Ban, "[e]very person who performs or attempts to perform an abortion . . . commits the crime of criminal abortion." Idaho Code § 18-622(1). Understanding that many of its neighboring states recognize a person's right to control their reproductive health, that Idahoans in need of reproductive health care services that might include abortion would travel to these states, and that other Idahoans and out-of-state reproductive health advocacy organizations would assist Idahoans obtain lawful abortion health care outside of Idaho, the Idaho Legislature acted again.

This time, through Idaho Code § 18-623, Idaho criminalized conduct by adults who assist pregnant minors in receiving abortion care. Apparently aware that they cannot control the availability of abortions (or receipt of medications used in medical abortions) in other states, Idaho instead made it unlawful to provide an unclear amount of undefined assistance to minors, including travel assistance within Idaho provided to help minors reach or cross Idaho's borders to access legal health care. Ignoring that some minors may seek an abortion because they were sexually abused by a parent or guardian, that they have consulted with trusted adults who support their position, or that they are actual victims of human trafficking, Idaho instead seeks to stop pregnant minors from reaching or crossing state lines to receive legal abortion health care.

The statute is unconstitutional. It is poorly written. It is vague and unclear in the conduct it prohibits. It infringes on First Amendment rights to speak about abortion, and to associate and to engage in expressive conduct, including providing monies, transportation, and other support for

pregnant minors traveling within and outside of Idaho to access out-of-state legal abortion care. Plaintiffs are organizations that have in the past assisted pregnant Idaho minors obtain abortions in states where it is lawful and seek to continue assisting pregnant Idaho minors obtain abortion care, and an individual who works with minor survivors and the advocates that assist them and would like to provide that service in the future. This Court should enjoin the statute's enforcement.

## II.  FACTUAL BACKGROUND

### A.    Idaho Enacts Its Abortion Travel Ban.

The Abortion Travel Ban, House Bill 242 ("H.B. 242"), was signed into law on April 5, 2023. Governor Brad Little and Representative Barbara Ehardt attempted to justify H.B. 242 as a parental consent bill. Governor Little wrote that the law "seeks only to prevent unemancipated minor girls from being taken across state lines for an abortion without the knowledge and consent of her parent or guardian."[1] During a March 27, 2023, Senate State Affairs Committee hearing, Representative Ehardt testified that "it's all about parental permission, taking a minor from Idaho and trafficking that minor to another state to receive an abortion." Declaration of Wendy J. Olson ("Olson Decl."), ¶2, Ex. 1. Whether a parent, parents, or guardian of the pregnant minor consents to the activity is not an element of the offense under Idaho Code § 18-623, however. Parental consent is only an affirmative defense asserted by a person charged under the statute, after the charges are brought, just like any affirmative defense. I.C. § 18-623(2).

H.B. 242 went into effect May 5, 2023. It provides that:

> (1) An adult who, with the intent to conceal an abortion from the parents or guardian of a pregnant, unemancipated minor, either procures an abortion, as described in section 18-604, Idaho Code, or obtains an abortion-inducing drug for the pregnant minor to use for an abortion by recruiting, harboring, or transporting the pregnant minor within this state

---

[1] Ruth Brown, 'Abortion trafficking' bill signed, despite Washington governor's plea, Idaho Reports (Apr. 5, 2023), https://blog.idahoreports.idahoptv.org/2023/04/05/abortion-trafficking-bill-signed-despite-washington-governors-plea/ (citation omitted).

commits the crime of abortion trafficking. As used in this subsection, the terms "procure" and ""obtain" shall not include the providing of information regarding a health benefit plan.

(2) It shall be an affirmative defense to a prosecution under subsection (1) of this section that a parent or guardian of the pregnant minor consented to trafficking of the minor.

Idaho Code § 18-623.

Idaho Attorney General Raúl Labrador has the sole discretion to prosecute a person for a violation of the statute if the authorized prosecuting attorney refuses to do so. I.C. § 18-623(4). He has made clear that he is willing to enforce Idaho criminal abortion statutes even where an abortion occurs in another state. In a now "rescinded" legal opinion letter dated March 27, 2023, he stated that medical professionals who refer pregnant patients across state lines for abortions violate Idaho Code § 18-622(2), Idaho's Total Abortion Ban. Olson Decl., ¶3, Ex. 2. He also opined that the Abortion Travel Ban is constitutional. *Id.*, ¶4, Ex. 3.

