**EXHIBIT 3**



**STATE OF IDAHO**

OFFICE OF THE ATTORNEY GENERAL

**RAÚL R. LABRADOR**

March 13, 2023

The Honorable Ilana Rubel
Minority Leader
Idaho House of Representatives
700 W. Jefferson Street
Boise, Idaho 83702

Dear Representative Rubel:

You have requested a legal opinion on three questions concerning House Bill 242. As relevant to your questions, House Bill 242 establishes a new criminal offense for adults who recruit, harbor, or transport pregnant minors within the State of Idaho under certain circumstances. House Bill 242 creates a new criminal statute, Idaho Code section 18-623.[1]

## QUESTIONS PRESENTED

1. House Bill 242 provides it is not an affirmative defense to abortion trafficking if the abortion provider or the abortion-inducing drug provider is located in another state. Is Idaho permitted to prosecute an adult for abortion trafficking if the abortion occurs in another state where it is legal or the abortion-inducing drug provider is located within a state where he or she can legally dispense that drug?

2. Does this bill trigger problems under right to travel, other Constitutional protections insofar as it purports to criminalize actions that are to be legally conducted in other states?

3. Does this bill conflict with any executive orders in place to protect travel for the purpose of having abortions, or any other federal or constitutional provisions?

---

[1] The bill also amends one section with the Fetal Heartbeat Preborn Child Protection Act, but that change is not relevant to this letter.

EXECUTIVE OFFICE
P.O. BOX 83720, BOISE, IDAHO 83720-0010
TELEPHONE: (208) 334-2400, FAX: (208) 854-8071
LOCATED AT 700 W. JEFFERSON STREET, SUITE 210

Representative Ilana Rubel
March 13, 2023
Page 2

## CONCLUSIONS

After reviewing House Bill 242, we answer your questions as follows.

1. Idaho law permits a defendant to be charged with a crime where elements of the crime occur both in Idaho and another state. House Bill 242 establishes a crime involving the recruiting, harboring, or transporting of a pregnant minor within this State. That crime's reference to an abortion, and Idaho Code section 18-623(3)'s note that the abortion provider or the abortion-inducing drug provider can be located in another state, mean that an adult who traffics a pregnant minor within Idaho can be charged with abortion trafficking, even if an abortion provider or an abortion-inducing drug provider is in another state where abortion is legal.

2. House Bill 242, which is an exercise of the State's police power to regulate conduct within its borders, does not offend the right to travel found in the U.S. Constitution. The bill does not block out-of-state citizens from entering this State and does not block citizens of Idaho from leaving this State. The bill does not discriminate against out-of-state citizens nor treat newly arrived citizens of Idaho differently from any other person.

3. House Bill 242's recognition of a crime incident to abortion—a specific form of human trafficking—is within Idaho's "police power." After *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022), recognized that there is no federal constitutional right to abortion, the regulation of abortion involving acts incident to abortion is within the power of the states. House Bill 242 does not conflict with the President's two executive orders, as they do not prohibit states from regulating conduct within their borders.

## BACKGROUND

House Bill 242, if enacted, would add Idaho Code section 18-623, which concerns abortion trafficking. A person who commits abortion trafficking commits a felony subject to imprisonment for 2-5 years. Abortion trafficking is defined in Idaho Code section 18-623(1), which provides:

> An adult who, with the intent to conceal an abortion from the parents or guardian of a pregnant, unemancipated minor, either procures an abortion, as described in section 18-604, Idaho Code, or obtains an abortion-inducing drug for the pregnant minor to use for an abortion by recruiting, harboring, or transporting the pregnant minor within this state commits the crime of abortion trafficking.

Representative Ilana Rubel
March 13, 2023
Page 3


House Bill 242 also adds two provisions relevant to this statute.[2] It establishes Idaho Code section 18-623(2), which provides an affirmative defense to the trafficking if the pregnant minor's parent or guardian consented to the trafficking of the minor. And, it also adds Idaho Code section 18-623(3), which says it is not an affirmative defense if the abortion provider or the abortion-inducing drug provider is located in another state.

