WENDY J. OLSON, Bar No. 7634
wendy.olson@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000

WENDY S. HEIPT (admitted pro hac vice)
wheipt@legalvoice.org
LEGAL VOICE
907 Pine Street, #500
Seattle, WA  98101
Telephone:  206.954.6798

KELLY O'NEILL, Bar No. 9303
koneill@legalvoice.org
LEGAL VOICE
P.O. Box 50201
Boise, ID 83705
Telephone:  208.649.4942

JAMILA A. JOHNSON (admitted pro hac vice)
jjohnson@lawyeringproject.org
THE LAWYERING PROJECT
3157 Gentilly Blvd. #2231
New Orleans, LA  70122
Telephone:  347.706.4981

PAIGE SUELZLE (admitted pro hac vice)
psuelzle@lawyeringproject.org
THE LAWYERING PROJECT
2501 SW Trenton Street #1097
Seattle, WA 98106
Telephone: 347.515.6073

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LOURDES MATSUMOTO, NORTHWEST ABORTION ACCESS FUND, and INDIGENOUS IDAHO ALLIANCE,<br><br>Plaintiffs,<br><br>v.<br><br>RAÚL LABRADOR, in his capacity as the Attorney General for the State of Idaho,<br><br>Defendant. | Case No. 1:23-cv-00323-DKG<br><br>DECLARATION OF LOURDES ANNETTE MATSUMOTO |

DECLARATION OF LOURDES ANNETTE MATSUMOTO - 1
120348535.1 0099880-01499

I, Lourdes Annette Matsumoto, declare and state as follows:

1. I am over 21 years of age. I have personal knowledge of the facts contained in this declaration, and I am competent to testify about them.

2. At all times pertinent to this Declaration, I have been a legal adult in the State of Idaho.

3. My workplace and primary place of residence is in Canyon County, State of Idaho.

4. I am proud to declare that I am a descendant of homesteaders, and a third generation Idahoan.

5. I am an American with direct heritage to immigrants who came to the United States from Mexico and from Japan.

6. In spite of my heritage of long-standing American citizenship, my own family were racially-targeted victims of Executive Order 9066 in 1942, which ordered establishment of concentration camps known as Japanese Internment Camps in Minnedoka, Idaho.

7. After graduation at Middleton High School in 2004, I attended college at the College of Idaho (then known as Albertson's College of Idaho), and then law school at Gonzaga University and the University of Idaho.

8. I became an Idaho attorney in 2016, and I remain a member in good standing of the Idaho State Bar.

9. I have been deputy general counsel in a position of high public trust in a highly technical environment.

10. I have also been an attorney in private practice, and simultaneously provide legal services and policy counsel to a local nonprofit that provides emergency assistance, counseling, and resources to victims of domestic and sexual violence.

11. I estimate that I have represented eleven private clients, in Idaho, in the past two years who were survivors of sexual violence. Several of these clients were Idaho minors.

12. I believe every person deserves to live their lives, according to their truth, with respect and dignity, and free of violence, including minors.

13. I have spent a majority of my legal career advocating for civil rights.

14. In 2017, I became a victim of egregious workplace harassment that escalated into gender-based violence.

15. I have been a visible face in Idaho, representing what would become the "#metoo movement", even before the strength of numbers emerged from public celebrity cases.

16. Through my words and actions I have continually sought to communicate my solidarity with abuse survivors, including pregnant minor abuse survivors, and my belief in bodily autonomy for all, including minors, and that I am a trusted resource, both professionally and personally, for minors experiencing abuse.

17. I am also a parent of minor children.

18. I am also a trusted adult who friends and family come to with questions about how to respond to gender-based violence (GBV), intimate partner violence (IPV), domestic violence (DV) and sexual assault (SA).

19. I personally know the courage it takes to hold a sexually violent perpetrator to account in the face of a fear that your life is in danger and that you won't be believed.

20. Due to the publicity of my own case and the compelling nature of my survivorship, I have been a speaker for a statewide association of trial attorneys, to discuss the effort to change the tide of sexual harassment and hostile workplace environments.

21. I have also been asked to speak to this same statewide association of trial attorneys about how to identify abuse in minors, especially those minors who have been subjected to sexual abuse in kindergarten through Grade 12 in public schools.

22. I continue to represent private clients, and I keep my practice open especially for minors and other survivors of sexual violence resulting in pregnancy.

23. In my professional capacity I work with, and focus on, survivors between the ages of 11 and 24, many of whom are victims of sexual assault.

24. In my professional capacity I also work with other advocates who also focus on minor survivors between the ages of 11 and 24, and these advocates have turned to me with questions about how they can best assist minor survivors who have become pregnant as a result of their abuse.

25. In 2023, the Idaho Legislature created I.C. 18-623, resulting from House Bills 98 and 242. The short title of this new first-in-the-nation "crime" is "Abortion Trafficking".

26. Even as a law trained person with years of knowledge, I believe this new code is so vague that it must be unenforceable.

27. The code has both a criminal and a civil enforcement section, and neither section is clear to me.

28. Advocates and domestic violence program professionals often reach out to me for expert advice on how to legally and properly advise survivors of gender-based violence and intimate partner violence who come to them for services.

29. Often, this expert advice is for minor Idahoans with unwanted pregnancies, which are the results of GBV and IPV.

DECLARATION OF LOURDES ANNETTE MATSUMOTO - 4
120348535.1 0099880-01499

30. In September 2022, during a training I participated in, I was unable to answer questions from other attendees who expressed confusion how to answer questions by survivors who were traveling in Idaho and then crossing state lines to access abortion in states where it is legal. Some of those questions involved how far they could go, whether they could use untraceable gas cards or financial assistance, whether law enforcement surveillance was an issue, and other similar questions. Among three well-trained and experienced attorneys at this training event, each had a different belief about what conduct would have the lowest legal risk.

