WENDY J. OLSON, Bar No. 7634
wendy.olson@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000

WENDY S. HEIPT (admitted pro hac vice)
wheipt@legalvoice.org
LEGAL VOICE
907 Pine Street, #500
Seattle, WA  98101
Telephone:  206.954.6798

KELLY O'NEILL, Bar No. 9303
koneill@legalvoice.org
LEGAL VOICE
P.O. Box 50201
Boise, ID 83705
Telephone:  208.649.4942

JAMILA A. JOHNSON (admitted pro hac vice)
jjohnson@lawyeringproject.org
THE LAWYERING PROJECT
3157 Gentilly Blvd. #2231
New Orleans, LA  70122
Telephone:  347.706.4981

PAIGE SUELZLE (admitted pro hac vice)
psuelzle@lawyeringproject.org
THE LAWYERING PROJECT
2501 SW Trenton Street #1097
Seattle, WA 98106
Telephone: 347.515.6073

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LOURDES MATSUMOTO, NORTHWEST ABORTION ACCESS FUND, and INDIGENOUS IDAHO ALLIANCE,<br><br>        Plaintiffs,<br><br>   v.<br><br>RAÚL LABRADOR, in his capacity as the Attorney General for the State of Idaho,<br><br>        Defendant. | Case No. 1:23-cv-00323-DKG<br><br>Declaration of tai simpson |

Declaration of tai simpson - 1
120348855.1 0099880-01499

I, tai simpson ("tai simpson"), declare and state as follows:

1. I am over 21 years of age, I have personal knowledge of the facts contained in this declaration, and I am competent to testify about them.

2. At all times pertinent to this Declaration, I have been a legal adult in the boundaries and jurisdiction commonly described as Idaho.

3. At all times pertinent to this Declaration, I have been a resident of the State of Idaho, with a principal residence within the County of Ada.

4. I am a member of the Nimiipuu Nation, also called the Nez Perce Tribe of Idaho.

5. The traditional, usual, and accustomed lands of my people, like that of other tribes whose territory encompasses land within Idaho, are often recognized as transecting and incorporating land within the U.S. state/Canadian provincial boundaries of Washington, Idaho, Montana, Wyoming, British Columbia, and Alberta.

6. My life's calling is to continue to serve the storied culture of my people through trust-based mutual care and aid.

7. To that end, I co-founded and helped organize Indigenous Idaho Alliance (IIA), under the laws of the state of Idaho, in order to facilitate that mutual care and aid.

8. I have been an officer or director of Indigenous Idaho Alliance, Inc., an Idaho 501(c)(3) non-profit organization, since 2012.

9. IIA's work includes serving the five tribes whose traditional, usual, and accustomed lands encompass territory within Idaho, and whose traditional, usual, and accustomed lands are often recognized as transecting and incorporating land within the U.S. state/Canadian provincial boundaries of Washington, Idaho, Montana, Nevada, Utah, Wyoming,

California, British Columbia, and Alberta. In this declaration, I may occasionally refer to these lands as "the region."

10. The region has one of the highest per capita populations of Indigenous people in the political boundaries of the United States. IIA's work also includes serving Indigenous people from other tribes across the U.S. who are in this area and far from their reservations and homelands.

11. Our work at IIA is centered around asserting the sovereignty of all Indigenous people by focusing on education, community care, awareness, and collaboration in order to empower a healthy and just Indigenous community in Idaho.

12. Among our priorities and efforts is seeking justice for the Missing and Murdered Indigenous People (MMIP) and their families.

13. IIA also prioritizes the health and wellness of the Indigenous communities we serve.

14. My academic background is in Political Philosophy & Public Law at Boise State University, where I served as the vice president and president of the Intertribal Native Council student organization.

15. The assertions within this document are based upon my own experience, cultural knowledge, research, education, and study, of prevailing scholarship in these subjects.

16. I know that in the United States, Indigenous women and girls are the victims of gender-based violence at a statistical rate twice that of Anglo-American women and girls.

