ROBERT W. FERGUSON
  *Attorney General*
  *State of Washington*

EMMA GRUNBERG, WSBA 54659*
CRISTINA SEPE, WSBA 53609*
  *Deputy Solicitors General*
P.O. Box 40100
Olympia, WA 98504
206-326-5488
emma.grunberg@atg.wa.gov
cristina.sepe@atg.wa.gov

*Pro hac vice

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LOURDES MATSUMOTO, NORTHWEST ABORTION ACCESS FUND, and INDIGENOUS IDAHO ALLIANCE,<br><br>                    Plaintiffs,<br><br>    v.<br><br>RAÚL LABRADOR, in his capacity as the Attorney General for the State of Idaho,<br><br>                    Defendant. | Case No. 23-cv-00323-DKG<br><br>AMICUS BRIEF OF THE STATES OF WASHINGTON, ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, HAWAI'I, ILLINOIS, MAINE, MARYLAND, MASSACHUSETTS, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OREGON, AND RHODE ISLAND AND THE DISTRICT OF COLUMBIA IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION |

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................1

II.   INTERESTS OF AMICI CURIAE ..............................................2

III.  ARGUMENT..............................................................................2

    A.  Amici States Have Chosen to Protect Minors' Ability to Access
        Abortion Care .........................................................................2

    B.  Idaho Code § 18-623 Purports to Impermissibly Criminalize Legal
        Activity in Amici States...........................................................4

    C.  Idaho Code § 18-623 Will Impose Significant Harms on Amici
        States ......................................................................................6

        1.  Idaho's Restrictive Abortion Laws Have Caused Sharp Rises in
            Patients Seeking Care in Neighboring Amici States.........................6

        2.  Idaho Code § 18-623 Harms Amici States' Healthcare Providers,
            Residents, and Youth ......................................................8

IV.   CONCLUSION...........................................................................12

**TABLE OF AUTHORITIES**

Cases

*Am. Acad. of Pediatrics v. Lungren,*
   940 P.2d 797 (Cal. 1997) ..................................................................... 3

*Bigelow v. Virginia,*
   421 U.S. 809 (1975) ........................................................................... 6

*Dobbs v. Jackson Women's Health Org.,*
   597 U.S. ___, 142 S. Ct. 2228 (2022) .............................................. 5-7, 9-10, 12

*Glick v. McKay,*
   937 F.2d 434 (9th Cir. 1991) .............................................................. 3

*Hodgson v. Minnesota,*
   497 U.S. 417 (1990) ...........................................................................15

*Roe v. Wade,*
   410 U.S. 113 (1973) ........................................................................... 5

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
   538 U.S. 408 (2003) ........................................................................... 2

*State v. Koome,*
   530 P.2d 260 (Wash. 1975) ................................................................ 3

*United States v. Idaho,*
   623 F. Supp. 3d 1096 (D. Idaho Aug. 24, 2022) ...............................14

*Virginia v. Hicks,*
   539 U.S. 113 (2003) ...........................................................................11

Constitutional Provisions

Cal. Const., art. 1, § 1.1 ........................................................................ 3

Statutes

775 ILCS 55/1-15 ................................................................................. 4

Ariz. Rev. Stat. § 36-2152.................................................................... 5

Cal. Health & Safety Code § 123462 ................................................... 4

Col. Rev. Stat. § 13-22-705.................................................................. 4

Col. Rev. Stat. § 25-6-403.................................................................... 4

Col. S.B. 23-188 (Colo. 2023),
    *to be codified at* Colo. Rev. Stat. § 12-30-121 *et seq* ........................... 4

Idaho Code § 18-622............................................................................11

Idaho Code § 18-623................................................... 1, 2, 5-7, 10-11

Idaho Code § 18-623(3) ........................................................................ 6

Ill. Pub. Act. 102-0685........................................................................ 5

Nev. Rev. Stat. § 442.250 .................................................................... 4

Or. Rev. Stat. § 109.640....................................................................... 3

Or. Rev. Stat. § 659.880....................................................................... 3

Wash. Rev. Code § 9.02.100................................................................. 3

Wash. Rev. Code § 9.02.110 ................................................................ 3

## Other Authorities

Am. Acad. of Pediatrics, Comm. on Adolescence,
    *Policy Statement: The Adolescent's Right to Confidential Care When
    Considering Abortion*,
    139 Pediatrics e20163861 (2017) ....................................................11

American College of Obstetricians and Gynecologists,
    *Facts Are Important: Understanding Ectopic Pregnancy*,
    https://www.acog.org/advocacy/facts-are-important/understanding
    -ectopic-pregnancy ...........................................................................11

Aria Bendix, *Idaho becomes one of the most extreme anti-abortion states with law restricting travel for abortions*, NBC News (April 6, 2023), https://www.nbcnews.com/health/womens-health/idaho-most-extreme-anti-abortion-state-law-restricts-travel-rcna78225 .................................................... 7

