RAÚL R. LABRADOR
ATTORNEY GENERAL

LINCOLN DAVIS WILSON, ISB #11860
Chief, Civil Litigation and
Constitutional Defense

JAMES E. M. CRAIG, ISB #6365
Deputy Division Chief
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
lincoln.wilson@ag.idaho.gov
james.craig@ag.idaho.gov

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| LAURDES MATSUMOTO, NORTHWEST ABORTION ACCESS FUND, and INDIGENOUS IDAHO ALLIANCE, <br><br> Plaintiffs, <br><br> v. <br><br> RAÚL LABRADOR, in his capacity as the Attorney General for the State of Idaho, <br><br> Defendant. | Case No. 1:23-cv-00323-DKG <br><br> **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .......................................................................................... 1

STANDARD OF DECISION ............................................................................... 3

ARGUMENT ............................................................................................... 5

I.     Plaintiffs are not likely to succeed on the merits .............................................. 5

    A. The Abortion Trafficking Ban protects parent's rights ................................... 6

        1. Parents have a right to know about care for their children........................ 6

        2. The Abortion Trafficking Ban protects parents' right to know ................. 8

    B. The Abortion Trafficking Ban does not punish speech ............................... 11

        1. The law criminalizes conduct, not speech ................................. 11

        2. Any minimal speech restriction passes constitutional scrutiny.............. 15

    C. The Abortion Trafficking Ban does not limit association............................ 19

    D. The Abortion Trafficking Ban is not vague.................................... 20

II.    The balance of harms and public interest do not favor an injunction ........... 24

III.   Plaintiffs have no irreparable injury.............................................. 24

CONCLUSION ............................................................................................ 29

### TABLE OF AUTHORITIES

**CASES**

*Alonso v. State,*
 228 So. 3d 1093 (Ala. Crim. App. 2016) ................................................. 22

*Bartosz v. Jones,*
 146 Idaho 449, 197 P.3d 310 (2008) .............................................. 6, 16

*Bellotti v. Baird,*
 443 U.S. 622 (1979).............................................................. 10

*Bigelow v. Virginia,*
 421 U.S. 809 (1975)........................................................... 15, 25

*Dobbs v. Jackson Women's Health Organization,*
 142 S.Ct. 2228 (2022)...................................................... 5, 10, 11

*Ex parte McCardle,*
 74 U.S. 506 .................................................................... 4

*Ex parte Young,*
 209 U.S. 123 (1908).......................................................... 25, 28

*Fraihat v. U.S. Immigr. and Customs Enf't,*
 16 F.4th 613 (9th Cir. 2021) ..................................................... 4

*Giboney v. Empire Storage & Ice. Co.,*
 336 U.S. 490 (1949)............................................................ 12

*Ginsberg v. State of N.Y.,*
 390 U.S. 629 (1968)........................................................... 8, 17

*Golden Gate Rest. Ass'n v. City & Cnty. Of San Francisco,*
 512 F3.d 1112 (9th Cir. 2008)..................................................... 4

*Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty,*
 415 U.S. 423 (1974)............................................................. 4

*Hill v. Colorado,*
 530 U.S. 703 (2000)........................................................... 20, 23

*H. L. v. Matheson,*
  450 U.S. 398 (1981) .......................................................................... 10

*Hodgers-Durgin v. de la Vina,*
  199 F.3d 1037 (9th Cir. 1999) ......................................................... 28

*Holder v. Humanitarian Law Project,*
  561 U.S. 1 (2010) ..................................................................... *passim*

*Lopez v. Candaele,*
  630 F.3d 775 (9th Cir. 2010) ........................................................... 25

*Los Angeles Cnty Bar Ass'n v. Eu*
  979 F.2d 697 (9th Cir. 1992) ........................................................... 28

*Madsen v. Women's Health Ctr.,*
  512 U.S. 753 (1994) ......................................................................... 19

*Martin v. Vincent,*
  34 Idaho 432, 201 P. 492 (1921) ................................................. 7, 14

*Nelson v. Evans,*
  170 Idaho 887, 517 P.3d 816 (Idaho 2022) ................................. 1, 7

*Newman v. Lance,*
  922 P.2d 395, (Idaho 1996) ............................................................. 26

*Parenthood of Idaho, Inc. v. Wasden,*
  376 F.3d 908 (9th Cir 2004) ............................................................ 26

*Planned Parenthood of Cent. Missouri v. Danforth,*
  428 U.S. 52 (1976) ........................................................................... 10

*Planned Parenthood Great Nw. v. State,*
  171 Idaho 374, 522 P.3d 1132 ..................................................... 5, 11

*Parham v. J.R.,*
  442 U.S. 584 (1979) ..................................................................... 7, 13

*Prince v. Massachusetts,*
  321 U.S. 158 (1944) ........................................................................... 6

*Recycle for Change v. City of Oakland,*
   856 F.3d 666 (9th Cir. 2017)..................................................... 11, 16, 17

*San Diego Cnty. Gun Rts. Comm. v. Reno,*
   98 F.3d 1121 (9th Cir 1996)..................................................... 28

*State v. Bryant,*
   953 So.2d 585 (Fla. App. 2007).................................................. 22

*State v. Guerra,*
   169 Idaho 486, 497 P.3d 1106 (Idaho 2021)................................... 8

*State v. Manzanares,*
   152 Idaho 410, 272 P.3d 382 (Idaho 2012).................................... 16

*State v. Scotia,*
   146 Ariz. 159 (Ariz. App. 1985) ................................................ 22

*State v. Stiffler,*
   117 Idaho 405, 788 P.2d 220 (1990) .......................................... 8

*State v. Summer,*
   139 Idaho 219, 76 P.3d 963, (Idaho 2003).................................... 26

*State v. Villafuerte,*
   160 Idaho 377, 373 P.3d 695 (2016) .......................................... 15

*Texas v. Johnson,*
   491 U.S. 397, (1989)............................................................. 17

*Thomas v. Anchorage Equal Rts. Comm'n,*
   220 F.3d 1134, (9th Cir. 2000)................................................. 28

*Troxel v. Granville,*
   530 U.S. 57, (2000)............................................................. 6, 7

*Twitter, Inc. v. Paxton*
   56 F.4th at 1170................................................................ 25

