WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
JAMES M. PETERS, WASHINGTON STATE BAR NO. 7295
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
800 E. PARK BOULEVARD, SUITE 600
BOISE, IDAHO  83712-9903
TELEPHONE:  (208) 334-1211
FACSIMILE:  (208) 334-1413

**U.S. COURTS**

**OCT 2 6 2012**

Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 12-0279-SEJL |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| vs. | ) | **RULE 11 PLEA AGREEMENT** |
| | ) | |
| DYRELL ROBERT SWINSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Rev. April 2011 (General)

**EXHIBIT
2**

## I.    GUILTY PLEA

A.    **Summary of Terms**.  Pursuant to Federal Rule of Criminal Procedure

11(c)(1)(A) and (B), defendant, the attorney for the defendant, and the Government[1] agree that

the defendant will waive his right to indictment and plead guilty to Count One of the

Information, which charges the defendant with Obstructing a Sex Trafficking of Children

investigation, in violation of 18 U.S.C. Section 1591(d).

As consideration for the defendant's plea of guilty, the Government agrees not to charge

the defendant with any other violations of law related to the course of conduct described herein

currently known to the Government.  In addition, the Prosecuting Attorney in Payette County,

Idaho, has agreed to dismiss related charges upon the defendant's plea of guilty and sentencing in

this case.

**Forfeiture Allegation:**  In connection with the violation set out above, the defendant

agrees to forfeiture of the property referred to in the Forfeiture count of the Information.

This plea is voluntary and did not result from force, threats, or promises, other than any

promise made in this Plea Agreement.  Upon acceptance of the defendant's guilty plea, and the

defendant's full compliance with the other terms of this Agreement, the Government will

recommend a sentence within the range specified by the United States Sentencing Guidelines, as

determined by the Court, followed by a term of Supervised Release to be determined after

consideration of the Presentence Report.

B.    **Oath**.  The defendant will be placed under oath at the plea hearing.  The

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the
District of Idaho.

Government may use any statement that the defendant makes under oath against the defendant in a prosecution for perjury or false statement.

## II.     WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL

The defendant understands that by pleading guilty, waives the following rights: 1) the right to plead not guilty to the offense charged against the defendant and to persist in that plea; 2) the right to a trial by jury, at which the defendant would be presumed innocent and the burden would be on the Government to prove the defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the defendant.  If the District Court accepts the defendant's guilty plea, there will be no trial.

## III.    NATURE OF THE CHARGES

**A.     Elements of the Crime.** The elements of the crime of Obstructing a Sex Trafficking of Children investigation as charged in Count One of the Information are:

> First:  The defendant knowingly obstructed, attempted to obstruct, interfered with or prevented the enforcement of Title 18, United States Code, Section 1591(a)(1) and (b)(2).

**B.     Factual Basis.** If this matter were to proceed to trial, the Government and the defendant agree that the following facts would be proven beyond a reasonable doubt:

On March 8, 2012, Idaho State Trooper Justin Klitch and Payette County Deputy Sheriff Patrick Weber observed the occupants of a white Lexus with Washington plates eastbound on the Interstate 84 freeway.  The car passed Deputy Weber and drove into the rest area near milepost

**Plea Agreement**                              -2-

two in Payette County, Idaho. Both law enforcement officers noticed behavior by the occupants they considered suspicious. Swinson was driving the car. "AT" was the lone passenger.

Trooper Klitch made contact with Swinson and "AT" shortly after they came out the rear exit of the restroom building, and engaged them in a consensual contact. After introductions, the trooper asked where they were coming from, and Swinson said "Ontario." [Ontario, Oregon is approximately two miles west of their location.] The trooper asked where they were heading, and Swinson said, "Boise." Trooper Klitch asked Swinson if he lived in Ontario and he said, "No." He asked where they were originally coming from, and Swinson said, "Tacoma." The trooper asked Swinson how long he was going to be in Boise and he said, "Just this weekend." The trooper asked Swinson if he had a valid driver's license. Swinson replied that he did not, and added that his license was suspended. Trooper Klitch conducted a driver's check via his dispatcher and confirmed Swinson's date of birth (9-11-92) and that his Washington state driver's license was suspended.