**B.     Plaintiffs Are Unable to Exercise Their Fundamental Rights Because of Threat of Prosecution Under Idaho Code § 18-623.**

Plaintiffs are organizations with long histories of assisting pregnant persons seeking abortion care, including minors, and an individual with a long history of working with sexual violence survivors, including minors, and with advocates who assist pregnant minors. Declaration of Lourdes Matsumoto ("Matsumoto Decl."), ¶¶22-24; Declaration of Megan Kovacs ("Kovacs Decl."), ¶¶4-9; Declaration of tai simpson ("simpson Decl."), ¶¶37, 38. They wish to continue providing these services to pregnant Idaho minors but are uncertain what conduct may run afoul of Idaho Code § 18-623. Matsumoto Decl., ¶¶26, 27, 39, 42, 53; Kovacs Decl., ¶30; simpson Decl., ¶¶58-59.

Plaintiff Matsumoto is an attorney who works for a non-profit that provides emergency assistance, counseling, and resources to victims of domestic and sexual violence. Matsumoto Decl., ¶¶8, 10, 11. She participates in trainings and provides advice on how pregnant people, including minors, can legally access abortions. *Id.*, ¶¶28, 30-33. She is a trusted adult whom others have turned

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION - 3

to with questions regarding how much help, advice, and support they can provide to pregnant minors in Idaho. *Id.*, ¶¶37, 38. Plaintiff Matsumoto would like to provide information and options counseling to pregnant people, including pregnant minors, about abortion. *Id.*, ¶¶11, 47. She would also like to assist minors obtain abortions in states where abortion is legal, including by transporting them or assisting them obtain transportation from Idaho to those states. *Id.*, ¶48. Plaintiff Matsumoto fears prosecution under the Abortion Travel Ban. *Id.* Due to the proximity of her residence to the Oregon border, Plaintiff Matsumoto would like to provide temporary shelter for pregnant minors within Idaho who are traveling to obtain reproductive counseling and abortion care in states where that care remains legal, whether those minors' parents know or do not know. *Id.*, ¶3, 49. Plaintiff Masumoto has contributed financially to organizations that practically support pregnant minors, including those in Idaho, access abortion care, whether or not those minors' parents or guardian are aware of those actions, and she would like to continue to provide this support. *Id.*, ¶50. Due to the lack of clarity in Idaho Code § 18-623, she is concerned that even this activity may subject her to criminal prosecution. *Id.* Plaintiff Matsumoto would also like to provide clear advice and support to organizations assisting pregnant minors who are domestic violence and sexual assault survivors and to minors themselves but is currently unable to do so. *Id.*, ¶51.

Plaintiff NWAAF is a non-profit organization composed of a working board, paid staff, and trained volunteers. Kovacs Decl., ¶4. NWAAF provides emotional, financial, logistical, practical, and informational assistance to pregnant persons who may need or choose to consider abortion. *Id.* NWAAF is the only independent abortion fund in the Pacific Northwest and covers the largest geographic area of any abortion fund in the United States. *Id.*, ¶7. Its work includes booking and paying for bus tickets, plane tickets, and ride shares, and providing volunteers to drive patients to abortion appointments in states where abortion is legal. *Id.*, ¶15. NWAAF also provides food

assistance, funding to abortion providers for their work, and lodging assistance. *Id.*, ¶¶16-17. NWAAF provides this assistance to adults and minors in Idaho. *Id.*, ¶17. These minors' parents or guardians may or may not know about or consent to these actions. *Id.*, ¶19.

IIA is an Idaho non-profit organization that is centered around asserting the sovereignty of all Indigenous people. IIA's work serves the five tribes whose traditional, usual, and accustomed lands encompass territory within Idaho, and whose traditional, usual, and accustomed lands are often recognized as transecting and incorporating land within the U.S. state/Canadian provincial boundaries of Washington, Idaho, Montana, Nevada, Utah, Wyoming, California, British Columbia, and Alberta ("the region"). simpson Decl., ¶¶9-11. IIA co-founder and organizer tai simpson and others affiliated with IIA have provided pregnant people, including minors, with reproductive health care information, including information about abortion. *Id.,*¶38. They have coordinated the travel of pregnant people, including minors, from locations across the region, including Idaho, to and across state lines to access abortion, and have provided financial assistance. *Id.*, ¶¶41, 43. These minors' parents or guardians may or may not have been aware of these actions. *Id.*, ¶¶39, 50.