## ANALYSIS

**I.    Idaho can prosecute an adult for abortion trafficking, even if the abortion provider or the abortion-inducing drug provider is in another state.**

Your first question asks about an abortion that occurs out of state. Idaho Code section 18-623(1) explains that the crime of abortion trafficking involves the following elements: (a) an adult; (b) who has the intent to conceal an abortion from the parents or guardians of a pregnant, unemancipated minor; (c) recruited, harbored, or transported the pregnant minor within this State; and (d) procured an abortion, as described in Idaho Code section 18-604, or obtained an abortion-inducing drug for the pregnant minor to use for an abortion. Idaho Code section 18-623(3) makes clear that the abortion provider or the abortion-inducing drug provider can be located in another state.

The fact that part of a crime occurs outside of Idaho is not an issue. Idaho has adopted a statute, Idaho Code section 18-202, which provides that "[a]ll persons who commit, in whole or in part, any crime within this state" are liable to punishment in Idaho. According to the Idaho Supreme Court, through this statute "the legislature intended to punish any person who should commit any portion of a crime within this state to the same extent and in the same manner as though all of the acts which constitute the crime had been committed here."[3]

In a criminal prosecution, the prosecutor must establish criminal jurisdiction over the defendant. According to Idaho Code section 19-301, that can be shown by evidence "that a prosecutable act was committed within the State of Idaho." A prosecutable act is "any essential element of a crime."[4] Thus, Idaho's courts "have

---

[2]  House Bill 242 also adds Idaho Code section 18-623(4), which authorizes the Attorney General to prosecute violations of Idaho Code sections 18-622 or 18-623 if the local prosecuting attorney refuses to.

[3]  *State v. Villafuerte*, 160 Idaho 377, 379, 373 P.3d 695, 697 (2016) (quoting *State v. Sheehan*, 33 Idaho 553, 196 P. 532 (1921)).

[4]   *State v. Doyle*, 121 Idaho 911, 913, 828 P.2d 1316, 1318 (1992). In addition, Idaho provides for jurisdiction where the crime is commenced out-of-state but the result of the crime is "consummated

Representative Ilana Rubel
March 13, 2023
Page 4

subject matter jurisdiction over a crime if any essential element of the crime, including the result, occurs within Idaho."[5]

One of the essential elements of Idaho Code section 18-623(1) is that an adult recruited, harbored, or transported a pregnant minor *within* Idaho. By establishing this, a prosecutor can establish criminal jurisdiction over a defendant. The prosecutor can meet its burden of proof regarding abortion trafficking by establishing beyond a reasonable doubt, in relevant part, that the adult procured an abortion for the pregnant minor out of state or obtained an abortion-inducing drug from an out-of-state provider.

## II.    House Bill 242 does not offend the U.S. Constitution's right to travel.

You next ask whether the crime established by House Bill 242 violates the U.S. Constitution's right to travel. The U.S. Supreme Court's most recent explication of the right to travel was in *Saenz v. Roe*, 526 U.S. 489 (1999). There, the Court identified "at least three different components" of the right to travel from its cases.

The first is the "right to go from one place to another." The Court has not identified "the source of that particular right in the text of the constitution."[6] The second component of the right to travel protects citizens of other states who temporarily enter a state from discrimination based on their out-of-state citizenship "where there is no substantial reason for discrimination." This right originates from the Privileges and Immunities Clause of Article IV, § 2 of the U.S. Constitution. The third component protects "the right of the newly arrived citizen to the same privileges and immunities enjoyed by other citizens of the same State." The *Saenz* court held that this component is protected by the Privileges *or* Immunities Clause of the Fourteenth Amendment.

Clearly the second and third components of the U.S. Constitution's right to travel are not at issue with Idaho Code section 18-623(1). Section 623(1) does not discriminate against out-of-state citizens over in-state citizens. And it does not treat newly arrived citizens of Idaho differently than any other citizen of Idaho.

---

within Idaho." Idaho Code § 19-302. The *Doyle* court explained that "consummated" meant "that the result of the crime must be an essential element of the offense."

[5] *Doyle*, 121 Idaho at 914, 828 P.2d at 1319.

[6] The dissenting justices in *Saenz*, Chief Justice Rehnquist and Justice Thomas, acknowledged the first component's existence and noted that "what the Court today calls the first 'component' of the right to travel, [citation], was the entirety of this right" for most of the United States' history. *Saenz*, 526 U.S. at 512 (1999) (Rehnquist, C.J., dissenting).