31. After H.B. 242 was signed by Gov. Little in April 2023, I received several calls from domestic violence programs about best practices and what to do in specific circumstances. These calls came because program staff feared prosecution for disseminating correct information to adults and to minors. Idaho law does not recognize a legal advocate/client privilege, so many of these advocates are front-line navigators assisting survivors who may not be as protected as they hope when they share available resources. I had a difficult time advising them.

32. On April 24, 2023, I participated in a training open to the public and tailored for school administrators, related to an increase in sexual abuse and gender violence in children from kindergarten through 12th grade.  This training went over what to identify, what to do, and who to talk with if you suspect that sexual abuse or gender violence are occuring. The training also focused on the survivors' right of autonomy to decide what reports they would like to make and whether they want to pursue the options they are given.

33. A similar training was given on May 8, 2023. Here I faced many questions from confused parents and school administrators. Participants expressed concern and unsurety over what behaviors were legal and which crossed the line.

34. I have continued to field questions and concerns regarding what conduct would be permitted by this statute.

35. Based on my knowledge and first-hand experience with DV response training, there remains great professional and general uncertainty and confusion about what I.C. 18-623 specifically allows or prohibits.

36. Some of the specific questions I have tried to field involve giving advice to pregnant people or minors; how to handle financial support or transportation for those seeking abortion; and after May 5, 2023, there have been even more questions about what information can even be given to minors or to those who want to help minors by transporting them through Idaho and into states where abortion is legal.

37. Because of my years of advocacy work in the field of domestic violence, I am known in the general community as an expert resource.

38. I have been asked specific questions from friends, family and acquaintances about what resources are available to handle an unwanted pregnancy resulting from IPV / GBV.

39. The vagueness of I.C. 18-623 has made it difficult to provide accurate legal advice to guide even professionally-trained advocates, whose mission, like mine, is to serve survivors.

40. The impact is that the professional community of domestic violence advocacy cannot reasonably be expected to provide critical victim support services, especially when those

DECLARATION OF LOURDES ANNETTE MATSUMOTO - 6
120348535.1 0099880-01499

services include providing practical and actionable advice to pregnant minor survivors of GBV / IPV.

41. I recognize the dangers of ambiguity in the law when I advise and advocate for DV/SA survivors. Survivors need to know specifically what actions can help them restore their lives.

42. I.C. 18-623 is a law that is fundamentally unfair and anti-American; but it is also infused with unworkable ambiguity.

43. I want to be able to provide reliable advice, including advice about abortion, to pregnant minors and to those who want to support them. I know that it is not always safe for minor survivors or for me to seek or obtain parental consent.

44. Without reliable legal advice, these pregnant minors may turn to less desired options, and will decrease their reliance upon trusted adults in their communities who want to help resolve these crises.

45. In traditionally marginalized communities, people are often taught, through unjust experiences, to not trust adults or the legal system or any "system" to help them out.

46. Survivors, especially minor survivors, who bravely leave abusive homes or relationships often have no one to turn to except specialized survivor resources like DV/SA coalitions or locally known resources like myself. Once an adult does not come through for a minor, the abused minor is less likely to trust another adult.

47. I have previously provided abortion information and options counseling through trainings and to advocates to better guide their work with pregnant minors. These minors parents may or may not have consented to this. I would like to continue to provide this

information and communicate my support, but I fear an imminent threat of criminal prosecution, from which I need relief from this Court.

48. I have not yet been asked to provide transportation for a pregnant minor seeking abortion, but if I were asked, I would like to, whether or not the minors parents or guardian consented. Unfortunately, if I did so, I fear I would face an imminent threat of criminal prosecution.

49. I would like to provide temporary shelter for pregnant Idaho minors traveling to obtain abortions in states where they are legal, regardless of parental or guardian consent, without the threat of criminal prosecution.

50. I have previously provided financial assistance to organizations and funds that support pregnant minors seeking abortions. I am unaware if the parents or guardians of the pregnant minor knew about the abortions that I helped to fund. In the future, I would like to continue to do this, but I fear an imminent threat of criminal prosecution, from which I need relief from this Court.

51. I have been asked to advise other programs as to how much information, support, and transportation given to pregnant minors seeking abortions is legal and when those behaviors become illegal under the law and I wish to be able to provide clear guidance.

52. Although I am a licensed attorney in Idaho, I remain unclear about what degree of communication or contact with parents I am required to provide or withhold under I.C. 18-623.

53. I have been willing to help pregnant minors obtain reproductive options counseling and healthcare, including abortion, without the consent of the minors' parents, and I want to be able to provide this kind of assistance in the future.

54. Based on my beliefs, I want to continue to support pregnant Idaho minors seeking abortion in all the ways detailed herein, but I am unsure about the exact reach of this law and fear criminal prosecution.

55. Without relief from this court, my ability to speak about legal abortion care in accordance with my personal beliefs and my professional obligations will be irreparably harmed.

56. Without relief from this court, my ability to act in accordance with my beliefs, including providing practical financial and logistical assistance to pregnant minors seeking legal abortions, and to the individuals and organizations that assist them, will be irreparably harmed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

DATED:  July 24, 2023.

/s/ Lourdes Annette Matsumoto
Lourdes Annette Matsumoto

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 24, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following person:

Lincoln Davis Wilson
Lincoln.wilson@ag.idaho.gov

/s/ Wendy J. Olson
Wendy J. Olson