17. Gender-based violence perpetrated against Indigenous women and girls is almost always power-focused with the use of sexual assault and sexual battery including forcible intercourse, by male perpetrators.

Declaration of tai simpson - 3
120348855.1 0099880-01499

18. Unwanted pregnancy or coercive pregnancy is often the result of this high rate of gender-based violence which includes rape.

19. Indigenous women and girls, facing unwanted or coerced pregnancy, are often victims of violence, including murder, in order to conceal the crimes of rape or to punish these pregnant people who seek protection, self-care, or reproductive healthcare including abortion.

20. This is the context that the IIA and I work in as we pursue justice for MMIP and their families.

21. Law enforcement investigation and criminal prosecution of gender-based violent crime against Indigenous women and girls is woefully lacking behind standard policing and prosecutorial standards that protect Anglo-American populations.

22. In my experience, abortions are often sought by the pregnant Indigenous victims of gender-based violence.

23. Since abortion is also sought by other victims of gender-based violence, my organization has and will continue to serve non-Indigenous people, including non-Indigenous minors.

24. With Idaho's 2022 restrictions on abortion care, many people working to make ends meet, especially Black people, Indigenous people, Asian people, Latinx ("Hispanic") people, young people, Lesbian-Gay-Bisexual-Trans-Queer-and nonbinary ("LGBTQ+") people, immigrant people, disabled people, and gender-nonconforming people, have been denied a fundamental aspect of their own bodily autonomy, including the right to make personal and individualized decisions about their own healthcare.

25. Indigenous people everywhere, including in Idaho, suffer from systemic racism and chronic economic insecurity, which are massive barriers to all health care, but especially abortion care, even in jurisdictions where it is legal.

26. Abortion bans, like those which exist in Idaho, cause even greater harm to those already subject to systemic racism and economic injustice, like the Indigenous people I serve.

27. Pregnancy is less safe for some than for others because of historic and ongoing racism and discrimination in healthcare settings, and people of color face two to three times the risk of dying from pregnancy-related causes, including maternal mortality and fetal, newborn and infant mortality.

28. States like Idaho that ban or severely restrict access to abortion care also have worse maternal health outcomes.

29. Forced pregnancy is always unconscionable, and particularly so for individuals facing heightened risk of maternal mortality and morbidity, where pregnancy is less safe for some than for others because of historic and ongoing racism and discrimination in healthcare settings.

30. The criminalization of abortion care in Idaho forces people to travel hundreds of miles out of their communities to try to get care, and studies show that longer travel distances are associated with lower abortion rates, forcing people to seek other options.

31. As in other forms of criminalization, the systemic result is that people targeted for pregnancy loss and self-managed abortion prosecution are disproportionately people of color and people experiencing economic insecurity, especially including the Indigenous communities where I live and serve.

32. Many of the communities where I live and serve are on or near "Indian Reservations".

33. "Indian Reservations" are a population-concentration system designed to restrict free movement of Indigenous people and to limit the reach of our cultural expression under the guise of tribal self-determinism, and are typically located in rural or isolated areas.

34. Indigenous women and girls who are victims of gender-based violence including rape resulting in unwanted or coercive pregnancy are further restricted from basic reproductive healthcare, including abortion, due to the remote nature of reservation life, where independent modes of travel, coercion through domestic abuse and violence, complicit tribal or nontribal law enforcement officials, or sheer cost and distance make access to healthcare extremely difficult.

35. Abortion needs to be safe and accessible where people live, and where they access other forms of healthcare.

36. Abortion is almost entirely unavailable in Idaho.

37. In order to serve my people and others in the communities where I live and work, I and the IIA have in the past assisted pregnant people, including minors, access abortions. I want to keep doing this throughout the region in which we work, including in Idaho, without fear of imprisonment.

38. IIA has provided pregnant people, including minors, with information regarding reproductive health care options, including abortion.

39. The parents and guardians of the minors to whom we provide information about abortion may or may not be aware of, or consent to, the provision of information regarding abortions.

40. I and my organization wish to continue providing pregnant people, including minors, throughout the region with information regarding reproductive health care options,

including abortion, without the legal requirement of seeking or obtaining parental consent and without fear of imprisonment.