Center for Reproductive Rights,
*After Roe Fell: Abortion Laws by State*,
https://reproductiverights.org/maps/abortion-laws-by-state/ ............................. 4

Elizabeth G. Raymond & David E. Grimes,
*The Comparative Safety of Legal Induced Abortion and Childbirth in the United States*,
119 Obstetrics & Gynecology 215 (2012) ........................................................10

Interstate Medical Licensure Compact Commission, Rule on Coordinated Information System, Joint Investigations and Disciplinary Actions, https://www.imlcc.org/wp-content/uploads/2022/11/IMLCC-Rule-Chapter-6-Coordinated-Information-System-Joint-Investigations-and-Disciplinary-Actions-Adopted-November-16-2018-Amended-11-8-2022.pdf..................................... 9

Interstate Medical Licensure Compact,
https://imlcc.org.................................................................................................. 9

J. Shoshanna Ehrlich,
*Grounded in the Reality of Their Lives: Listening to Teens Who Make the Abortion Decision Without Involving Their Parents*,
18 Berkeley Women's L.J. 61(2003) ................................................................11

Jessica Hill, *Las Vegas sees big spike in out-of-state abortion seekers*, Las Vegas Review-Journal (updated June 27, 2023), https://www.reviewjournal.com/news/politics-and-government/nevada/las-vegas-sees-big-spike-in-out-of-state-abortion-seekers-2800219/ ....................... 7

Kaitlin Washburn, *Planned Parenthood of Illinois reports spike in abortion patients since Roe v. Wade was overturned,* Chicago Sun Times, (June 12, 2023), https://chicago.suntimes.com/2023/6/12/23758431/planned-parenthood-of-illinois-reports-spike-in-abortion-patients-since-roe-v-wade-overturned........ 8

Kandra Kent, *Oregon sees uptick in abortion travel, most out-of-staters come from Idaho*, KPTV (Nov. 8, 2022), https://www.kptv.com/2022/11/08/oregon-sees-uptick-abortion-tourism-most-out-of-staters-come-idaho// ................................. 7

Margaret Moon, *Adolescents' Right to Consent to Reproductive Medical Care: Balancing Respect for Families with Public Health Goals*, 12 Am. Med. Ass'n J. of Ethics 805, 806 (2012) ...............................................................................11

Megan Burbank, *Who is traveling to Washington for abortion care?* Crosscut, (Nov. 14, 2022), https://crosscut.com/equity/2022/11/who-traveling-washington-abortion-care. .. 7

National Abortion Federation, A Year After Dobbs, More People Than Ever Are Traveling For Abortion Care, (June 7, 2023), https://prochoice.org/a-year-after-dobbs-more-people-than-ever-are-traveling-for-abortion-care/...............................................................................................10

National Academies of Sciences, Engineering, and Medicine, *The Safety and Quality of Abortion Care in the United States* 12, 77–78 (National Academies Press 2018), http://nap.nationalacademies.org/24950...........................................................10

Nicole Rideout, *One year since the overturn of Roe, OB/GYNs report devastating impacts from lack of abortion access*, OSHU News (June 24, 2023), https://news.ohsu.edu/2023/06/24/one-year-since-the-overturn-of-roe-obgyns-report-devastating-impacts-from-lack-of-abortion-access ................................. 7

Nina Shapiro, *She secretly traveled 2,000 miles for her WA abortion. Why patients from the South are coming here*, The Seattle Times (Feb. 26, 2023), https://www.seattletimes.com/seattle-news/she-secretly-traveled-2000-miles-for-her-wa-abortion-why-patients-from-the-south-are-coming-here/ ......................10

Reuters Fact Check, *Fact Check-Termination of Pregnancy Can Be Necessary to Save a Woman's Life, Experts Say*, Reuters (Dec. 27, 2021), https://www.reuters.com/article/factcheck-abortion-false/fact-check-termination-ofpregnancy-can-be-necessary-to-save-a-womans-life-experts-say-idUSL1N2TC0VD..............................................................................................10

Society of Family Planning, *#We Count Report*, Oct. 28, 2022, https://societyfp.org/wp-content/uploads/2022/10/SFPWeCountReport_AprtoAug2022_ReleaseOct2022-1.pdf............................................................. 6

U.S. Senator Maria Cantwell, *SNAPSHOT: Abortion Care in the State of Washington One Year Post* Dobbs, Press Release (June 23, 2023), https://www.cantwell.senate.gov/download/06232023-dobbs-anniversary-report ....................................................................................................................10

## I.     INTRODUCTION

Amici are States bordering and neighboring Idaho, as well as States across the country, that protect access to abortion and allow minors to independently consent to abortion care in some or all circumstances. Under Attorney General Labrador's interpretation of Idaho Code § 18-623, Idaho threatens to punish medical providers and residents of Amici States for giving information and assistance to minors who access lawful abortion care outside Idaho's borders, in Amici States.[1] This cannot be reconciled with Supreme Court precedent, under which States cannot prevent their residents from accessing abortion care in other states where it is legal—much less from even accessing information about such lawful care.