*United States v. O'Brien,*
   391 U.S. 367 (1968)............................................................ 17, 19

*United States v. Snead.,*
   2022 WL 17975015 at *4 (4th Cir. 2022) ............................................................ 22

*U.S. v. Gilbert,*
   813 F.2d 1523 (9th Cir. 1987) .............................................................................. 13

U.S. v. Swinson,
   No. 1:12-CR-279-EJL, Dkt. 2 at 8 (D. Idaho. Oct. 26, 2012) ............................ 21

*Wallis v. Spencer,*
   202 F.3d 1126 (9th Cir. 2000) ................................................................................ 7

*Ward v. Rock Against Racism,*
   491 U.S. 781 (1989) ............................................................................................. 16

*Winter v. Nat. Res. Def. Council, Inc.*
   555 U.S. 7 (2008) ................................................................................................... 4

STATUTES

Ariz. Rev. Stat. Ann. § 13-1307 (2021) ...................................................................... 21

Colo. Rev. Stat. § 18-3-504 (2019) ............................................................................. 22

Idaho Code § 16-1605 .................................................................................................. 14

Idaho Code § 18-202 .................................................................................................... 15

Idaho Code § 18-4506 .............................................................................................. 2, 14

Idaho Code § 18-622 ................................................................................................ 5, 11

Idaho Code § 18-623 .............................................................................................. *passim*

Idaho Code § 18-8602 .................................................................................................. 21

Idaho Code § 19-301 .................................................................................................... 15

Idaho Code § 19-302 .................................................................................................... 15

Idaho Code § 31-2227 .................................................................................................. 26

Idaho Code § 31-2604 .................................................................................................. 26

Wash. Rev. Code § 9A.40.100 (2017)........................................................................ 21

18 U.S.C. § 1591 ...................................................................................................... 21

**RULES AND REGULATIONS**

Child Protective Act, Title 16, Chapter 16, Idaho Code........................................... 14

**OTHER AUTHORITIES**

Attorney General Opinion 23-1 (April 27, 2023) ................................................ 26, 27

Press Release, Washington Man Sentenced in Idaho Sex Trafficking Case, U.S. Attorney, Dist. Of Idaho *Mar. 25, 2013) https://tinyurl.com/bddbupa2 ................. 21

*Newman, 129 Idaho at 102, 922 P.2d at 399*........................................................... 26

## INTRODUCTION

This is a lawsuit over the constitutionality of Idaho Code § 18-623, which Plaintiffs call the "Abortion Travel Ban." *See* Dkt. 12-1 at 2. But that is an egregious misnomer. The law does not ban anyone from traveling to another state, much less doing so to obtain an abortion that might be illegal in Idaho. The law prohibits not abortion travel, but rather abortion *trafficking*: recruiting, harboring, or transporting a pregnant minor for an abortion with *intent to conceal from the minor's parents or guardian.* Idaho Code § 18-623(1). It is an Abortion *Trafficking* Ban, not an Abortion *Travel* Ban. Plaintiffs still challenge it: they say they have a First Amendment right to help other people's children go to other states for abortions without their parents' knowledge, much less consent. But the Constitution recognizes no such thing.

To the contrary, the Constitution recognizes the rights of parents to be involved in medical decisions about their children. Plaintiffs' own allegations show that abortion is exactly that kind of decision. They allege that "[p]regnancy, childbirth and parenting significantly impact an individual's physical and mental health, finances, and personal relationships" and that becoming a parent "is extremely personal and permanent." Dkt. 1 ¶ 27. That is why "[a]n intimate decision of this magnitude," *id.*, should be made with the support and wisdom of at least one of a child's parents or guardians. "After all, there is the traditional presumption that a fit parent will act in the best interest of his or her child." *Nelson v. Evans*, 170 Idaho 887, 896, 517 P.3d 816, 825 (Idaho 2022) (internal quotation omitted).

Yet Plaintiffs turn this presumption on its head by taking it upon themselves to determine whether a parent is fit and whether they should get to decide their children's decisions.  Plaintiffs believe that they, not a pregnant minor's parents, get to decide what is in her best interests:

- that *they* have a right to hide a minor child from that child's parents if *they* believe that is appropriate;

- that *they* have a right to help transport a minor child across state lines for an abortion while concealing this transportation from the minor's parents;

- that *they* have a right to determine whether it is appropriate to notify a minor's parents about "an intimate decision of this magnitude."

Dkt. 1 ¶¶ 26–30, 32; *see also* Dkt. 12-9 ¶¶ 17–19; Dkt. 1 ¶¶ 26–30, 32, 47–51, 55; Dkt. 12-1 at 14, 21, 25–26; Dkt. 12-7 ¶¶ 43–45, 47–51, 53–54; Dkt. 12-8 ¶¶ 39–41, 50–54; Dkt. 12-9 ¶¶ 12–14, 18–19, 20–23, 26–27.

In any other context, Plaintiffs' statements about their plans would readily be recognized for what they are: the crime of child custody interference.  That offense is when one "intentionally and without lawful authority … takes, entices away, keeps or withholds any minor child from a parent or another person or institution having custody, joint custody, visitation, or other parental rights."  *See* Idaho Code § 18-4506(1)(a).  That is exactly what Plaintiffs want to do here.  And if they do it for the additional purpose of helping a pregnant minor to obtain an abortion with an intent to conceal the abortion from the minor's parents, they also commit the crime of abortion trafficking.

In this light, Plaintiffs do not meet any of the requirements for a preliminary injunction.  The law does not violate their freedom of speech, but rather regulates their conduct: helping other people's children cross state lines for an abortion with the intent to conceal the abortion from the minor's parents.  That does not violate Plaintiffs' freedom of association either.  Neither is the law vague, since the conduct it prohibits—recruiting, harboring, or transporting a minor—is the same conduct prohibited by other human trafficking statutes, including federal statutes that Plaintiffs' counsel enforced as U.S. Attorney.  The balance of harms and public interest overwhelmingly favor the parents whom the Abortion Trafficking Ban protects, and whom Plaintiffs seek to prevent from knowing about major decisions affecting their children.  Finally, Plaintiffs are not even injured with a threat of prosecution.  They have not alleged any threat to actual protected speech, and the Attorney General has no authority to prosecute them until a county prosecutor either requests his assistance or refuses to enforce the law.  That lack of prosecutorial authority is not just fatal to Plaintiffs' claims on the merits, but also to the Court's jurisdiction.