Trooper Klitch spoke with "AT" and asked for her identification. She told him she did not have any identification on her or in the vehicle. He then separated the two and spoke with "AT" apart from Swinson.

Trooper Klitch asked "AT" about her identity, since it seemed unusual that she would be traveling from Tacoma to Boise for a weekend trip without any identification. She said her name was "Layline Nichole Daniels," date of birth June 12, 1992. Trooper Klitch asked her how old she was and she replied that she was 19. Based on her appearance, Trooper Klitch did not believe her; he thought she appeared more like she was around age 16. When the trooper asked "AT" about the spelling of her name, she fumbled and made errors that seemed inconsistent with

**Plea Agreement**                                    -3-

someone identifying herself. It appeared to the trooper that she was reciting information she had memorized rather than providing her true identity. Trooper Klitch checked through Idaho State Police dispatch, which revealed no record for a person with that name and date of birth. He continued to ask "AT" about her true identity, and she persisted in denying she was being untruthful.

Trooper Klitch went back to Swinson and asked him what the female's name was and he said, "Layline." He asked for her last name, and Swinson responded, "Daniels." He asked Swinson how he knew Daniels, and Swinson said, "That's my cousin." He asked Swinson if she was a prostitute and Swinson said, "No way."

Trooper Klitch asked Swinson if the vehicle was his, and he said, "It's my mother's." He asked Swinson if he minded if he looked in the vehicle to try and find something to identify Daniels and Swinson consented. During a search of the vehicle, the trooper located various items that seemed inconsistent with cousins going to Boise for a weekend trip. Through his training and experience, he became increasingly suspicious that he had encountered an individual (Swinson) who was transporting a minor for purposes of prostitution. Trooper Klitch asked Swinson how long he'd known the female, and he said, "She's my cousin, so I've known her since she was knee high."

Trooper Klitch found a black LG Virgin Mobile cellular telephone (with the number 253-592-3324) in the door pocket on the passenger side of the car, next to where "AT" had been sitting. He asked Swinson about the phone, and Swinson indicated the phone was his and "AT" uses the phone. He also asked "AT" about the phone and she said it was Swinson's, but he lets her use it.

Swinson was arrested for driving without privileges.

Both "Daniels" and Swinson were transported to the Payette County jail. At the jail, "Daniels" advised a jail deputy of her true identity and age. She stated that her true name is "AT",[2] that she is 15 years old, and that her date of birth is July 5, 1996. Trooper Klitch conducted a check through Idaho State Police dispatch with the female's true identity and discovered that she was a missing person out of Olympia, WA. He contacted a sergeant at the Olympia Police Department who informed him that "AT" was a runaway, and at the time of her disappearance on November 22, 2011, she was a ward of the state of Washington, residing at the Haven House in Olympia. Her birth certificate confirms that "AT" was born July 5, 1996 in Tacoma, WA.

On March 9 and 10, 2010, Swinson initiated several telephone calls from the Payette County Jail that were recorded by the jail's automatic recording system. Each call begins with the admonition that it is being recorded. During each call, Swinson made requests of other parties to assist him by altering or deleting electronic records. For example:

1.     Telephone call on 03/09/2012 at 20:30 to telephone number 253-269-8465. This number is subscribed to by Angela Ressler, Dyrell Swinson's mother. During this call Swinson is talking to a female and tells her there was a warrant to go through the phones and that the girl was a runaway. Swinson explains he was going to be charged with trafficking, slavery and kidnapping. At time counter 12:49, Swinson asked the female to write down some information

---

[2] The full name of "AT" is redacted pursuant to 18 U.S.C. 3509(d) but has been disclosed to the defense.

**Plea Agreement**                              -5-                      Rev. April 2011 (General)

and tells her to go to e-mail accounts "makingitalone_04@yahoo.com" and "alone35@yahoo.com" and "trash everything that you can." Swinson says "I love you Mom" at the end of the conversation.