Both NWAAF and IIA are funded by donors committed to supporting their mission. Kovacs Decl., ¶¶24-26; simpson Decl., ¶45. All Plaintiffs associate with pregnant minors as a show of solidarity, communicating a message to minors who find themselves pregnant. That message is often that minors are not alone. Plaintiffs' support also communicates a message to those who may seek to isolate and abuse minors that these minors will have the support of trusted adults. Matsumoto Decl., ¶16; Kovacs Decl., ¶38; simpson Decl., ¶¶55-57.

**C.      The Abortion Travel Ban Has Harmful Effects.**

Because of Idaho's Total Abortion Ban, the number of in-state abortions has declined, but out-of-state health care providers who offer abortion care have seen a dramatic increase in patients coming from Idaho for abortions.[2] This places a strain on providers in states where abortion is legal.[3]

Plaintiff NWAAF likewise experienced an increase in demand for its assistance for those seeking out-of-state abortion care after the *Dobbs* decision. It has seen a 149% increase in its travel expenditures and a 46% increase in its abortion care funding expenditures, all of which help pay for the transportation and other support that pregnant people need to access safe and legal abortions. Kovacs Decl., ¶¶33, 35. NWAAF has seen a 146% increase in travel requests from Idaho residents in the last year. *Id.*, ¶34. As a result of these requests, in the last year, NWAAF provided assistance to 205 Idahoans, some of whom were minors. *Id.*, ¶18.

Since the Abortion Travel Ban went into effect on May 5, 2023, Plaintiff Matsumoto has received even more questions about what remains legal. This includes questions about what information can be given to minors or to those who want to assist pregnant minors, and she is uncertain what the statute prohibits. Matsumoto Decl., ¶¶33-36. If adults cannot assist pregnant minors access safe abortion care out of state, and if pregnant minors cannot access abortion care, the Abortion Travel Ban will force some minors to terminate their unwanted pregnancies outside a clinical setting. *Id.*, ¶44.

---

[2] Danny Westneat, In the WA v. Idaho abortion wars, data shows Idaho is losing, The Seattle Times (June 28, 2023), https://www.seattletimes.com/seattle-news/politics/in-the-wa-v-idaho-abortion-wars-data-shows-idaho-is-losing; Andrew Baertlein, Planned Parenthood 'soft opens' Ontario clinic for staff training, KTVB.com (Mar. 10, 2023), https://www.ktvb.com/article/news/health/planned-parenthood-ontario-oregon-clinic-soft-opens-for-staff-training/277-972e8464-89b1-4685-bd93-1e8c42c6d032.

[3] *Id.*

Although many minors faced with an unintended pregnancy choose to involve their parents, others do not. Some minors do not have access to their parents, and some are afraid to anger or disappoint their parents. Others face the threat of violence in their homes. For many minors, it is best to seek help from an adult who is not a parent or guardian and who can provide the trust-based aid they need. simpson Decl., ¶51. *Requiring* parental involvement for abortion care can increase the risk of harm or delay care.[4] When abortion was a recognized constitutional right, Idaho had a judicial bypass that allowed pregnant minors to obtain abortions without parental consent to address these potential harms. I.C. § 18-609A(1)(b). If a pregnant minor in Idaho cannot go to a parent, cannot seek judicial bypass, and cannot seek help from a trusted adult (who fears prosecution), to whom can they turn? For these reasons, Plaintiffs, who wish to remain in positions of trust with the minors they serve, do not seek parental consent when they provide assistance to pregnant minors. Matsumoto Decl., ¶¶43, 46; Kovacs Decl., ¶19; simpson Decl., ¶39.

The risk of abuse is especially acute for Black, Indigenous, People of Color (BIPOC), and LGBTQ+ communities. *See* simpson Decl., ¶¶16, 17. The Abortion Travel Ban will disproportionately negatively impact these communities, which already face travel barriers to accessing health care. *Id.*, ¶¶22, 24, 26, 30, 32-34. Plaintiffs have provided, and wish to continue providing, assistance to pregnant Idaho minors in all communities, including historically marginalized communities. Matsumoto Decl., ¶45; Kovacs Decl., ¶37; simpson Decl., ¶40.