Representative Ilana Rubel
March 13, 2023
Page 5

The first component of the right to travel—the right to go from one place to another—is also not implicated with Idaho Code section 18-623(1).  The first component is concerned with "the erection of actual barriers to interstate movement."[7]  Idaho's regulation of conduct within its State, a regulation applicable to all persons within the State, is not an attempt to block citizens of any state from entering Idaho or leaving Idaho.

The situations that implicate the first component of the right to travel are very different than the situation here.  In *Edwards v. California*, 314 U.S. 160 (1941), the Court addressed whether a state could prohibit the transportation of indigent persons into the state.  In *Crandall v. Nevada*, 73 U.S. (6 Wall.) 35 (1867), the Court addressed whether a state could tax railroad passengers carried out of state—or as the Court described it, a tax imposed "upon the passenger for the privilege of leaving the State, or passing through it by the ordinary mode of passenger travel."  In *United States v. Guest*, 383 U.S. 745 (1966), the Court held that a criminal indictment could properly assert that defendants were conspiring to deny black citizens "the right to travel freely to and from the State of Georgia and to use highway facilities and other instrumentalities of interstate commerce within the State of Georgia."

House Bill 242 does not place actual barriers to interstate movement.  House Bill 242 represents an exercise of Idaho's police power in an area touching on abortion—a right not protected by the U.S. Constitution.[8]  It seeks to regulate the in-state recruiting, harboring, or transporting of a pregnant minor.  House Bill 242 does not offend a right to travel in the U.S. Constitution.

## III.  House Bill 242 does not conflict with Executive Orders.

You also asked about executive orders issued by the President and whether House Bill 242 conflicts with them.  We have identified two executive orders issued by the President that concern "reproductive healthcare services."

Executive Order 14076 of July 8, 2022, "Protecting Access to Reproductive Healthcare Services" in relevant part requested a report to the President from the Secretary of Health and Human Services and authorized the Attorney General of the United States and Counsel to the President to convene a meeting.[9]  House Bill 242 does not conflict with this order.

---

[7] *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 277 (quoting *Zobel v. Williams*, 457 U.S. 55, 60 n.6) (1982)).

[8] *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022).

[9] Exec. Order No. 14,076, 87 Fed. Reg. 42053-42055 (July 13, 2022).

Representative Ilana Rubel
March 13, 2023
Page 6


Executive Order 14079 of August 3, 2022, "Securing Access to Reproductive and Other Healthcare Services" in relevant part directed the Secretary of Health and Human Services to "consider actions to advance access to reproductive healthcare services, including, to the extent permitted by Federal law, through Medicaid for patients traveling across State lines for medical care."[10]  We have not located any published rulemaking from the U.S. Department of Health and Human Services in the Federal Register.  As such, there is no existing conflict involving House Bill 242 and this executive order.

We also located a Presidential Memorandum, "Further Efforts to Protect Access to Reproductive Healthcare Services" which discussed the Food and Drug Administration's recent changes to the Risk Evaluation and Mitigation Strategies (REMS) regarding Mifepristone.[11]  That memorandum directed the Secretary of Health and Human Services, the U.S. Attorney General, and the Secretary of Homeland Security to consider issuing guidance and to take other action to educate individuals about access to Mifepristone.  It also directed these officials to provide information to a task force regarding barriers concerning access to Mifepristone. House Bill 242 does not conflict with this memorandum.

We are not aware of any other federal law that preempts the abortion trafficking crime established in House Bill 242.  In fact, states have broad authority to enact laws like this as part of their "police power," something which the U.S. Congress does not have.[12]  And because abortion is not a right protected within the federal constitution, abortion and crimes incident to abortion, are certainly within the State's realm of regulation.

* * * *

Please feel free to contact me if you have any questions.

Sincerely,

RAÚL R. LABRADOR
Attorney General


RRL:kw

---

[10]  Exec. Order No. 14,079, 87 Fed. Reg. 49505-49507 (Aug. 11, 2022).
[11]  Mem. of Jan. 22, 2023, 88 Fed. Reg. 4895-4897 (Jan. 26, 2023).
[12]  *See United States v. Morrison*, 529 U.S. 598, 617-619 (2000).