41. In order to provide the mutual assistance IIA supports, through my organization, I have in the past also coordinated the transportation of pregnant women and girls from locations across the region, including locations within Idaho, to and across state lines and provincial borders, where abortion care can be lawfully obtained in neighboring jurisdictions.

42. As a founder and organizer of IIA, I can attest that our organizational mission includes this kind of mutual assistance, and that I and members of IIA wish to continue to provide this type of assistance to both adults and minors.

43. In addition to transporting and coordinating transport of pregnant people, including pregnant minors, into states where abortion is legal, it is even more common for IIA to support pregnant people, including minors, with "rapid response" financial assistance, which can be used to pay for travel, meals, and medical care expenses incurred in the process of obtaining abortions where they are legal.

44. The most common way IIA distributes "rapid response" financial assistance is with prepaid debit cards.

45. The ability to provide these types of financial assistance comes through the receipt of unsolicited donations from individuals, as well as from local, regional, and national organizations who, through "word-of-mouth," have become aware of the work we do to ensure abortion care access by members of my community.

46. A majority of our donors are anonymous.

47. Several times per year, IIA can expect to receive tens of thousands of dollars in donations, many of which are from first-time donors.

48. IIA sometimes applies for and receives funding through federal and non-governmental grant programs, but unsolicited gifts and donations through "word-of-mouth" are the primary sources of the financial assistance we provide to pregnant people and girls seeking abortion.

49. IIA distributes the funding we receive in accordance with our commitment to trust-based mutual care and aid. This has included providing funding and other support to pregnant women and girls seeking abortions.

50. Sometimes, in the past, when we have provided direct or financial assistance to a pregnant minor seeking an abortion, the parents or guardians may or may not have been aware about the minor's intent to seek an abortion.

51. While we are not always aware of how a minor became pregnant, our focus is always on the pregnant minor and getting them the trust-based aid that they need.

52. IIA is also in the practice of obtaining and distributing "Plan B" to pregnant minors, in some cases transmitting Plan B through overnight couriers or through clandestine drop-offs, when that is more convenient or appropriate.

53. IIA distributes Plan B to all community members who request it, including to minors. I do not know whether all of the parents or guardians of these minors were aware of the minors' receipt of Plan B.

54. I and IIA have taken all of these actions as part of our community commitment to trust-based mutual care and aid. All of these actions are in furtherance of our goals and traditions.

55. I and IIA also undertake these actions as a visible sign of support and solidarity with our community.

56. I and IIA also undertake these actions as a visible sign of support and solidarity with the pregnant people, including the pregnant minors, that we serve, that they are not alone and have community support.

57. We also undertake these actions as a visible sign of support to others, that we serve as trusted community members supporting and centering the needs of our people, including the needs of pregnant minors seeking abortion care in places where that care is legal.

58. While I and other members of the IIA wish to continue to support pregnant girls, including providing information and support to help them access abortion care where it is legal, I am uncertain of the line the law draws between legal and illegal conduct.

59. I and my organization wish to continue providing pregnant people, including minors, throughout the region with practical, financial, and other support in order to help them access abortions, including transportation, monies and gift cards, and accommodation, without fear of imprisonment.

60. Without relief from this court, my ability to speak about legal abortion care for minors in accordance with the mission of IIA and my own personal beliefs will be irreparably harmed.

61. Without relief from this court, my ability, and the ability of IIA, to act in accordance with our missions and beliefs, will be irreparably harmed. These actions include, but are not limited to, providing financial, transportation and logistical assistance to pregnant minors within the region seeking legal abortions, with or without the knowledge or consent of their parents or guardians.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

DATED: July 24, 2023.

/s/ tai simpson
tai simpson

Declaration of tai simpson - 10
120348855.1 0099880-01499

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on July 24, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following person:

    Lincoln Davis Wilson
    Lincoln.wilson@ag.idaho.gov

                                                  <u>/s/ Wendy J. Olson</u>
                                                  Wendy J. Olson