Idaho's law spells grave harm for Amici States. First, many Amici States are already flooded with Idahoans seeking abortion care. Attorney General Labrador's interpretation of Idaho Code § 18-623 threatens to punish, and will chill, the ability of healthcare providers, counselors, and trusted adults in Amici States to provide their Idaho patients, clients, relatives, and friends with vital information and support about lawful healthcare in Amici States. Second, the threatened criminalization of travel and provision of information will delay patients' ability to access lawful care, leading to increased health risks, illness, and death. This is true not only for Idahoans but also for residents of Amici States who are traveling in or who happen to be in Idaho and who need urgent reproductive healthcare. These risks will fall disproportionately on the most vulnerable young people who may be unable to inform their parents due to fear for their safety.

Idaho cannot, consistent with the Constitution, threaten to punish residents of Amici States for giving information about and helping young people access lawful healthcare within our borders. Amici States request that the Court grant Plaintiffs' request for a temporary restraining order or preliminary injunction.

---

[1] Amici States are responding to the broad reading of Idaho Code § 18-623 by Attorney General Labrador, the official primarily responsible for its enforcement. *See* ECF No. 12-5. Amici States do not concede that this interpretation is legally correct or that the law could not be interpreted more narrowly either on its face or pursuant to a limiting construction.

## II.     INTERESTS OF AMICI CURIAE

Amici States have protected the right to give and receive abortion care, including allowing some or all minors to independently consent to such care. *See infra* § III(a). Idaho Code § 18-623 purports to criminalize adults—including residents of Amici States—who "recruit," "harbor," or "transport" minors to receive care that is legal in other states.

Amici States have important sovereign interests in preserving the authority to regulate public health within their borders. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003). These interests include protecting patient access to legal healthcare services, including patients who are residents of other states, and the ability of residents in Amici States to counsel and assist patients, including Idaho patients, in doing so. In addition, Amici States are themselves providers or administrators of healthcare to many, offering a range of reproductive care, including abortion. Amici States own and operate public hospital systems, employ healthcare personnel, and license and regulate the many healthcare providers that operate within their jurisdictions. Accordingly, Amici States have an interest in preventing uncertainties for those healthcare providers that Idaho's law may cause.

## III.     ARGUMENT

## A.     Amici States Have Chosen to Protect Minors' Ability to Access Abortion Care

Amici States acknowledge that Idaho can make sovereign decisions regarding abortion within its borders (to the degree consistent with federal and state constitutional limitations). Likewise, Amici States have a longstanding and significant interest in exercising their police power over public health policy within their own borders. Some Amici States have enacted laws permitting minors to access reproductive healthcare. Although these laws differ in specifics, they allow minors in at least some circumstances to independently consent to abortion care without requiring parental consent or notification, including in states bordering and neighboring Idaho.

In Washington, voters codified the right to choose abortion into state law, "declar[ing] that every individual possesses a fundamental right of privacy with respect to personal reproductive decisions," including the "right to choose or refuse to have an abortion." Wash. Rev.

Code § 9.02.100; *see also* Wash. Rev. Code § 9.02.110 ("The state may not deny or interfere with a pregnant individual's right to choose to have an abortion prior to viability of the fetus, or to protect the pregnant individual's life or health."). People of any age—including minors—have the right to independently consent to their own abortion care; parental consent is not required. Wash. Rev. Code § 9.02.100; *State v. Koome*, 530 P.2d 260 (Wash. 1975) (striking down a law requiring an unmarried minor to obtain parental consent before receiving abortion care).

In Oregon, state law ensures that a "consenting individual" cannot be deprived of "the choice of terminating the individual's pregnancy[,]" nor can a healthcare provider "who is acting within the scope of the health care provider's license" be prohibited from "terminating or assisting in the termination of a patient's pregnancy." Or. Rev. Stat. § 659.880. Minors aged 15 and older can independently consent to abortion care, and minors under 15 can independently consent when the provider reasonably believes involving the parent may result in abuse or neglect, or would not be in the minor's best interest. Or. Rev. Stat. § 109.640.

In California and Nevada, parental consent and notification requirements for minors have been invalidated by court order for decades, meaning minors can independently consent to abortion care in both states. *See Am. Acad. of Pediatrics v. Lungren*, 940 P.2d 797, 883-89 (Cal. 1997) (invalidating Cal. Health & Safety Code § 123450); *Glick v. McKay*, 937 F.2d 434, 442 (9th Cir. 1991) (invalidating Nev. Rev. Stat. § 442.255). In the meantime, California has enshrined the right of every individual to choose an abortion not only in statute, *see* Cal. Health & Safety Code § 123462 (declaring the public policy of the state that every individual has "the fundamental right to choose to bear a child or to choose and to obtain an abortion"), but also constitutionally, with voters recently approving an amendment protecting the "fundamental right to choose to have an abortion." Cal. Const., art. 1, § 1.1. And in Nevada, individuals have the legal right to choose to have an abortion when performed by a licensed physician within the first 24 weeks of pregnancy, and the legislature enacted a law this year protecting legal abortion care from out-of-state interference, including preventing Nevada from assisting in the arrest or extradition of someone

charged in another state for a crime related to reproductive healthcare services such as abortion. Nev. Rev. Stat. § 442.250; S.B. 131, 82nd Leg., Reg. Sess. (Nev. 2023).