Plaintiffs' contention that the Constitution gives them the right to get minors to travel across state lines for an abortion without their parents' knowledge is truly shocking.  That shocking contention does not entitle them to a preliminary injunction.

### STANDARD OF DECISION

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of

persuasion." *Fraihat v. U.S. Immigr. and Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (internal quotations omitted, emphasis removed).  To obtain this extraordinary relief, Plaintiffs must show (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm without injunctive relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Couns., Inc.*, 555 U.S. 7, 20 (2008).  "Likelihood of success on the merits is the most important factor." *Fraihat*, 16 F.4th at 635 (internal quotations and citation omitted).  A "possibility" of irreparable injury is not sufficient, rather plaintiffs seeking preliminary relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 20 (emphasis in original). And a court cannot grant a preliminary injunction if it lacks subject matter jurisdiction. *See Ex parte McCardle*, 74 U.S. 506, 514.

A temporary restraining order follows the same test as for a preliminary injunction, but "should be restricted to ... preserving the status quo" pending a full hearing. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty*, 415 U.S. 423, 439 (1974).  The Ninth Circuit holds that, for a challenge to state law, the status quo presumes that the legislation will go into effect as enacted.  *See Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008).  Thus, a temporary restraining order here would disturb, rather than preserve, the status quo.

ARGUMENT

## I.   Plaintiffs are not likely to succeed on the merits.

While Plaintiffs nominally complain about the Abortion Trafficking Ban, their true grievance is with Idaho's abortion policy in general.  Thus, they begin their brief with the assertion that "Idaho has some of the most oppressive criminal abortion statutes in the United States," since "'[e]very person who performs or attempts to perform an abortion … commits the crime of criminal abortion.'"  Dkt. 12-1 at 1 (quoting Idaho Code § 18-622(1)).  But no matter Plaintiffs' views that these laws are "oppressive," the Supreme Court of the United States in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), held that the U.S. Constitution does not impose any barriers on enacting them.  And shortly thereafter, the Idaho Supreme Court held the Constitution of the State of Idaho also does not "protect abortion as a fundamental right," and that Idaho's criminal laws on abortion are constitutional. *Planned Parenthood Great Nw. v. State*, 171 Idaho 374, 522 P.3d 1132, 1148–49 (Idaho 2023).  So, there is no question that Idaho can lawfully prohibit criminal abortion.  And here too, despite Plaintiffs' many grievances about Idaho's laws, the question is not whether Idaho's Abortion Trafficking law "is good policy," but simply whether it is constitutional.  *Id.* at 381, 522 P.3d at 1149.  Plainly, it is.

None of Plaintiffs' claims are likely to succeed.  They sidestep over the important purposes of the Abortion Trafficking Ban in protecting parents' rights.  The law does not threaten their speech—instead, it prohibits only specified conduct that intentionally causes a pregnant minor's abortion with an intent to conceal the

abortion from the minor's parents.  The law does not prohibit them from associating with anyone.  Nor is it vague: the same three verbs that Plaintiffs challenge—recruit, harbor, and transport—are used in many human trafficking statutes, including the federal statutes that Plaintiffs' counsel previously enforced and the statutes of various State Amici.  The Court should deny a preliminary injunction.

## A. The Abortion Trafficking Ban protects parents' rights.

The Abortion Trafficking Ban is targeted legislation designed to protect a fundamental right secured by both the Idaho and the U.S. Constitutions—parents' "fundamental right 'to make decisions concerning the care, custody and control of their children.'"  *Bartosz v. Jones*, 146 Idaho 449, 465, 197 P.3d 310, 326 (Idaho 2008) (Eismann, J., concurring) (quoting *Troxel v. Granville*, 530 U.S. 57, 66 (2000)).  Thus, the Abortion Trafficking Ban does not punish those who take a pregnant minor across state lines for an abortion *unless* they do so with the specific intent to conceal it from her parents or guardian.  Doing so is not constitutionally protected conduct.

## 1. Parents have a right to know about care for their children.

States have an important and compelling interest in protecting a parent's right to make healthcare decisions for their children.  For almost 80 years, U.S. Supreme Court precedent has stated that "[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."  *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944).  "The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and

capacity for judgment required for making life's difficult decisions." *Parham v. J.R.*, 442 U.S. 584, 602 (1979). "More important, historically, it has recognized that natural bonds of affection lead parents to act in the best interests of their children." *Id.* "Most children, even in adolescence, simply are not able to make sound judgments concerning many decisions, including their need for medical care or treatment." *Id.* at 603. "Parents can and must make those judgments." *Id.* And so "parents have a right arising from the liberty interest in family association to be with their children while they are receiving medical attention." *Wallis v. Spencer*, 202 F.3d 1126, 1142 (9th Cir. 2000).

Idaho law has recognized the same thing for over a century: "[t]he right of a parent to the custody, control, and society of his child is one of the highest known to the law." *Martin v. Vincent*, 34 Idaho 432, 201 P. 492, 493 (Idaho 1921). Idaho law says that parents have a fundamental right to make child rearing decisions. *Nelson,* 170 Idaho at 894–95, 517 P.3d at 823–24 (citing *Troxel v. Granville*, 530 U.S. 57 (2000)). "[T]he interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by the Supreme Court of the United States." *Id.* at 896, 517 P.3d at 825 (internal quotations omitted).

Because the Constitution protects these rights *from* governmental interference, legislatures necessarily have authority to enact laws to further these rights. As the Supreme Court of the United States has recognized, because "the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society," a state legislature may "properly

conclude that parents … are entitled to the support of laws designed to aid discharge of that responsibility." *Ginsberg v. State of N.Y.*, 390 U.S. 629, 639 (1968). That is just what the Abortion Trafficking Ban does.