2.     Telephone call on 03/10/2012 at 13:30 to telephone number 253-269-8465, Angela Ressler. At time counter 2:14, Swinson asked the female if she did what he asked her to do last night. The female responded, "yeah." Swinson went on to ask did you see where said edit, delete and stuff and whether she did it. At the 8:15 time counter, Swinson asked the female to call "Mariah" at 306-5866 and find out "anything she know."

3.     Telephone call on 03/10/2012 at 13:58 to telephone number 253-269-8465, Angela Ressler. At time counter 12:56, Swinson gives the female who answered the phone information on two more e-mail accounts, which he identified as: "s and then my name at yahoo.com" (sdyrell@yahoo.com). Swinson described the password as the white pants that don't fit anymore and tells the female (presumably Ressler) not to say it, then "LV." Swinson also gives the female the e-mail address, "dyrell.swinson@yahoo.com," with the same password with "500" or "LV" at the end. Swinson tells the female to "do what I told you to do yesterday."

4.     Telephone call on 03/10/2012 at 14:35 to telephone number 678-497-5011, answered by an unknown male. The unknown male talks about when he was in jail. They talk about bond and Swinson's preliminary hearing. At time counter 5:20, the name "Isaiah" is mentioned. At time counter 8:50 Swinson

tells the unknown male about three e-mail accounts.  Swinson first gives e-mail address "dyrell.swinson@yahoo.com," and says the password is his favorite kind of clothes with a "g" and "500" or if not that one put "gucciLV."  Swinson next says "makingitalone_04@yahoo.com" with password "alone35."  The next e-mail Swinson says is "memefranklin@rocketmail.com," and he then tells the unknown male that the password is "all$in."  The unknown male says "delete everything," and Swinson replied "yeah" and "like ASAP."  It will say like edit, delete or pretty close to something like that, so click on that.

Further investigation revealed that between January and March 2012 Swinson used these email addresses at Yahoo.com, including "dyrell.swinson@yahoo.com," "memefranklin@rocketmail.com," and  "makingitalone_04@yahoo.com," to purchase advertisements in the adult entertainment and escorts sections of the Internet site, "Backpage.com," for the cities of Bellingham, Everett, Tacoma, Yakima and Tri-Cities in Washington State, and for Boise, Idaho.  "Backpage.com" is an Internet business operated from offices in Phoenix, Arizona and Dallas, Texas, that allows users to post classified advertisements, including with photos, for cities they choose as simply as sending an email.[3]  The "Backpage.com" advertisements that Swinson posted include provocative photographs of "AT," clad in revealing lingerie displaying her bare buttocks and partially exposed breasts.  Some of the images depict her on a bed posed in a sexually suggestive manner.  The text portion of the ads offer, among other things, "companionship," "ultimate pleasure with me," and to "caress and pamper you - I can be your excape [sic] from reality."  The ads include telephone numbers for

---

[3]  *See* http://www.Backpage.com/gyrobase/AboutUs/

**Plea Agreement**            -7-            Rev. April 2011 (General)

interested customers to call. For example, a Backpage.com listing for Boise, Idaho, created on March 2, 2012 includes the call-back number 253-592-3324, listed the girl's name as "kAyLoNI," and included four sexually provocative photographs of "AT" posing on a bed wearing skimpy pink lingerie.

The same name and phone number along with pictures of "AT" appeared in a similar Backpage.com advertisement in Yakima, Washington, created on February 18, 2012, and in Tri-Cities, Washington, created on February 12, 2012, as well as other ads with photos "AT" for other cities in the Pacific Northwest. Despite disclaimers on these ads offering the personal services of "AT", a reasonable person would conclude they were solicitations for prostitution.

The parties agree that Swinson's solicitations of other persons to alter, eliminate or destroy evidence stored online at Yahoo.com, and Rocketmail.com was an attempt to obstruct, interfere with or prevent the enforcement of Title 18, United States Code, Section 1591(a), involving sex trafficking of a minor. This evidence was material to the activities or decisions of the Idaho State Police and the Federal Bureau of Investigation, which assumed responsibility for the investigation in mid-March 2012, and had a natural tendency to influence, or was capable of influencing, the decisions or activities of the investigating agencies.