---

[4] Sophia Naide, Guttmacher Institute, "Parental Involvement" Mandates for Abortion Harm Young People, But Policymakers Can Fight Back (Feb. 19, 2020), https://www.guttmacher.org/article/2020/02/parental-involvement-mandates-abortion-harm-young-people-policymakers-can-fight-back#:~:text=Research%20also%20shows%20that%20most,people%20by%20delaying%20medical%20care.HYPERLINK "https://www.reuters.com/article/us-health-teens-abortions/parental-notification-law-appears-to-limit-delay-abortions-dUSKBN1EJ0QO" "https://www.reuters.com/article/us-health-teens-abortions/parental-notification-law-appears-to-limit-delay-abortions-idUSKBN1EJ0QO;

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION - 7

The law also negatively and disproportionately impacts victims of Intimate Partner Violence ("IPV"), who are often the subject of "unwanted or coercive pregnancy."[5] Reproductive coercion can involve using rape to force victims into unwanted pregnancies to increase dependency. It can involve interfering with a victim's contraceptive use, removing prophylactics during sex without consent, forcibly removing internal-use contraceptives, or retaliating for contraceptive use.[6] IIA and NWAAF have experience working with pregnant minors, some of whom may be victims of IPV and coercive pregnancy, including by helping them access legal abortion care, but they will not be able to continue doing so for fear of prosecution. Kovacs Decl., ¶¶11, 14; simpson Decl., ¶¶17, 19, 22, 40, 59. Others who work with this population, including domestic and sexual violence advocates, cannot reasonably be expected to provide critical victim support, especially when those services include providing practical and actionable advice to pregnant young victims, without fear of prosecution under Idaho Code § 18-623. Matsumoto Decl., ¶¶35, 40.

## III.  ARGUMENT

Plaintiffs are entitled to a Temporary Restraining Order or, in the alternative, a Preliminary Injunction, which are governed by identical standards. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). For either, a moving party must show "(1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and

---

[5] Elizabeth Miller et al., *Pregnancy Coercion, Intimate Partner Violence, and Unintended Pregnancy*, 81 Contraception 316–17; *see also ACOG Committee Opinion No. 554: Reproductive and Sexual Coercion*, 121 Obstetrics & Gynecology 411, 411–15 (2013 *reaffirmed* 2022), https://www.acog.org/-/media/project/acog/acogorg/clinical/files/committee-opinion/articles/2013/02/reproductive-and-sexual-coercion.pdf.

[6] Ann L. Coker, *Does Physical Intimate Partner Violence Affect Sexual Health? A Systematic Review*, 8 Trauma, Violence, & Abuse 149, 151–53 (2007); *see also* Miller et al., *supra* note 6, at 319.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION - 8

(4) that an injunction is in the public interest." *Idaho v. Coeur d'Alene Tribe*, 49 F. Supp. 3d 751, 762 (D. Idaho 2014) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Coffman v. Queen of Valley Med. Ctr.*, 895 F.3d 717, 725 (9th Cir. 2018). "Where, as here, 'the government is a party, these last two factors merge.'" *Hecox v. Little*, 479 F. Supp. 3d 930, 971 (D. Idaho 2020) (quoting *Drakes Bay Oyster Co., v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The court may apply a sliding scale test, balancing the elements of the preliminary injunction standard "such that a stronger showing of one element may offset a weaker showing of another." *Recycle for Change v. City of Oakland*, 856 F.3d 666, 669 (9th Cir. 2017) (citation omitted). Injunctive relief is particularly important in cases, like this one, where later relief could not make Plaintiffs whole again, should they be prosecuted. *See Moses v. Lake*, No. 3:22-cv-0063, 2023 WL 4546242 (D.V.I. July 14, 2023).

**A.      Plaintiffs Are Likely to Succeed on Their Claims That Idaho Code § 18-623 Is Void for Vagueness and Violates Their First Amendment Rights.**

Plaintiffs are likely to succeed on their claims that Idaho Code § 18-623 is void for vagueness and infringes on their First Amendment rights to associate freely with each other and with pregnant Idahoans; to engage in expressive conduct, including providing funding or practical support for pregnant minors traveling to access out-of-state services that are legal where rendered; and to receive and provide information on specific content – abortion care. Thus, this Court should enjoin Defendant from enforcing Idaho Code § 18-623 pending the outcome of this action.

**1.      Plaintiffs Have Standing.**

To establish standing, a plaintiff must demonstrate "that (1) they have suffered an injury-in-fact" that is "'concrete and particularized' and 'actual and imminent,' (2) the alleged injury is 'fairly traceable' to the defendants' conduct, and (3) it is 'more than speculative' that the injury is judicially redressable." *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1265 (9th Cir. 2020) (quoting

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Organizations can assert standing on behalf of their own members or in their own right." *Id.*

Plaintiffs easily satisfy these tests. Defendant's enforcement of Idaho Code § 18-623 will effectively bar the Plaintiffs and their constituents from continuing to assist pregnant minors obtain lawful abortion care in Idaho's neighboring states. They must choose between providing support, travel assistance, financial assistance, and information to pregnant minors in Idaho, and thereby risking criminal prosecution, and stopping these constitutionally protected activities altogether.