Colorado enacted a statutory provision for abortion as a fundamental right in 2022. Col. Rev. Stat. § 25-6-403. In 2023, it enacted a law similar to Nevada's, providing protections for persons engaging in legal reproductive healthcare in Colorado against criminal, civil, or professional sanctions from other states. Col. S.B. 23-188 (Colo. 2023), *to be codified at* Colo. Rev. Stat. § 12-30-121 *et seq*. For minors, parental notification is not required in Colorado in circumstances including where the minor declares that she is a victim of child abuse or neglect, or when there is a medical emergency. Col. Rev. Stat. § 13-22-705. In Illinois, the Reproductive Health Act enshrines in statute the right to choose an abortion, recognizing "every individual has a fundamental right to make autonomous decisions about the individual's own reproductive health[.]" 775 ILCS 55/1-15. Parental notification for minors seeking an abortion is no longer required in Illinois. Ill. Pub. Act. 102-0685 (eff. June 1, 2022).

Many other states across the country, including the other Amici States, have similarly protected the individual right to choose their own reproductive care. *See, e.g.*, Center for Reproductive Rights, *After Roe Fell: Abortion Laws by State*, https://reproductiverights.org/maps/abortion-laws-by-state/ (last visited July 31, 2023) (interactive map showing state policies on rights to abortion care). Indeed, even in some of the Amici States with more restrictive abortion laws, their legislatures have still recognized the need, under certain circumstances, for minors to be able to make their own reproductive healthcare decisions without parental consent. *E.g.*, Ariz. Rev. Stat. § 36-2152.

**B.    Idaho Code § 18-623 Purports to Impermissibly Criminalize Legal Activity in Amici States**

In overruling *Roe v. Wade*, 410 U.S. 113 (1973), the Supreme Court said that it would return the power to decide the "basic legality" of abortion to each of the States, via their "people and . . . elected representatives." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. ___, 142 S. Ct. 2228, 2284 (2022); *see also id.* at 2309 (Kavanaugh, J., concurring). The people of the Amici

States, through these "constitutional processes of democratic self-government," *id.* at 2309 (Kavanaugh, J., concurring), have chosen to protect the right to access, and independently consent to, abortion care.

Amici States recognize Idaho may regulate abortion within its borders. But Idaho cannot purport to criminalize the lawful provision of abortion care outside the state. At a minimum, as Justice Kavanaugh indicated in *Dobbs*, a State cannot bar one of its residents from "traveling to another State to obtain an abortion"—and the question is "not especially difficult as a constitutional matter." *Dobbs,* 142 S. Ct. at 2309 (Kavanaugh, J., concurring).

Yet Idaho has gone even further than a ban on travel to obtain an abortion. Idaho's Attorney General explicitly interprets Idaho Code § 18-623 to cover prosecutions for "recruitment," "harboring," and "transporting" even when "the abortion occurs in another state where it is legal." ECF No. 12-5 at 2 (Olson Decl., Ex. 3); *see also* Idaho Code § 18-623(3). These criminal prohibitions, as interpreted by Attorney General Labrador, potentially cover and therefore chill speech and activity that is lawful in Amici States. *See* ECF No. 12-1 at 20-24 (Pls.' Mot. for a TRO). Consider this example. A teenage girl in Moscow, Idaho, calls her aunt in Pullman, Washington, less than ten miles away, to say she is pregnant and feels she cannot safely tell her parents. If the aunt tells her niece about a clinic in Pullman that offers abortion care and counseling, is that "recruitment"? What if the aunt texts her niece a web link to the clinic's informational material? Or if the niece books an appointment and the clinic's office manager emails her a pre-appointment information sheet? If the aunt pays for her niece's bus ticket to Pullman, is that "transportation"—or, as the Idaho law would have it, "trafficking"?

In view of the minor's right to interstate travel, the lawfulness of abortion care in Amici States, and the chilling effect that Idaho's law has on the provision of abortion-related information, such prosecutions would not withstand legal scrutiny. As the Supreme Court has held, a State cannot "bar a citizen of another State from disseminating information about an activity that is legal in that State," even if it does so "under the guise of exercising internal police powers." *Bigelow v. Virginia*, 421 U.S. 809, 824-25 (1975). The Court expressly applied this principle to abortion care

in *Bigelow*, reversing the conviction of a Virginia newspaper editor who published an advertisement for a New York referral service that helped women obtain legal abortions in New York, at a time when abortion was illegal in Virginia. *Bigelow*, 421 U.S. at 811-12. Under the First Amendment, the Court held that Virginia had no legitimate interest in "regulating what [its own residents] may hear or read about the New York services"—in other words, "shielding its citizens from information about activities outside Virginia's borders, activities that Virginia's police powers do not reach." *Id*. at 827-28.