### 2. The Abortion Trafficking Ban protects parents' right to know.

The Abortion Trafficking Ban protects the fundamental rights of parents to give—and, in turn, their minor children to receive—help and advice to their minor children if they become pregnant. The law does so by making it an essential element of the offense, to be proved beyond a reasonable doubt, that it is done with "intent to conceal an abortion from the parents or guardian of a pregnant, unemancipated minor." Idaho Code § 18-623(1). "Crimes in Idaho are categorized as either 'general intent' or 'specific intent' crimes. *State v. Stiffler*, 117 Idaho 405, 406, 788 P.2d 220, 221 (1990)[,]" and a "specific intent" crime is one that, like this statute, "refers to that state of mind which in part defines the crime and is an element thereof." *State v. Guerra*, 169 Idaho 486, 503, 497 P.3d 1106, 1123 (Idaho 2021). Here, the specific intent required for Abortion Trafficking is the intent to conceal the abortion from the pregnant minor's parents or guardian. Simply assisting a pregnant child in obtaining an abortion, without that specific intent, does not violate the statute.

Plaintiffs largely ignore this important element of the crime. They erroneously assert that the statute "made it unlawful to provide travel assistance within Idaho, including helping minors reach or cross Idaho's borders." Dkt. 1 at 3. And they omit the specific intent element of the Abortion Trafficking statute repeatedly throughout

Plaintiffs' filings.[1]  The State Amici make the same mistake, not once addressing the intent to conceal requirement of the statute in their brief.  *See generally* Amicus Brief of the States in Support of Plaintiff's Motion for a Temporary Restraining Order, Dkt. 20-1.  But Plaintiffs plainly cannot prevail on a challenge to a state statute without acknowledging all of its essential elements.

Still, it is clear that Plaintiffs want to violate the specific intent requirement that they gloss over.  Plaintiff Matsumoto, a member of the bar, "would like to provide temporary shelter for pregnant minors … who are traveling to obtain … abortion care … *whether those minors' parents know or do not know*" by "assisting them obtain transportation from Idaho to those states."  *See* Dkt. 12-1 at 4 (emphasis added).  And Plaintiff NWAAF says that "[p]arents and guardians *may or may not have known or approved* of NWAAF's support of these minors," which support includes "provid[ing] food and lodging assistance" to minors seeking abortions.  Dkt. 12-9 ¶¶ 17-19.  Plaintiff Indigenous Idaho Alliance states that its mission and belief includes "providing financial, transportation, and logistical assistance to pregnant minors

---

[1] *See, e.g.*, Dkt. 1 ¶ 26 (stating that "the simple act of driving a minor to the Oregon border to get an abortion without the minor's parent or guardian knowing" is illegal, but ignoring the specific intent element of the statute); *id.* ¶ 74 (stating that the statute "prevents Plaintiffs and pregnant minors from traveling within Idaho to reach a state where abortion is lawful," but ignoring the specific intent requirement of the statute); *id.* ¶ 79 (stating that the statute "prevent[s] minors from accessing abortion care that is legal in Idaho's neighbor states by criminalizing a trusted adult's travel," but ignoring the specific intent requirement of the statute); *id.* ¶ 106 (failing to recognize the specific intent requirement of the statute); *id.* ¶ 116 (failing to recognize the specific intent requirement of the statute); Dkt. 12-1 at 1 (stating that "Idaho criminalized conduct by adults who assist pregnant minors in receiving abortion care," but ignoring the specific intent element of the statute).

within the region seeking legal abortion, *with or without the knowledge or consent of their parents or guardians*." Dkt. 12-8 ¶ 61.; *see also* Dkt. 1 ¶¶ 26–30, 32, 47–51, 55; Dkt. 12-1 at 14, 21, 25–26; Dkt. 12-7 ¶¶ 43–45, 47–51, 53–54; Dkt. 12-8 ¶¶ 39–41, 50–54; Dkt. 12-9 ¶¶ 12–14, 18–19, 20–23, 26–27.

The Amici States note that their laws allow minors to obtain an abortion without parental consent. Dkt. 20-1 at 2–4. But that does not diminish in the least the State of Idaho's choice to protect parents' fundamental right over these important decisions. Indeed, even in the *Roe* era, the Supreme Court of the United States recognized that parental involvement in these decisions is critical. There are "potentially grave emotional and psychological consequences of the decision to abort," which "has potentially traumatic and permanent consequences." *H. L. v. Matheson*, 450 U.S. 398, 412–13 (1981). Consultation with parents is "particularly desirable with respect to the abortion decision—one that for some people raises profound moral and religious concerns." *Bellotti v. Baird*, 443 U.S. 622, 640 (1979). As Justice Stewart so poignantly stated, "[t]here can be little doubt that the State furthers a constitutionally permissible end by encouraging an unmarried pregnant minor to seek the help and advice of her parents in making the very important decision whether or not to bear a child." *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 91 (1976) (Stewart, J. concurring), *abrogated as to the right to abortion by Dobbs*, 142 S. Ct. 2228 (2022). "That is a grave decision, and a girl of tender years, under emotional stress, may be ill-equipped to make it without mature advice and emotional support." *Id.*

Thus, now that the Supreme Court has recognized that no federal right to abortion exists, ensuring that a pregnant minor child receives the advice and support of her parents before making a decision to receive an abortion is all the more compelling.  If anything, the laws of the Amici States—not Idaho—risk running afoul of the U.S. Constitution because they reject parental rights in this manner.

### B. The Abortion Trafficking Ban does not punish speech.

#### 1. The law criminalizes conduct, not speech.

Plaintiffs are not likely to succeed on the merits because their claims do not implicate the First Amendment's free speech protections.  "The first step of First Amendment analysis is to determine whether the regulation implicates protected expression." *Recycle for Change v. City of Oakland*, 856 F.3d 666, 669 (9th. Cir. 2017). That is not the case here: the Abortion Trafficking Ban regulates conduct, not speech, and does not implicate protected expression.

All of the key terms of the Abortion Trafficking Ban relate to conduct, not speech.  The conduct it prohibits is procuring an abortion or obtaining an abortion-inducing drug for a pregnant minor "by recruiting, harboring, or transporting the pregnant minor within this state[.]" *See* Idaho Code § 18-623(1).  Procuring an abortion is not protected expression—rather, it is a crime, Idaho Code § 18-622, one that the Supreme Court of the United States and the Idaho Supreme Court have concluded the State may lawfully punish.  *Dobbs*, 142 S. Ct. 2228; *Planned Parenthood Great Nw.*, 171 Idaho at 380–81, 522 P.3d at 1148–49.  Nor does the First

Amendment protect "recruiting, harboring, or transporting" a minor for the purpose of that crime.