## IV.  SENTENCING FACTORS

**A.**  **Maximum Penalties.**  A violation of 18 U.S.C. § 1591(d), as charged in Count One, is punishable by at term of imprisonment of up to 20 years, a term of supervised release of at least 5 years up to life, a maximum fine of $250,000, and a special assessment of $100.

**B.**  **Supervised Release.**  Following release from prison, the defendant must be placed on supervised release for at least 5 years, up to life.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crimes to which the defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and/or prosecution.

     **C.**    **Fines and Costs.** The Court may impose a fine. No agreement exists as to the amount of the fine. The Court may also order the defendant to pay the costs of imprisonment, probation, and supervised release.

     **D.**    **Special Assessment.** The defendant will pay the special assessment of $100 before sentencing and will furnish a receipt at sentencing. Payment will be made to the United States District Court, Clerk's Office, Federal Building and United States Courthouse, 550 West Fort Street, Fourth Floor, Boise, Idaho 83724.

     **E.**    **Restitution.** In addition to any fine or costs imposed, the Court pursuant to 18 U.S.C. § 1593, shall order the defendant to pay restitution equal to the loss caused to any victim of the offense charged in the Information. Other general restitution statutes may also apply.

     **F.**    **Forfeiture.**

The defendant understands that the Court will, upon acceptance of guilty plea, enter an order of forfeiture as part of sentence, and that the order of forfeiture may include assets directly traceable to the offense, assets used in the commission of the offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense. Specifically, the defendant agrees to immediately forfeit to the United States the property set out in the Forfeiture Allegations of the Information.

     **Waiver of Further Challenge or Review of Forfeiture.**

The defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

**Court Shall Retain Jurisdiction.**

The defendant agrees to forfeit the properties as stated above, or to substitute properties of equal value, at the Government's option. The United States District Court for the District of Idaho shall retain jurisdiction to settle any disputes arising from application of the foregoing forfeiture provisions.

## V. UNITED STATES SENTENCING GUIDELINES

**A. Application of Sentencing Guidelines.** The Court must consider the United States Sentencing Guidelines (USSG) in determining an appropriate sentence under 18 U.S.C. § 3553. The defendant agrees that the Court may consider "relevant conduct" in determining a sentence pursuant to USSG § 1B1.3.

The Court is not a party to the Plea Agreement. The Plea Agreement does not bind the Court's determination of Sentencing Guidelines range. The Court will identify the factors that will determine the sentencing range under the Sentencing Guidelines. While the Court may take the defendant's cooperation, if any, and the recommendations of the parties into account, the Court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Plea Agreement                                             -10-

Recognizing that the Court is not bound by this Agreement, the parties agree to the recommendations and requests set forth below.

**B.**     **Sentencing Guidelines Recommendations and Requests.**

1.     **Acceptance of Responsibility.**  If the defendant clearly accepts responsibility for the offense, the defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under USSG § 3E1.1(a).  The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the defendant has timely notified authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.  If, before sentence is imposed, the defendant fails to meet the criteria set out in USSG § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or not make such a recommendation.

2.     **Joint Recommendations.**  The parties jointly make the following recommendations, and agree that the following shall be included as terms of the defendant's sentence, expressly bargained for as a part of this plea agreement:

a)     **Psycho-Sexual Assessment** --The defendant will submit to a  sex offender evaluation pursuant to Title 18, United States Code, Section 3552(b) prior to sentencing in this case.  It is the defendant's obligation to secure this evaluation from a mental health professional certified by the Idaho Sex Offender Classification Board (see, http://www2.state.id.us/socb/). The evaluation shall follow the format for psycho sexual evaluations set forth by the Idaho Sex Offender Classification Board and the Practice Standards and Guidelines for Members of the

**Plea Agreement**                    -11-

Association for the Treatment of Sexual Abusers (ATSA). The defendant agrees to submit to all evaluation procedures at the direction of the treatment provider, including phallometry and polygraph testing if the treatment provider deems them necessary.