Thus, Plaintiffs will suffer imminent and concrete injuries to their rights protected by both the First Amendment and the Fourteenth Amendment's Due Process Clause. *See Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009) (recognizing loss of First Amendment freedoms as a cognizable harm). In addition, these injuries are fairly traceable to Defendant's enforcement of Idaho Code § 18-623 and would be redressed by an order enjoining enforcement.

### 2. Defendant's Enforcement of § 18-623 Violates Plaintiffs' First Amendment Rights of Free Speech and Association.

The First Amendment to the U.S. Constitution, applied to the states through the Fourteenth Amendment, guarantees the rights to free speech, assembly, association, and petition. U.S. Const. amends. I, XIV; *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1193 (9th Cir. 2018). The "First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)).

Plaintiffs have First Amendment rights to associate freely with each other and with pregnant Idahoans and to engage in speech and expressive conduct, including by providing information, funding, or practical support for pregnant Idahoans traveling to access out-of-state abortion care that is legal where rendered. The Abortion Travel Ban infringes on each of these First Amendment rights.

First, Plaintiffs' provision of information regarding abortion access to pregnant persons in Idaho, including pregnant minors, is speech and is protected by the First Amendment. *See Bigelow v. Virginia*, 421 U.S. 809, 824-25 (1975) (overturning conviction of Virginia newspaper editor for publishing advertisements for lawful abortion care in New York). The First Amendment does not permit Idaho to prohibit or criminalize speech providing information about conduct legal in another state just because it is illegal in Idaho. Plaintiffs provide, and wish to continue to provide, pregnant minors, and adults who help them, with information and advice regarding reproductive options, including abortion, where abortion is available, where it is legal, and how and from whom to obtain transportation and other support. Kovacs Decl., ¶¶12, 14-17, 21; simpson Decl., ¶40; Matsumoto Decl., ¶43. They fear that continuing to do so could subject them to prosecution under Idaho Code § 18-623. Kovacs Decl., ¶¶20-23, 37; simpson Decl., ¶¶58, 59; Matsumoto Decl., ¶¶54, 55. Banning speech on the basis of a legal intended purpose is a violation of all Plaintiffs' free speech rights.

Second, Idaho Code § 18-623 infringes on Plaintiffs' First Amendment expressive conduct rights, including their rights to express themselves through monetary support. In *Texas v. Johnson*, 491 U.S. 397 (1989), the U.S. Supreme Court recognized that "conduct may be 'sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.'" *Id.* at 404 (quoting *Spence v. Washington*, 418 U.S. 405, 409 (1974)). To determine whether conduct is entitled to First Amendment protection, courts consider whether: (1) the actor intended to convey a particularized message, and (2) it was likely that the message would be understood by those who viewed it. *Id.* (citing *Spence*, 418 U.S. at 410-11).

Plaintiffs' activities are expressive conduct. Plaintiffs' assistance to pregnant minors by supplying travel money or providing direct assistance conveys a message of support for pregnant minors seeking to obtain lawful abortion care. Kovacs Decl., ¶¶9-11; simpson Decl., ¶¶55-57;

Matsumoto Decl., ¶¶48, 50, 54. Plaintiffs' behavior in providing accommodations, transport or other support also conveys a clear message of support for abortion itself. That message is understood by those who observe the conduct, which is why the Idaho Legislature sought to punish it.

Third, § 18-623 infringes on Plaintiffs' First Amendment rights of association. The U.S. Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984); *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647-48 (2000). "This right is crucial in preventing the majority from imposing its views on groups that would rather express other, perhaps unpopular, ideas." *Boy Scouts of Am.*, 530 U.S. at 647-48. As it is intended to do, § 18-623 chills Plaintiffs from associating with pregnant minors and with their own organizational volunteers.

Idaho Code § 18-623 has and will continue to have a chilling impact on NWAAF's and IIA's ability to uphold their missions. It may also undermine their relationships with donors and members and their ability to recruit and retain volunteers. Kovacs Decl., ¶¶27-29; simpson Decl., ¶¶45-48. It prevents all Plaintiffs from associating with each other and with pregnant minors for the purpose of expressing their affirmation of every pregnant person's right of self-determination.