So too here. Idaho may enact abortion laws within its borders. But basic principles of federalism and state sovereignty, as recognized in *Dobbs*, do not allow it to chill speech to prevent its citizens from learning about or accessing legal healthcare outside Idaho's borders—healthcare Idaho has no power to regulate.

**C.      Idaho Code § 18-623 Will Impose Significant Harms on Amici States**

**1.      Idaho's Restrictive Abortion Laws Have Caused Sharp Rises in Patients Seeking Care in Neighboring Amici States**

*Dobbs* has led to a patchwork of abortion laws across the country, with some states adopting near-total bans on abortion, and others (including many Amici States) providing robust protections for reproductive healthcare, including abortion. As a result, many Amici States have experienced an influx of out-of-state residents seeking care within their borders. Between April and August 2022, just before and after the *Dobbs* decision was released, Idaho saw a decrease in abortion care of 48 percent.[2] Meanwhile, providers in Amici States have endeavored to keep up with increased demand, especially in more rural areas where access is already limited.[3] In Washington, between January 2022 and early 2023, clinics reported an unprecedented 75%

---

[2] Society of Family Planning, *#We Count Report*, Oct. 28, 2022, https://societyfp.org/wp-content/uploads/2022/10/SFPWeCountReport_AprtoAug2022_ReleaseOct2022-1.pdf (last visited July 28, 2023).

[3] Eilis O'Neill, *Longer wait times, discoured patients: What abortion rights advocates in Washington expect post-Roe*, KUOW (July 01, 2022), https://www.kuow.org/stories/longer-wait-times-discoured-patients-what-abortion-rights-advocates-in-washington-expect-post-roe (last visited July 28, 2023).

increase in Idaho patients.[4] Planned Parenthood's clinic in Pullman, Washington—just eight miles from the Idaho border—reported that 62% of patients in June 2022 were Idahoans.[5] By July, that share increased to 78%.[6] Planned Parenthood reported serving Idaho residents at clinics even further into Washington, as far as Kennewick and Walla Walla, with drive times of more than four hours from Boise.[7]

In Oregon, providers report an average of 100 to 300 additional abortions performed per month post-*Dobbs*.[8] Providers at Oregon Health & Science University have noted that, prior to *Dobbs*, they mainly cared for individuals from Oregon and Washington. However, last year, the majority of OHSU's out-of-state patients were from Idaho and Texas—states with some of the most restrictive anti-abortion laws in the country.[9] Similarly, Planned Parenthood Columbia Willamette shared that most of their out-of-state patients seeking abortions are from Idaho.[10] And in Nevada, since June 2022, Las Vegas has seen a 37% increase in out-of-state patients at Planned Parenthood health centers. More than 1,200 patients came to Las Vegas from out of state, including Idaho.[11] Other states that have protected abortion access have likewise seen a rise in out-of-state

---

[4] Aria Bendix, *Idaho becomes one of the most extreme anti-abortion states with law restricting travel for abortions*, NBC News (April 6, 2023), https://www.nbcnews.com/health/womens-health/idaho-most-extreme-anti-abortion-state-law-restricts-travel-rcna78225 (last visited July 28, 2023).

[5] Megan Burbank, *Who is traveling to Washington for abortion care?* Crosscut, (Nov. 14, 2022), https://crosscut.com/equity/2022/11/who-traveling-washington-abortion-care. (last visited July 28, 2023)

[6] *Id.*

[7] *Id.*

[8] Nicole Rideout, *One year since the overturn of Roe, OB/GYNs report devastating impacts from lack of abortion access*, OSHU News (June 24, 2023), https://news.ohsu.edu/2023/06/24/one-year-since-the-overturn-of-roe-obgyns-report-devastating-impacts-from-lack-of-abortion-access (last visited July 28, 2023).

[9] *Id.*

[10] Kandra Kent, *Oregon sees uptick in abortion travel, most out-of-staters come from Idaho*, KPTV (Nov. 8, 2022), https://www.kptv.com/2022/11/08/oregon-sees-uptick-abortion-tourism-most-out-of-staters-come-idaho// (last visited July 28, 2023).

[11] Jessica Hill, *Las Vegas sees big spike in out-of-state abortion seekers*, Las Vegas Review-Journal (updated June 27, 2023), https://www.reviewjournal.com/news/politics-and-government/nevada/las-vegas-sees-big-spike-in-out-of-state-abortion-seekers-2800219/ (last visited July 28, 2023).

patients seeking abortion care. For example, the leading abortion care provider in Connecticut, Planned Parenthood of Southern New England, has experienced a 59% increase in patients coming to Connecticut to seek abortion care from the 19 states that have banned all or some abortions. Planned Parenthood Illinois reported that the number of patients seeking abortions rose 54% in the last year. During that time, almost 25% of patients at Planned Parenthood clinics traveled from other states, compared with only 7% before *Dobbs*.[12]

Amici States' healthcare providers are endeavoring to meet the needs of providing abortion and other reproductive care to Idaho residents. In the midst of this hugely increased demand, Idaho Code § 18-623 now imposes the fear of criminal prosecution on medical professionals and others for the provision of legal healthcare, as discussed further below.