Plaintiffs say that their intended activities are "expressive conduct" because their assistance to the pregnant unemancipated minors "conveys a message of support for pregnant minors seeking to obtain lawful abortion care" and "conveys a clear message of support for abortion itself." Dkt. 12-1 at 11–12. But that is true of all criminal conduct. Paying a hitman for a murder conveys a message of support for murder for hire. Propositioning a prostitute conveys a message of support for transactional sexual relationships. Possessing large quantities of methamphetamine conveys a message of support for the drug trade. Everything and anything conveys a message of support for something, but that does not make it protected under the First Amendment. And conduct lawfully criminalized by statute does not become speech simply because it necessarily "conveys a message."

Thus, the Supreme Court of the United States has specifically rejected the argument that "the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute." *Giboney v. Empire Storage & Ice. Co.*, 336 U.S. 490, 498 (1949). In that case, the speech at issue, picketing outside a business, was part of a "single and integrated course of conduct" "to compel Empire to agree to stop selling ice to nonunion peddlers" in violation of Missouri law. *Id*. Similarly, in the instant case, to the extent the Abortion Trafficking statute impacts speech, it only does so when that speech is part of a "single and integrated course of conduct" to procure an

abortion or obtain an abortion-inducing drug for a pregnant unemancipated minor child with the intent to conceal that abortion from the minor's parents or guardian.

Nor is there support for Plaintiffs' claims in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010). The statute there, which prohibited the material support for terrorist organizations, "regulate[d] speech on the basis of its content," and whether the plaintiffs were able to speak to certain groups depended solely on "what they say." *Id.* at 27. In contrast, the Abortion Trafficking Ban does not prohibit speech of any kind. It does not stop Plaintiffs from sharing their views about abortion, or any other subject, to any person they want, including pregnant unemancipated minor children. But what they cannot do is take certain steps to procure an abortion or obtain an abortion-inducing drug for that pregnant minor with the intent to conceal it from the child's parents or guardian. The mere fact that speech may be used in recruiting, harboring, or transporting the child is immaterial: "[a]n illegal course of conduct is not protected by the first amendment merely because the conduct was in part carried out by language in contrast to direct action." *United States v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir. 1987).

Plaintiffs say they need to take these actions as to *all* pregnant minors because *some* of them may be abused or neglected by their parents. Dkt. 12-1 at 1. But "the statist notion" that Plaintiffs have the unilateral right to substitute themselves for a child's parents "in *all* cases because *some* parents abuse and neglect children is repugnant to American tradition." *Parham*, 442 U.S. at 603. And if Plaintiffs have concerns about abuse and neglect, Idaho already has in effect a comprehensive

statutory scheme for protecting children from parents who abuse or neglect their children. *See* Child Protective Act, Title 16, Chapter 16, Idaho Code. This statutory scheme starts not with Plaintiffs determining for themselves whether parents are fit or not, but a report to the Idaho Department of Health and Welfare or local law enforcement. In fact, Plaintiffs, should they have a "reason to believe" that a pregnant minor they are trying to help "has been abused, abandoned, or neglected," have a *duty* to report the matter, within 24 hours, to the proper law enforcement agency or the Idaho Department of Health and Welfare. Idaho Code § 16-1605(1). Failing to make the report is a misdemeanor. *See* Idaho Code § 16-1605(4).

Plaintiffs do not have a First Amendment interest in frustrating Idaho's presumption of parental custody over children. "It is incumbent upon him who seeks to invade the home and remove a child from its protection, and from the custody of its natural guardians to show facts sufficient to justify his action[s] under the law." *Martin*, 34 Idaho 432, 201 P. at 493. "Parents are not required in the first instance to take upon themselves the burden of proving their fitness to have the care of their children, or that they are properly exercising their parental control." *Id.* That is why Idaho law makes it a crime, not a right, to interfere with a parent's custody, which is what Plaintiffs seek to do here. Idaho Code § 18-4506(1)(a). Plaintiffs' mere speculation that some parents might abuse their children is not sufficient to justify their argument that they should be allowed to remove all pregnant minors from the protection and custody of their parents regarding the decision as to whether to have an abortion or not.

The State Amici, quoting *Bigelow v. Virginia*, 421 U.S. 809, 824–25 (1975), argue that the State of Idaho "cannot 'bar a citizen of another State from disseminating information about an activity that is legal in that State,' even if it does so 'under the guise of exercising internal police powers.'" Dkt. 20-1 at 5. But this is not a situation like in *Bigelow* involving an attempt to prosecute the mere advertisement of something that is legal in another state. 421 U.S. at 815 n.5. The Abortion Trafficking Ban does not criminalize the mere act of publicizing the fact that abortion is legal in another state, but instead punishes specific conduct furthering specific crimes with specific intent. And as long as the defendant commits "any essential element of the crime" within the State of Idaho, Idaho courts have jurisdiction over the crime, even if other elements of the crime are committed outside Idaho's borders. *See State v. Villafuerte*, 160 Idaho 377, 379, 373 P.3d 695, 697 (2016) (citing Idaho Code §§ 18-202(1), 19-301(1), and 19-302). And just as the State of Idaho cannot criminalize abortion in the state of Washington, or any other state, those states cannot force Idaho to allow Plaintiffs, or any other person, to violate Idaho's criminal laws.

## 2. Any minimal speech restriction passes constitutional scrutiny.

Even if the Abortion Trafficking Ban had some minimal effect on speech, it would easily be upheld under applicable First Amendment standards. Plaintiffs say the law is "subject to strict scrutiny," but they fail to show the critical premise for applying that test: that the law regulates speech by its content. Dkt. 12-1 at 13. That premise is not met here.