b) **Waiver of Confidentiality** -- The defendant agrees to waive any right to confidentiality and allow the provider conducting the psycho-sexual evaluation (and any subsequent treatment) to supply a written report(s) to the United States Probation Department, the Court and the United States Attorney.

c) **Contact with Minors** -- The Defendant may not have direct or indirect contact with children under the age of eighteen, unless approved in advance, in writing, by his probation officer.

d) **Access to Minors** -- The Defendant will not reside or loiter within 300 feet of schoolyards, playgrounds, arcades or other places, establishments and areas primarily frequented by children under the age of eighteen, unless approved, in advance, in writing, by his probation officer.

e) **Occupational Restriction** – The defendant may not engage in any paid occupation or volunteer service that exposes him either directly or indirectly to minors, unless approved in advance, in writing, by his probation officer.

f) **Polygraph Testing** -- The Defendant agrees to participate in polygraph testing to monitor his compliance with supervised release and any applicable treatment conditions, at the direction of his probation officer and/or treatment staff.

g) **Post-Incarceration Treatment** -- The Defendant will successfully complete any course of treatment related to his offense, as directed by his probation officer, including but not limited to cognitive/behavioral treatment for sexual deviancy under the

**Plea Agreement**                                    -12-

direction of a qualified mental health professional who is experienced in treating and managing

sexual offenders, such as a member of the Association for the Treatment of Sexual Abusers

(ATSA). The defendant will follow the rules of the treatment program as if they are the orders of

the Court.

        h)      **Search Provision** -- The Defendant will be subject to a search of his

person, home or vehicle, and any objects or materials (including computers and other types of

electronic storage media) found therein, at the discretion of his probation officer.

        I)      **Conditional Use/Derivative Use Immunity** - As a condition of court-

mandated evaluation and treatment, the defendant will be required truthfully to reveal his entire

sexual history, including the possibility of other sexual crimes. In recognition of the fact that full

disclosure of that history is a necessary component of effective treatment, the government agrees

that the defendant's admissions during psycho-sexual evaluation and sex offender treatment, to

sexual crimes (*excluding homicide*) previously undisclosed to any law enforcement entity, will

not be used against the defendant in a new criminal prosecution. *See United States v. Antelope,*

395 F.3d 1128 (9th Cir. 2005), and *Kastigar v. United States*, 406 U.S. 441 (1972). However,

the parties agree that this use immunity and derivative use immunity, is expressly conditioned,

upon: 1) the defendant successfully completing sexual deviancy treatment, and 2) the defendant

not materially violating the rules of supervised release, and/or committing a sexual crime or a

crime involving the sexual exploitation of children after the date of this agreement. If the

defendant fails to complete all aspects of treatment, or fails to comply with all material

supervised release requirements, or reoffends as described above, then this immunity agreement

is rescinded and the government may use defendant's statements against him.

**Plea Agreement**           -13-

3.     **Stipulation Regarding Sentencing Guidelines.** The defendant understands that the United States Sentencing Guidelines apply in an advisory manner and are not binding on the Court.  The parties agree that the applicable Guideline for Count One starts at USSG § 2J1.2(c) and is cross referenced to USSG § 2X3.1 and § 2G1.3(a)(2).  The parties agree that the offense level for Count One is as follows:  Base level 30 plus 2 under § 2G1.3(b)(3)(B), for the use of a computer or interactive computer service to entice, encourage, offer or solicit a person to engage in prohibited sexual conduct with the minor.  That is reduced by 6 levels, to level 26, pursuant to USSG 2X3.1.

4.     **Stipulation Regarding Reduction for Time Served in State Custody**

The government agrees to recommend that the Court reduce its selected sentence for the federal offense by the amount of time the defendant has already served in state custody since his arrest.

5.     **Downward Departure or Variance Request by Defendant.**   Unless otherwise specified in this paragraph, the defendant will not seek a downward departure, or a variance under 18 U.S.C. § 3553(a), without first notifying the Government and informing it of the basis, in writing, not less than 21 days before the date set for sentencing.