Fourth, Idaho Code § 18-623 is impermissibly content based. The government may not regulate speech because of its message, ideas, subject matter, or content, and laws that do so are presumptively unconstitutional. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). Indeed, speech restrictions that target specific views taken by speakers on a subject (rather than targeting all views on a given subject) are particularly egregious. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). Idaho Code § 18-623(1) impermissibly regulates the content of the speech because it includes a carve out for certain speech related to abortion care. It states that "[a]s

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION - 12

120345273.1 0099880-01499

used in this subsection, the terms 'procure' [an abortion] and 'obtain' [an abortion-inducing drug] shall not include the providing of information regarding a health benefit plan." In other words, adults who discuss how to procure an abortion or obtain an abortion-inducing drug in the context of a health benefit plan are not subject to the statute. But that same adult could not provide that same information when discussing how to procure an abortion or obtain an abortion-inducing drug in a conversation that did not focus on a health benefit plan. Thus, Idaho Code § 18-623 impermissibly targets Plaintiffs' speech and expressive conduct because of the message it communicates. It criminalizes Plaintiffs' direct assistance in support of pregnant minors' choice to have an abortion precisely because the expressive conduct supports abortions and abortion care.

Because of the fundamental nature of First Amendment rights, state-imposed restrictions on them are subject to strict scrutiny, which requires the government to prove that the restriction is narrowly tailored to serve a compelling state interest. This statute does not meet that test. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 27-28 (2010).

**3.    Defendant's Enforcement of Idaho Code § 18-623 Violates Plaintiffs' Fourteenth Amendment Due Process Rights Because § 18-623 Does Not Provide Fair Notice of the Conduct It Prohibits and Invites Arbitrary Enforcement.**

The government violates the Fourteenth Amendment's due process guarantee through a criminal law that is so vague that it "fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983)). "The operative question under the fair notice theory is whether a reasonable person would know what is prohibited by the law." *Tingley v. Ferguson*, 47 F.4th 1055, 1089 (9th Cir. 2022)). "The terms of a law cannot require 'wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.'" *Id.* (quoting *Holder*, 561 U.S. at 20).

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION - 13

120345273.1 0099880-01499

Vague statutes are particularly objectionable when, as here, they "involve sensitive areas of First Amendment freedoms" because "they operate to inhibit the exercise of those freedoms." *Cal. Tchrs. Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)). Further, criminal laws receive the most exacting scrutiny because "[t]he essential purpose of the 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct." *Jordan v. De George*, 341 U.S. 223, 230 (1951).

Idaho Code § 18-623 lacks clarity, fails to provide fair notice of the conduct it punishes, and invites arbitrary enforcement. It is vague in at least three respects. First, it is unclear what conduct it targets, and it appears to target only behaviors that are otherwise legal in the states where those behaviors occur. Second, it uses terms that are vague and for which no definitions are provided. Third, it is unclear what contact adults who help and mentor youth would need to have with a pregnant minor's parent or guardian to avoid liability or avail themselves of the statute's so-called affirmative defense. Adults who have been helping and mentoring youth will now be in the precarious position of navigating a confusing law while trying to help a pregnant minor who has nowhere else to turn and must make a decision in a short period of time.

First, it is unclear whether the statute is targeting behavior that occurs just before an abortion takes place or is targeting the abortion itself. Or perhaps the statute is attempting to punish behaviors that happen prior to the abortion, including legal behaviors that do not culminate in the procedure itself. One cannot tell. If the statute is attempting to criminalize abortion after the fact, it is attempting to punish adults for medical procedures obtained by others that are legal where the procuring or obtaining took place. Thus, a person of ordinary intelligence would be unable to identify how and exactly when she violated this aspect of the

statute, as at the time the minor she is helping has an abortion, she is in a jurisdiction where those actions violate no law.

And if the legislature meant to target the "attempt" of such procurement or obtaining, a person of ordinary intelligence would be hard-pressed to discern at what point ordinary counseling or mentoring a pregnant minor, or traveling with such a minor within Idaho, may cross a line into attempt. *See* I.C. § 18-306 ("[e]very person who attempts to commit any crime, but fails, or is prevented or intercepted in the perpetration thereof," is punishable for the attempt). Does meeting with a pregnant minor in an office to discuss her options and provide information constitute "recruiting" or "harboring" only if the pregnant minor does in fact receive abortion care? Idaho Code § 18-623 also raises the specter of an arbitrary enforcement scheme that targets "attempt" conduct and casts a wide net, including traffic stops of reproductive age female minors, in an effort to stop pregnant minors traveling to another state from even reaching the border.