### 2. Idaho Code § 18-623 Harms Amici States' Healthcare Providers, Residents, and Youth

Idaho Code § 18-623 imposes immediate harms on Amici States. First, by imposing the threat of criminal prosecution on medical professionals and others, it chills the ability of providers, organizations, and others in Amici States to convey necessary information to minor patients. Second, it forces costly delays for adolescents traveling to receive care, not only for Idahoans but also for residents of Amici States finding themselves traveling in or temporarily residing in Idaho. As the Governor of Washington warned, Idaho Code § 18-623 will endanger women and girls from Washington (and other Amici States) "if they travel to [Idaho] and find themselves in need of urgent reproductive health care services." Letter from Gov. Jay Inslee to Gov. Brad Little, Apr. 4, 2023 (attached as Appendix A). Both harms will most acutely affect care involving vulnerable young people, who may be unable to safely discuss their care with their parents.

First, under Attorney General Labrador's interpretation of Idaho Code § 18-623, medical professionals, reproductive health organizations, and others in Amici States will fear criminal

---

[12] Kaitlin Washburn, *Planned Parenthood of Illinois reports spike in abortion patients since Roe v. Wade was overturned,* Chicago Sun Times, (June 12, 2023), https://chicago.suntimes.com/2023/6/12/23758431/planned-parenthood-of-illinois-reports-spike-in-abortion-patients-since-roe-v-wade-overturned (last visited July 28, 2023).

prosecution and may be chilled from providing appropriate care, information, and counseling to their patients, clients, relatives, and friends.[13] For example, it is unclear whether a Washington medical provider who, while consulting with a pregnant Idahoan, offers a pamphlet detailing options or providing pre-appointment information could be guilty of "recruiting." It is likewise unclear whether an adult, such as a close family member, who knows about transportation options for a minor Idahoan seeking to end a pregnancy, could be guilty of "abortion trafficking" by sharing that information. Given this uncertainty, providers, counselors, and others in Amici States may choose to self-censor rather than face the risk of criminal prosecution—inhibiting the free flow of information about protected healthcare within Amici States' borders. *See Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (in context of an overbreadth challenge, self-censorship "harm[s] not only [the speaker] but society as a whole, which is deprived of an uninhibited marketplace of ideas."). This fear is only exacerbated for dually-licensed providers, for whom a licensing enforcement action in Idaho for violation of Idaho Code § 18-623 could also result in restrictions, fines, and even enforcement action in other states due to reciprocal licensing schemes.[14]

Second, Idaho Code § 18-623 will increase barriers to access by impacting patients' ability to arrange travel and housing, find funds, and manage other logistics—causing delays in care that increase medical risks, affecting not only patients but also healthcare providers in Amici States

---

[13] Idaho's Attorney General has also opined that referring a patient across state lines to obtain out-of-state abortion care could violate Idaho Code § 18-622. *See* ECF No. 12-4 (Olson Decl., Ex. 2) at 2. This Court has preliminarily enjoined the Attorney General's enforcement of § 18-622 under that interpretation. *Planned Parenthood Greater Nw. v. Labrador*, No. 1:23-cv-00142 (D. Idaho July 31, 2023), ECF No. 153.

[14] *See, e.g.*, Interstate Medical Licensure Compact, https://imlcc.org (last visited July 28, 2023) (showing over 41 states as members of the Compact); Interstate Medical Licensure Compact Commission, Rule on Coordinated Information System, Joint Investigations and Disciplinary Actions, at ¶ 6.5(a), https://www.imlcc.org/wp-content/uploads/2022/11/IMLCC-Rule-Chapter-6-Coordinated-Information-System-Joint-Investigations-and-Disciplinary-Actions-Adopted-November-16-2018-Amended-11-8-2022.pdf   (last visited July 28, 2023) ("Any disciplinary action by a disciplining Board shall be considered unprofessional conduct and may be a basis for discipline by the other member Boards. This includes any action that does not have a corresponding ground by the other member Board's Medical Practice Act . . . ."). State constitutional or statutory protections in some states may alleviate the reciprocal licensing concerns, but other states may not have such explicit protections.

endeavoring to provide high-quality, safe, and effective care. This only exacerbates the existing delays in care arising from the logistical challenges of the post-*Dobbs* patchwork itself.[15] University of Washington doctors say that, since *Dobbs*, they have seen an increase in the gestational ages at which patients first come to see them to obtain abortion care.[16] The medical director for Cedar River Clinics in Washington has said the same: "Patients are further along in their pregnancies when they come to see us."[17]

While abortion is safe at virtually any stage—and, without question, far safer than carrying a pregnancy to term—delays in receiving abortion care make treatment more intensive, increasing both the risks for the patient and the financial costs.[18] In addition, many pregnancy and miscarriage complications require time-sensitive treatment, including abortion care, to stabilize emergency conditions. In such circumstances, any failure or delay in providing necessary abortion care puts the patient's life or health at risk.[19] *See United States v. Idaho*, 623 F. Supp. 3d 1096, 1116 (D.