"A content-based law is one that targets speech based on its communicative content or applies to particular speech because of the topic discussed or message expressed." *Recycle for Change*, 856 F.3d at 670 (internal quotations and brackets omitted). The first step to determining "whether a law is content based is to consider whether a regulation of speech on its face draws distinctions based on the message a speaker conveys." *Id.* (internal quotations omitted). But the Abortion Trafficking Ban does not reference speech at all, much less do so based on its content. Plaintiffs may express any message they like under the Abortion Trafficking Ban. To the extent the law even implicitly addresses speech, it addresses only its effects, not the message it expresses. Thus, the statute focuses on transitive action verbs—to "procure" or "obtain" an abortion or to "recruit," "harbor," or "transport" a pregnant minor—not on expressive verbs. The law does not discriminate on the basis of the content of any speech, but "on the basis of non-expressive, non-communicative conduct." *Id.* at 672. Speakers may express any message they wish, so long as they do not cause a pregnant minor to obtain an abortion with the specific intent to conceal the fact from the minor's parents.

That this may have "an incidental effect of some speakers or messages but not others" is immaterial because the law "serves purposes unrelated to the content of expression[.]" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Here, that purpose is the protection of the fundamental rights of parents to "make decisions concerning the care, custody and control of their children." *Bartosz*, 146 Idaho at 465 (Eismann, J. concurring). And that purpose is unrelated to the content of a message

Plaintiffs, or any other person, may wish to express through their conduct. The law is therefore content-neutral.

So, at the very most, if any speech-related test must be applied to the Abortion Trafficking Ban, the Court should apply the "relatively lenient" standard from *United States v. O'Brien*, 391 U.S. 367, 376 (1968). *Texas v. Johnson*, 491 U.S. 397, 407 (1989). This test applies to statutes in which "speech and nonspeech elements are combined in the same course of conduct." *Id.* (internal quotations omitted). Under this test, "a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *Id.* "Under *O'Brien*, a government regulation is sufficiently justified [1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Recycle for Change*, 856 F.3d at 674 (internal quotations omitted, brackets in original). The Abortion Trafficking Ban meets all of these elements.

*First*, there is no question that Idaho has the power to enact this law. As noted above, a state legislature may "properly conclude that parents … are entitled to the support of laws designed to aid discharge" of their responsibility to care for their children. *Ginsberg*, 390 U.S. at 639.

*Second*, the Abortion Trafficking Ban furthers an important government interest. The law protects the fundamental right of parents to make medical

decisions for their children, and thus also protects the children themselves by helping ensure that they have the guidance of their parents.  The fact that Plaintiffs are so eager to obtain and conceal abortions from children's parents shows the compelling need for a statute like this.  Plaintiffs do not believe it is important for minors to have their parents' input in getting an abortion decision.  And they believe that they have a right to help traffic children out of state for that purpose, regardless of whether their parents know.  The State has a compelling interest in ensuring otherwise.

*Third*, the State's interest is unrelated to the restriction of free expression. Ensuring that any assistance for out-of-state abortions take place only with the knowledge of a child's parents has no relation to free speech.

*Fourth*, any incidental restriction on speech is no more than is necessary to protect parental rights.  The Abortion Trafficking Ban satisfies this standard with its specific intent requirement concerning parental consent.  Idaho Code § 18-623(1). That element goes directly to the interest served by the statute—helping ensure parental involvement in the pregnant minor's decision as to whether to have an abortion.  The statute could have been written as a general intent crime, and simply required as an element of the crime that the parents or guardian did not affirmatively consent to the abortion.  *Cf. Holder*, 561 U.S. at 17–18.  Instead, the legislature narrowed the statute to require an intent to conceal the abortion from the pregnant minor's parents or guardian.  That requirement quite arguably removes the conduct at issue entirely from First Amendment protections.  *See id.* at 56–57 (Breyer, J.

dissenting).  But at the very least, it amply satisfies the lenient *O'Brien* test—the most rigorous test that could apply to the law.

The Abortion Trafficking Ban thus does not infringe on free speech.

## C. The Abortion Trafficking Ban does not limit association.

Neither does the Abortion Trafficking Ban violate Plaintiffs' "First Amendment rights of association."  Dkt. 12-1 at 12.  "The freedom of association protected by the First Amendment does not extend to joining with others for the purpose of depriving third parties of their lawful rights."  *State v. Manzanares*, 152 Idaho 410, 424, 272 P.3d 382, 396 (Idaho 2012) (quoting *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 776 (1994)).  That is exactly what the statute prohibits by requiring proof the intent to conceal an abortion from the pregnant minor's parents or guardian.  Nothing about that offends the Constitution.

At bottom, the law does not prohibit Plaintiffs from associating with anyone, including minor children.  What it prohibits is conduct related to such an association: procuring an abortion or obtaining an abortion inducing drug for a pregnant minor by recruiting, harboring, or transporting that minor with the intent to conceal the abortion from the minor's parents or guardian.  The Supreme Court of the United States in *Holder* summarily dismissed the notion that the statute there "prohibit[ed] being a member of one of the designated groups," since what it in fact "prohibits is the act of giving material support."  561 U.S. at 39–40.  The Court should reach the same conclusion here.

**D. The Abortion Trafficking Ban is not vague.**

Finally, the Abortion Trafficking Ban does not fall afoul of constitutional vagueness principles. A statute is impermissibly vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder*, 561 U.S. at 18. While a more stringent test applies in the First Amendment context, Plaintiffs have not shown that the law restricts any protected speech. And even in the First Amendment context, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Id.* at 19. (internal quotations omitted). As the Supreme Court noted in *Hill v. Colorado*, "while there is little doubt that imagination can conjure up hypothetical cases in which the meaning of these terms will be in nice question, because we are condemned to the use of words, we can never expect mathematical certainty from our language." 530 U.S. 703, 733 (2000) (cleaned up).

Plaintiffs argue that the statute is unconstitutionally vague because it "does not contain or refer to a definitions section that would tell Plaintiffs when their conduct would constitute recruiting, harboring, or transporting." Dkt. 12-1 at 15. But these are not unfamiliar terms used in isolation that only lawyers could understand. Rather, these terms are well within common understanding, which is why they are so commonly used in state and federal criminal trafficking statutes across the country:

**Idaho law:** In addition to the Abortion Trafficking Ban, Idaho's general human trafficking statute criminalizes those same three verbs—"recruitment, harboring, transportation"—if in furtherance of subjecting a person "to involuntary servitude, peonage, debt bondage, or slavery." Idaho Code § 18-8602(1)(a)(ii). If those verbs are vague when used to prevent abortion, they are also vague when used to prevent slavery.