## VI.     COOPERATION

A.     **Truthful Information and Assistance.**  The defendant promises to provide truthful and complete information to the Government and its investigative agencies, including testimony in legal and administrative proceedings, concerning the roles of others involved in other criminal activity.  The defendant shall not attempt to protect anyone through false information or omission. The defendant will not falsely implicate anyone. Any intentional deviation from the truth in any of the defendant's testimony may result in prosecution for perjury

and obstruction of justice . The defendant's duty under the terms of this Agreement is to tell the truth whether or not it bolsters the Government's case against any particular individual. The defendant specifically understands that this Agreement is not contingent upon the conviction of any person.

The defendant agrees to cooperate in good faith. This means the defendant will not only respond truthfully and completely to all questions asked, but will also volunteer all information that is reasonably related to subjects discussed. In other words, the defendant may not omit facts about crimes, participants, or defendant's involvement, and then claim not to have breached the Agreement because he was not specifically asked. This Agreement is breached by any action or statement inconsistent with continued cooperation.

The defendant agrees to be available for interviews to prepare for testimony. If necessary, the defendant will submit, upon request, to government-administered polygraph examinations.

**B.** **Use of Information Against Defendant.** In exchange for the defendant's agreement, the Government will not use new information the defendant provides (pursuant to this Agreement) about his own criminal conduct. The Government may reveal such information to the Court. There shall be no restrictions, however, on the use of information: 1) previously known to law enforcement agencies; 2) revealed to law enforcement agencies by, or discoverable through, an independent source; or 3) in the event there is a breach of this Agreement.

**C.** **Substantial Assistance Determination.** If the Government determines, in good faith, that the defendant's cooperation amounts to "substantial assistance" in the investigation of others, the Government will request that the Court depart downward from the applicable sentencing range, pursuant to USSG § 5K1.1, pursuant to 18 U.S.C. § 3553(e). At this time, the

Government has advised that it intends to make a request for a downward departure based upon the defendant's "substantial assistance."

The Government's final decision as to the extent of a motion under § 5K1.1 will be made after evaluating the defendant's cooperation with regards to: 1) the significance and usefulness of the defendant's cooperation, 2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant, 3) the nature and extent of the defendant's assistance, 4) any injury suffered, or any danger or risk of injury to the defendant or defendant's family resulting from the defendant's cooperation, and 5) the timeliness of the defendant's cooperation. The Government's specific recommendation will turn on the facts of the case, the sentence that likely would have been imposed absent an agreement, and the extent and value of the cooperation provided.

       **D.**    **Defendant's Assumption of Risk.** The defendant agrees freely and voluntarily to cooperate with the Government, knowing the possible consequences of cooperation. The defendant's attorney knows of the defendant's cooperation and agrees that the defendant shall enter into this Agreement. The defendant hereby absolves the Government, including its employees, from any liability associated with this cooperation.

## VII.   WAIVER OF APPEAL AND 28 U.S.C. § 2255 RIGHTS

       A.     In exchange for this Agreement, and except as provided in subparagraph B, the defendant waives any right to appeal or to collaterally attack the conviction, entry of judgment, and sentence.

The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging the plea, conviction or sentence in this case. Further, if the defendant violates this waiver it will be a breach of this Agreement and the

Government may withdraw from this Plea Agreement and take other remedial action.

If the defendant believes the Government has not fulfilled its obligations under this Agreement, the defendant will object at the time of sentencing; further objections are waived.

B.      Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal only if one of the following unusual circumstances occur; the defendant understands that these circumstances occur rarely and that in most cases this Agreement constitutes a complete waiver of all appellate rights:

1.      the sentence imposed by the District Court exceeds the statutory maximum;

2.      the District Court arrived at an advisory Sentencing Guidelines range by applying an upward departure under Chapter 5K of the Guidelines; or

3.      the District Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory Sentencing Guidelines range as determined by the District Court.