Second, it appears that in the Legislature's rush to block persons in Idaho from traveling to states where abortions are lawful, it is attempting to prevent legal behaviors by criminalizing undefined actions such as "recruiting," "harboring," or "transporting." Idaho Code § 18-623 does not contain or refer to a definitions section that would tell Plaintiffs  when their conduct would constitute recruiting, harboring, or transporting. Does a person "recruit" a pregnant minor by telling the minor that the Planned Parenthood in Kennewick, Washington, provides abortion care? Or by letting the minor stay at a home in Fruitland before the minor travels to Ontario, Oregon, for abortion care? This statute does not make clear when lawful mentoring stops and unlawful conduct begins, or if the statute allows for mentoring at all. A person of ordinary intelligence must discern when helpful information regarding abortion becomes "recruiting" or when a meeting becomes "harboring." And she must hope that the line she draws in her own mind is the same

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION - 15

120345273.1 0099880-01499

line that law enforcement and prosecutors draw. This vagueness impacts Plaintiffs and their actions, their ability to advise others, and their ability to support the communities they serve. *See* Matsumoto Decl., ¶¶40-42.

Third, the statute fails to provide adequate notice regarding what culpability attaches to communication or the lack thereof with a minor's parents and/or guardians. The statute fails to provide adequate notice regarding whether the intent to conceal must be directed at one or more parent, and whether there is an affirmative defense if one parent provided consent but the other did not. Does the intent to conceal mean affirmatively hide the fact of an abortion? Or apply only if the adult providing assistance knows that the pregnant minor has a parent? Here, for safety and privacy of the minors, Plaintiffs do not affirmatively seek consent, and do not wish to in the future. Matsumoto Decl., ¶¶43, 47; Kovacs Decl., ¶¶13, 19, 21; simpson Decl., ¶¶39, 50.[7]

Even the Idaho legislators who sponsored H.B. 242 were unsure when a violation would occur, or even what a violation would be. In an exchange with another state senator, Senator Todd Lakey, who was responsible for the bill's language as its co-sponsor, stated that "recruiting, harboring and transporting, those are descriptive words, I guess the court would have to decide if the conduct constitutes one of those three things." Olson Decl., ¶5, Ex. 4. A law that requires a court to decide after the fact whether conduct violates the law is not one that puts an ordinary person on notice of what it prohibits.

In sum, Plaintiffs are unsure of what specific behavior Idaho Code § 18-623 prohibits. And they "should not have to guess at whether their conduct is on the right or the wrong side of the law."

---

[7] "An affirmative defense is an excuse, not an exception. The difference is not academic." *United States v. Idaho*, 623 F. Supp. 3d 1096, 1109 (D. Idaho 2022). An affirmative defense under § 18-623 can only be raised by an adult after she has been investigated, charged, arrested, and suffered the indignity of publicity and community and employment consequences.

*Isaacson v. Brnovich*, 610 F. Supp. 3d 1243, 1254 (D. Ariz. 2022). But for the statute's lack of clarity over whether she would be prosecuted, Plaintiff Matsumoto would assist minors in traveling to Oregon or Washington in getting abortions in states where abortion remains legal. Matsumoto Decl., ¶54. Plaintiffs NWAAF and IIA wish to continue assisting pregnant Idaho minors obtain abortions in states where abortion is legal but are uncertain whether they will be prosecuted for such actions. Kovacs Decl., ¶30; simpson Decl., ¶¶58, 59.

**B.      Plaintiffs Will Be Irreparably Harmed by Violation of Their Constitutional Rights.**

To establish irreparable harm, injury need not be certain to occur. Rather "a strong threat of irreparable injury before trial is an adequate basis." *Diamontiney v. Borg*, 918 F.2d 793, 795 (9th Cir. 1990) (citation omitted). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Klein*, 584 F.3d at 1207-08 (9th Cir. 2009); *Farris v. Seabrook*, 677 F.3d 858, 868 (9th Cir. 2012). Here, in the absence of injunctive relief, Plaintiffs will suffer irreparable harm because they will be chilled from providing information about lawful abortion care, including options counseling, referrals to abortion providers in jurisdictions where abortion remains legal, and guidance on how and where to travel to obtain a lawful abortion. Matsumoto Decl., ¶¶55, 56; Kovacs Decl., ¶¶39, 40; simpson Decl., ¶¶60, 61.