---

[15] The National Abortion Hotline reported sharp increases in their provision of financial assistance in the year following *Dobbs*: 235% for plane or bus fares, 195% for hotel rooms, and 403% for rideshares. National Abortion Federation, *A Year After Dobbs, More People Than Ever Are Traveling For Abortion Care*, (June 7, 2023), https://prochoice.org/a-year-after-dobbs-more-people-than-ever-are-traveling-for-abortion-care/ (last visited July 28, 2023)

[16] U.S. Senator Maria Cantwell, *SNAPSHOT: Abortion Care in the State of Washington One Year Post* Dobbs, Press Release (June 23, 2023), https://www.cantwell.senate.gov/download/06232023-dobbs-anniversary-report (last visited July 28, 2023)

[17] Nina Shapiro, *She secretly traveled 2,000 miles for her WA abortion. Why patients from the South are coming here*, The Seattle Times (Feb. 26, 2023), https://www.seattletimes.com/seattle-news/she-secretly-traveled-2000-miles-for-her-wa-abortion-why-patients-from-the-south-are-coming-here/ (last visited July 28, 2023).

[18] Elizabeth G. Raymond & David E. Grimes, *The Comparative Safety of Legal Induced Abortion and Childbirth in the United States*, 119 Obstetrics & Gynecology 215, 215 (2012) (concluding the risk of death associated with childbirth is approximately 14 times higher than that with abortion); National Academies of Sciences, Engineering, and Medicine, *The Safety and Quality of Abortion Care in the United States* 12, 77–78 (National Academies Press 2018), http://nap.nationalacademies.org/24950 (last visited July 28, 2023).

[19] *E.g.*, Reuters Fact Check, *Fact Check-Termination of Pregnancy Can Be Necessary to Save a Woman's Life, Experts Say*, Reuters (Dec. 27, 2021), https://www.reuters.com/article/factcheck-abortion-false/fact-check-termination-ofpregnancy-can-be-necessary-to-save-a-womans-life-experts-say-idUSL1N2TC0VD (last visited July 28, 2023); American College of Obstetricians and Gynecologists, *Facts Are Important: Understanding Ectopic Pregnancy*, https://www.acog.org/advocacy/facts-are-

Idaho Aug. 24, 2022) (identifying pregnancy-related complications that require emergency care and the harms caused by discouraging healthcare professionals from providing abortion care that would be necessary to save a patient's life). These delays affect not just Idahoans, but healthcare providers in Amici States, as well as minors traveling to, or temporarily residing in, Idaho and finding themselves urgently needing reproductive care. Further, as providers of health insurance for state employees and their children who may be temporarily visiting or residing in Idaho, Amici States have a direct financial interest in preventing increased risk to patients and increased costs of medical care from undue delays or impeded continuity of care.

Finally, Amici States, including our healthcare providers, recognize that the young people choosing not to disclose their pregnancies or their intent to terminate to their parents are often those at greatest risk from violence, family conflict, and other dangers.[20] Not all young people have the support of "capable parents."[21] One study found that one-third of minors who choose not to inform their parents about their reproductive healthcare decisions "have already experienced family violence and fear it will recur."[22] As the American Academy of Pediatrics' position statement explains, "risks of violence, abuse, coercion, unresolved conflict, and rejection are significant in unsupportive or dysfunctional families when parents are informed of a pregnancy against the adolescent's considered judgment."[23] This is why Amici States do not require forced involvement of parents or guardians where doing so would be unsafe or not in the minor's best interests. *See, e.g.*, *Hodgson v. Minnesota*, 497 U.S. 417, 439 (1990) (discussing district court

---

important/understanding-ectopic-pregnancy (last visited July 28, 2023) ("[U]ntreated ectopic pregnancy is life threatening; withholding or delaying treatment can lead to death.").

[20] *Cf.* Am. Acad. of Pediatrics, Comm. on Adolescence, *Policy Statement: The Adolescent's Right to Confidential Care When Considering Abortion*, 139 Pediatrics e20163861, at 4 (2017); J. Shoshanna Ehrlich, *Grounded in the Reality of Their Lives: Listening to Teens Who Make the Abortion Decision Without Involving Their Parents*, 18 Berkeley Women's L.J. 61, 94 (2003).

[21] Margaret Moon, *Adolescents' Right to Consent to Reproductive Medical Care: Balancing Respect for Families with Public Health Goals*, 12 Am. Med. Ass'n J. of Ethics 805, 806 (2012).

[22] Am. Acad. of Pediatrics, *supra*, at 4.

[23] *Id.*

finding of adverse effects of two-parent notification requirements, particularly where family violence is a problem). Idaho impermissibly seeks to punish those in Amici States for lawful acts taken within Amici's borders.