**Federal law:** The U.S. criminal code likewise makes it a crime to "recruit[],… harbor[], [or] transport[] … a person … knowing … that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1). When Plaintiffs' counsel served as United States Attorney for the District of Idaho, she evidently believed the same three words—recruit, harbor, and transport—were clear enough that she could prosecute not just violations of the law, but even attempts to interfere with its enforcement. *See United States. v. Swinson*, No. 1:12-CR-279-EJL, Dkt. 2 at 8 (D. Idaho. Oct. 26, 2012); Press Release, Washington Man Sentenced in Idaho Sex Trafficking Case, U.S. Attorney, Dist. of Idaho (Mar. 25, 2013), https://tinyurl.com/bddbupa2. How she now claims those verbs are unconstitutionally vague is a mystery.

**Other states:** Several other states, including some of the Amici States, use similar verbiage to criminalize human trafficking. *See, e.g.*, Wash. Rev. Code § 9A.40.100 (2017) ("A person is guilty of trafficking in the first degree when such person recruits, harbors, transports ... by any means another person ....") (cleaned up); Ariz. Rev. Stat. Ann. § 13-1307 (2021) ("'Traffic' means to entice, recruit, harbor,

provide, transport or otherwise obtain another person."); Colo. Rev. Stat. § 18-3-504 (2019) ("A person commits human trafficking of a minor for sexual servitude if the person knowingly sells, recruits, harbors, transports ... by any means, maintains, or makes available a minor for the purpose of commercial sexual activity.").

Sex traffickers have repeatedly argued these terms are unconstitutionally vague. And courts have repeatedly held otherwise. *See, e.g.*, *United States v. Snead*, 2022 WL 17975015 at *4 (4th Cir. 2022) (stating that each of the verbs "recruits, entices, harbors, transports, provides" has an ordinary meaning that would provide a person of ordinary intelligence fair notice of what conduct is prohibited"); *Alonso v. State*, 228 So. 3d 1093, 1101–02 (Ala. Crim. App. 2016) (upholding a statute that assigning criminal liability to an individual who "knowingly obtains, recruits, ... harbors, ... transports, provides, or maintains any minor for the purpose of causing a minor to engage in sexual servitude" and rejecting a vagueness challenge to its constitutionality); *State v. Scotia*, 146 Ariz. 159, 160 (Ariz. App. 1985) (collecting cases regarding the use of the term "transport" for drug transport statute); *State v. Bryant*, 953 So.2d 585, 587 (Fla. App. 2007) (reversing trial court finding of unconstitutional vagueness based on word "transport"). The fact that the statute concerns abortion does not magically transform a plain word into an unclear one. Plaintiffs' vagueness challenge is thus wholly lacking in merit.

Plaintiffs also argue that the "statute fails to provide adequate notice regarding what culpability attaches to communication or the lack thereof with a minor's parents and/or guardians." Dkt. 12-1 at 16. But the many questions they

ask on this point do not move the needle.  The elements of the statute do not depend upon any communication or lack of communication with the parents, but rather whether the defendant takes action to procure an abortion for a pregnant minor *with intent to conceal from the parents.*  Idaho Code § 18-623(1).  A prosecutor must prove that element of specific intent beyond a reasonable doubt.  Thus, providing parents with notice and advance knowledge would likely prevent a prosecutor from bringing a case, while a prosecutor might be able to argue the specific intent requirement was met if a defendant provided no notice to the child's parents.

State Amici also raise other hypothetical arguments about what the statute may or may not cover.  Dkt. 20-1 at 5.  But this case involves challenges from the Plaintiffs, and as such the Court can only look at "the particular facts at issue," since a "plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  *See Holder*, 561 U.S. at 18–19; *see also* Dkt. 31 at 3 ("The Amici States … may not initiate, create, extend, or enlarge the issues.").  And the Supreme Court of the United States has admonished that "while there is little doubt that imagination can conjure up hypothetical cases in which the meaning of these terms will be in nice question, because we are condemned to the use of words, we can never expect mathematical certainty from our language." *Hill*, 530 U.S. at 733 (cleaned up).  One can ask unending questions in an attempt to raise hypothetical situations in which the applicability of the statute might be in question.  But the terms the Abortion Trafficking Ban employs have long been used by a variety of different trafficking statutes in a variety of different jurisdictions.  So

Idaho Code § 18-623 provides more than ample notice to a person of ordinary intelligence of what it prohibits.

## II.     The balance of harms and public interest do not favor an injunction.

The balance of equities and the public interest weigh heavily in favor of the Attorney General and against issuing a temporary restraining order or preliminary injunction.  The Plaintiffs are asserting the right to determine for themselves whether a parent is fit in order to decide whether it is okay to conceal information about a pregnant minor's abortion from the parents.  Allowing the Plaintiffs to decide what is in the best interests of someone else's child and conceal that from the pregnant minor's parents actively undermines a parent's fundamental right and obligation to determine what is in the best interests of their children.  Given this fundamental right of parents to direct the care and upbringing of their children and to be involved in the medical decisions of their minor children, the State of Idaho's policy in favor of protecting those rights is in the public interest.  The constitutional rights of parents to determine what is in the best interests of their children heavily outweigh the desires of third parties to lead children into such consequential actions without their parents' knowledge or consent.

## III.    Plaintiffs have no irreparable injury.

Finally, the Court should deny Plaintiffs' motion for preliminary injunction for lack of an irreparable injury.  At the outset, Plaintiffs have no irreparable injury because, for the reasons set forth in Section I.B, they allege only an effect on their intended conduct, not on any protected speech that would be otherwise chilled.  As

Plaintiffs' own cases acknowledge, they must "present more than allegations of a subjective chill" and must instead show "specific present objective harm or a threat of specific future harm." *Bigelow*, 421 U.S. at 816–17 (internal quotations omitted). They have not made that showing here.

But in truth, and even more important, Plaintiffs have no injury at all, much less an irreparable one. And as will be set forth more fully in the Attorney General's forthcoming motion to dismiss, that deficiency is fatal to jurisdiction—under both the Eleventh Amendment and Article III justiciability—just as it is to the merits.