4.      the District Court applies a Sentencing Guideline offense level that is higher than contemplated by this agreement [base offense 30 plus 2 under § 2G1.3(b)(3)(B), for the use of a computer or interactive computer service to entice, encourage, offer or solicit a person to engage in prohibited sexual conduct with the minor; reduced by 6 levels, to level 26, pursuant to USSG 2X3.1].

Notwithstanding subparagraph A, the defendant may file one habeas petition (motion under 28 U.S.C. § 2255) for ineffective assistance of counsel only if: (1) the motion is based solely on information not known to the defendant at the time the District Court imposed

sentence; and (2) in the exercise of reasonable diligence, the information could not have been known by the defendant at that time.

## VIII. PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The defendant agrees to provide material financial and other information requested by a representative of the United States Probation Office for use in preparing a presentence report. Failure to execute releases and provide such information violates this Agreement. Such failure will subject the defendant to additional penalties, including an enhancement under USSG § 3C1.1, or an upward departure under § 5K2.0, and relieve the Government of the obligations in this Agreement. Such failure will not, however, constitute grounds for withdrawing the plea of guilty unless the Government so requests.

## IX. NO RIGHT TO WITHDRAW PLEA

The defendant understands that the Court may not follow the recommendations or requests made by the parties at the time of sentencing. The defendant cannot withdraw from this Plea Agreement or the guilty plea, regardless of the Court's actions.

## X. CONSEQUENCES OF VIOLATING AGREEMENT

A. **Government's Options.** If the defendant fails to keep any promise in this Agreement or commits a new crime, the Government is relieved of any obligation not to prosecute the defendant on other charges, including charges not pursued due to this Plea Agreement. Such charges may be brought without prior notice. In addition, if the Government determines after sentence is imposed that the defendant's breach of the Agreement warrants further prosecution, the Government may choose between letting the conviction(s) under this Plea Agreement stand or vacating such conviction(s) so that such charge(s) may be re-

Plea Agreement                                    -18-

prosecuted.  If the Government determines that a breach warrants prosecution before sentencing, it may withdraw from the Plea Agreement in its entirety.

      **B.**    **Defendant's Waiver of Rights.**  If the defendant fails to keep any promise made in this Agreement, the defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the defendant entered a plea of guilty or which were dismissed under this Agreement.  In addition, for any charge that is brought as a result of the defendant's failure to keep this Agreement, the defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations expired after the defendant entered into this Agreement.

**XI.**    **MISCELLANEOUS**

      **A.**    **No Other Terms**.  This Agreement is the complete understanding between the parties, and no other promises have been made by the Government to the defendant or to the attorney for the defendant.  This Agreement does not prevent any governmental agency from pursuing civil or administrative actions against the defendant or any property.  Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this Agreement does not bind or obligate governmental entities other than the United States Attorney's Office for the District of Idaho.   The Government will bring the defendant's cooperation and pleas to the attention of other prosecuting authorities at the defendant's or defendant's counsel's request.

      **B.**    **Plea Agreement Acceptance Deadline.**  This plea offer is explicitly conditioned on the defendant's notification of acceptance of this Plea Agreement no later than **5:00 p.m. on October 26, 2012.**

## XII.   UNITED STATES' APPROVAL

I have reviewed this matter and the Plea Agreement.  I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

WENDY J. OLSON
UNITED STATES ATTORNEY
By:

_James M. Peters_                          _10-26-12_
James M. Peters                              Date
Assistant United States Attorney

## XIII.  ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this Plea Agreement with my attorney.  I understand the Agreement and its effect upon my potential sentence.  Furthermore, I have discussed all of my rights with my attorney and I understand those rights.  No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning the plea to be entered in this case.  In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including to enter a guilty plea.  I am satisfied with my attorney's advice and representation in this case.

_____                    10/19/2012_____
DYRELL ROBERT SWINSON                              Date
Defendant

I have read this Plea Agreement and have discussed the contents of the Agreement with my client.  The Plea Agreement accurately sets forth the entirety of the Agreement.  I concur in my client's decision to plead guilty as set forth above.

_____                    10/19/12_____
THOMAS MONAGHAN                                   Date
Attorney for the Defendant

**Plea Agreement**                     -20-