Significantly, without injunctive relief, Plaintiffs, and others in the state, also face the very real threat of criminal prosecution, should any of their behaviors cross the unclear line that Defendant controls. Under the statute, Defendant has "the authority, at the attorney general's sole discretion, to prosecute a person for a criminal violation of this section if the prosecuting attorney authorized to prosecute criminal violations of this section refuses to prosecute violations of any of the provisions of this section by any person without regard to the facts or circumstances." I.C. § 18-

623(4). In other words, without relief from this Court, the Defendant in this case can choose to prosecute any Plaintiff for an alleged crime under this law. Even if the statute is later found to be unconstitutional, any Plaintiff, or other person, so prosecuted will be irreparably harmed. *McCormack v. Heideman*, 900 F. Supp. 2d 1128 (D. Idaho 2013).

Finally, absent injunctive relief, the ability of Plaintiffs NWAAF and IIA to accomplish their organizational mission will be irreparably damaged, as they cannot provide information and resources to pregnant minors to obtain out-of-state abortion care that they would otherwise recommend and provide. Kovacs Decl., ¶¶39, 40; simpson Decl., ¶¶60, 61.

**C.     The Balance of Equities and Public Interest Favors an Injunction.**

Finally, both of the remaining factors—the public interest and the balance of equities—fall strongly in the Plaintiffs' favor. "[E]nforcement of an unconstitutional law is always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013).

Allowing this law to remain in effect for any additional length of time presents significant harm to all Plaintiffs and, most critically, to the communities they seek to serve. As explained above, Plaintiffs serve as trusted adults for minors at a critical point in their lives, including minors who may be survivors of abuse and those who may not have a safe or trusted parent or guardian. While Plaintiffs regularly serve this role, other adults in the state may on occasion serve a similar purpose in the life of a minor. Allowing this law to stand during the pendency of this lawsuit would expose to criminal prosecution every adult in the state who wishes to speak about abortion with pregnant minors, wishes to logistically or practically support pregnant minors' access to abortions, wishes to provide shelter for minors traveling to access legal abortion care, or wishes to provide transportation for pregnant minors. Every day this unconstitutional law remains in effect, the specter of prosecution, and prison time, looms over every adult in the state who may, during the course of this

lawsuit, find themselves in this position. Plaintiffs will most certainly be in this position. There is no doubt that the balance of equities weighs in favor of Plaintiffs.

Defendant will suffer no cognizable harm by injunctive relief in this case. Idaho's first-in-the-nation prohibition has been in effect barely 60 days. Thus, injunctive relief would simply preserve the status quo that this state has enjoyed for hundreds of years. *See All. for Wild Rockies v. Pierson*, 550 F. Supp. 3d 894, 898 (D. Idaho 2021), *vacated on other grounds*, 68 F.4th 475 (9th Cir. 2023). And, in the context of First Amendment claims like Plaintiffs,' a likelihood of success on the merits "compels a finding that . . . the balance of the hardships tips sharply in Plaintiff[s'] favor." *Am. Beverage Ass'n v. City & County of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (internal quotation marks and brackets omitted; ellipsis in original).

Granting the injunction would allow Plaintiffs to continue to act in accordance with their organizational missions and continue to communicate fully with pregnant minors about their options. It would not harm the State's alleged public interest, as abortions would remain largely illegal in Idaho (a prohibition that Idaho apparently believes is in the public interest) and would permit Plaintiffs to continue providing support, travel assistance, financial assistance, and information to pregnant minors in Idaho seeking lawful medical care in other states.

## IV.  CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion and enter an Order preliminarily enjoining Defendant from enforcing Idaho Code § 18-623.

DATED:  July 24, 2023.                    STOEL RIVES LLP


                                          /s/ Wendy J. Olson
                                          Wendy J. Olson


                                          LEGAL VOICE

                                          /s/ Wendy S. Heipt
                                          Wendy S. Heipt
                                          Kelly O'Neill


                                          THE LAWYERING PROJECT

                                          /s/ Jamila A. Johnson
                                          Jamila A. Johnson
                                          Paige Suelzle

                                          *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 24, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following person:

Lincoln Davis Wilson
Lincoln.wilson@ag.idaho.gov


/s/ Wendy J. Olson
Wendy J. Olson