## IV.    CONCLUSION

This Court should grant Plaintiffs' motion for a temporary restraining order or, in the alternative, a preliminary injunction.

RESPECTFULLY SUBMITTED this 31st day of July, 2023.

ROBERT W. FERGUSON
  *Attorney General for the State of Washington*

s/ *Emma Grunberg*
EMMA GRUNBERG, WSBA 54659*
CRISTINA SEPE, WSBA 53609*
  *Deputy Solicitors General*
PO Box 40100
Olympia, WA 98504
206-326-5488
emma.grunberg@atg.wa.gov
cristina.sepe@atg.wa.gov

*Pro hac vice

KRIS MAYES
  *Attorney General*
  *State of Arizona*
2005 N. Central Ave.
Phoenix, AZ 85004

PHILIP J. WEISER
  *Attorney General*
  *State of Colorado*
1300 Broadway
Denver, CO 80203

KATHLEEN JENNINGS
  *Attorney General*
  *State of Delaware*
820 N. French Street
Wilmington, DE 19801

ROB BONTA
  *Attorney General*
  *State of California*
1515 Clay Street
Oakland, CA 94612

WILLIAM TONG
  *Attorney General*
  *State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

BRIAN L. SCHWALB
  *Attorney General*
  *District of Columbia*
400 6th Street, NW, Suite 8100
Washington, D.C. 20001

ANNE E. LOPEZ
  *Attorney General*
  *State of Hawai'i*
425 Queen Street
Honolulu, HI 96813

AARON M. FREY
  *Attorney General*
  *State of Maine*
6 State House Station
Augusta, ME 04333

ANDREA JOY CAMPBELL
  *Attorney General*
  *Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

AARON D. FORD
  *Attorney General*
  *State of Nevada*
100 North Carson Street
Carson City, NV 89701

RAÚL TORREZ
  *Attorney General*
  *State of New Mexico*
408 Galisteo Street
Santa Fe, NM 87504

JOSHUA H. STEIN
  *Attorney General*
  *State of North Carolina*
114 W. Edenton Street
Raleigh, NC 27603

PETER F. NERONHA
  *Attorney General*
  *State of Rhode Island*
150 South Main Street
Providence, RI 02903

KWAME RAOUL
  *Attorney General*
  *State of Illinois*
100 West Randolph Street
Chicago, IL 60601

ANTHONY G. BROWN
  *Attorney General*
  *State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

KEITH ELLISON
  *Attorney General*
  *State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

MATTHEW J. PLATKIN
  *Attorney General*
  *State of New Jersey*
25 Market Street
Trenton, NJ 08625

LETITIA JAMES
  *Attorney General*
  *State of New York*
28 Liberty Street
New York, NY 10005

ELLEN F. ROSENBLUM
  *Attorney General*
  *State of Oregon*
1162 Court Street NE
Salem, OR 97301

## CERTIFICATE OF SERVICE

I hereby declare that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System, which will serve a copy of this document upon all counsel of record.

DATED this 31st day of July 2023, at Olympia, Washington.

*s/ Stephanie N. Lindey*
Stephanie N. Lindey
 *Paralegal*
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200
Stephanie.Lindey@atg.wa.gov



**STATE OF WASHINGTON**
— **OFFICE OF GOVERNOR JAY INSLEE** —

April 4, 2023

The Honorable Brad Little
Governor
Office of the Governor
700 West Jefferson, Second Floor
Boise, ID 83702

Sent Via Email

Governor Little:

I write this letter to urge your veto of Engrossed House Bill 242 (EHB 242), a bill that will most certainly have many unacceptable consequences that cannot be cured.

Among the harmful impacts that this legislation will have, particularly when combined with Idaho's recently passed abortion bans, are the exodus of some healthcare professionals from your state as well as the certain resulting increased mortality rate of Idahoan women and girls.

I question the constitutionality of this law and I know you are aware of the costly legal challenges that await should you choose to sign this bill, but, as the governor of a neighboring state, I am also deeply concerned about the impacts that EHB 242 will have on Washington residents traveling to and from Idaho. I fear that our residents, in particular the women and girls of Washington, will be in grave danger if they travel to your state and find themselves in need of urgent reproductive health care services.  This bill would also attempt to punish some Washington residents who happen to be in your state for any length of time, a gross abuse of their right to travel between our states. As a result, all Washingtonians have a stake in this matter.

Regardless of your decision on this bill, we welcome Idaho's patients and health care providers with open arms in Washington. And, as we did during COVID, we will care for your residents in a manner consistent with their health care needs as determined by trained medical professionals, not politicians. But, make no mistake, Governor Little, the laws of another state that seek to punish anyone in Washington for lawful actions taken in Washington will not stand. We will protect our providers, and we will harbor and comfort your residents who seek health care services that are denied to them in Idaho.

Very truly yours,

Jay Inslee
Governor

cc:    Zach Hauge, Chief of Staff, State of Idaho, zach.hauge@gov.idaho.gov

Appendix A