In the pre-enforcement context here, both Eleventh Amendment immunity and Article III justiciability turn on whether there is a threat of prosecution. The *Ex parte Young* exception to the Attorney General's Eleventh Amendment immunity applies only if he is "clothed with some duty in regard to the enforcement of the laws of the state, and ... threaten and are about to commence proceedings ... to enforce against parties affected [by] an unconstitutional act." *Ex parte Young*, 209 U.S. 123, 155–56 (1908). And proving a justiciable controversy in the pre-enforcement context also requires a threat: for standing, "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings," *Twitter*, *Inc. v. Paxton*, 56 F.4th 1170, 1174, and for ripeness, a "specific and credible threat of adverse action." *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010). That essential threat is wholly absent here.

Aside from the fact that Plaintiffs do not allege the Attorney General has made any statement regarding the enforcement of the Abortion Trafficking Ban, Plaintiffs'

attempt to show injury falters based on a more fundamental proposition of law: the Attorney General *has no authority* to threaten criminal prosecutions of the Abortion Trafficking Ban at this time.   Under Idaho statutory law, "the primary duty of enforcing all the penal provisions of any and all statutes of this state, in any court, is vested in the sheriff and prosecuting attorney of each of the several counties."  Idaho Code § 31-2227.   Thus, while the Attorney General is Idaho's "chief legal officer," he is not its chief law enforcement officer, *Newman v. Lance*, 922 P.2d 395, 399 (Idaho 1996), and county prosecutors do not answer to him.  Idaho Code § 31-2604.  In fact, Idaho law previously allowed the Attorney General to "exercise supervisory powers over prosecuting attorneys in all matters pertaining to their duties," *Newman*, 129 Idaho at 102, 922 P.2d at 399, but the Legislature struck that provision in 1998, limiting the Attorney General's criminal enforcement authority to the ability to "assist the prosecuting attorney" in each respective county.  *State v. Summer*, 139 Idaho 219, 224, 76 P.3d 963, 968 (Idaho 2003).

The Attorney General recently explained and clarified these principles in a formal opinion construing the limits on his own prosecutorial powers.  Att'y Gen. Op. 23-1 (April 27, 2023).   As he explained, he has prosecutorial authority only "if requested by county prosecutors and approved by a state district judge" or "if specifically conferred by the Legislature."  *Id.* at 2.  That definitive construction of the limits of his own powers supersedes the Ninth Circuit's interpretation of Idaho law in *Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004), which held that the Attorney General was a proper defendant to a challenge to the State's

abortion laws.[2]   And neither of the two conditions for the Attorney General's prosecutorial authority—referral by a county prosecutor or a specific legislative grant—are met here.

*First*, no county prosecutor has referred any case under the Abortion Trafficking Ban to the Attorney General, and Plaintiffs do not allege otherwise.  The Attorney General would not have referral authority to prosecute violations of this statute unless there were a specific case considered by a specific county prosecutor who asked the Attorney General for help.  Plaintiffs do not allege that such a case exists.  They want to violate the law, sure enough, but they do not allege any specific circumstances in which they intend to do so.  Nor have they sued any of the county prosecutors who would have direct prosecutorial authority if they did violate the law. Instead, they have only sued the Attorney General, whose purely derivative authority has not yet been triggered.

*Second*, the limited legislative grant of prosecutorial authority to the Attorney General under the Abortion Trafficking Ban has not been triggered here.  *See* Att'y Gen. Op. 23-1 at 2–3.  That limited authority is still contingent on actions by county prosecutors: he "has the authority, at [his] sole discretion, to prosecute a person for a criminal violation of this section *if the prosecuting attorney authorized to prosecute* criminal violations of this section *refuses to prosecute* violations of any of the

---

[2] Judge Winmill ruled to the contrary in *Planned Parenthood v. Labrador*, but refused to consider the effect of the Att'y Gen. Op. 23-1 in construing the limits of his own authority.  Case No. 1:23-CV-00142-BLW, Slip. Op., 2023 WL 5237613 (D. Idaho August 15, 2023), Judge Winmill's decision is now on appeal to the Ninth Circuit.

provisions of this section by any person *without regard to the facts or circumstances*." Idaho Code § 18-623 (emphasis added).  Thus, the Attorney General does not have any prosecutorial authority unless a county prosecutor first refuses to exercise his or her authority.  Plaintiffs have alleged no facts that indicate that *any* prosecutor in Idaho has so refused to enforce this section of code.  Indeed, none have.  The Attorney General thus lacks any prosecutorial authority under the Abortion Trafficking Ban at this time.

Because the Attorney General would have authority under this statute only based on actions of county prosecutors that have not yet occurred, he is not a proper defendant under *Ex parte Young* and Plaintiffs have not alleged a justiciable controversy against him under Article III.  There is no "special relation" between the Attorney General and the law as required to overcome sovereign immunity, *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992), much less "a '*genuine* threat of *imminent* prosecution'" by the Attorney General as required for ripeness. *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (citation omitted).  The case is not fit for review because any individuals with whom the Plaintiffs intend to engage are not "identifiable" and the case presents no "concrete factual scenario" to which the law applies.  *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000) (citation omitted); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999).  Plaintiffs have not shown any irreparable injury that warrants an injunction—in fact, they have not alleged any injury at all, and the Court lacks jurisdiction.

CONCLUSION

The Court should deny Plaintiffs' motion for a temporary restraining order or preliminary injunction both on the merits and for lack of jurisdiction.

DATED:  August 28, 2023

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


By:   /s/ Lincoln Davis Wilson
LINCOLN DAVIS WILSON
Chief, Civil Litigation and
Constitutional Defense

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 28, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Cristina Sepe
cristina.sepe@atg.wa.gov

Emily A MacMaster
emacmaster07@gmail.com
emily@macmasterlaw.com

Emma Grunberg
emma.grunberg@atg.wa.gov

Wendy Olson
wendy.olson@stoel.com
docketclerk@stoel.com
emina.hasonovic@stoel.com
hillary.bibb@stoel.com
karissa.armbrust@stoel.com
kelly.tonikin@stoel.com
tracy.horan@stoel.com

Jamila Asha Johnson
jjohnson@lawyeringproject.org

Kelly O'Neill
koneill@lagalvoice.org

Paige Butler Suelzle
psuelzle@lawyeringproject.org

*Counsel for Plaintiffs*

　　 */s/ Lincoln Davis Wilson*
LINCOLN DAVIS WILSON
Chief, Civil Litigation and
Constitutional Defense