WENDY J. OLSON, Bar No. 7634
wendy.olson@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702
Telephone: 208.389.9000

WENDY S. HEIPT (admitted pro hac vice)
wheipt@legalvoice.org
LEGAL VOICE
907 Pine Street, #500
Seattle, WA 98101
Telephone: 206.954.6798

KELLY O'NEILL, Bar No. 9303
koneill@legalvoice.org
LEGAL VOICE
P.O. Box 50201
Boise, ID 83705
Telephone: 208.649.4942

JAMILA A. JOHNSON (admitted pro hac vice)
jjohnson@lawyeringproject.org
THE LAWYERING PROJECT
3157 Gentilly Blvd. #2231
New Orleans, LA 70122
Telephone: 347.706.4981

PAIGE SUELZLE (admitted pro hac vice)
psuelzle@lawyeringproject.org
THE LAWYERING PROJECT
2501 SW Trenton Street #1097
Seattle, WA 98106
Telephone: 347.515.6073

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LOURDES MATSUMOTO, NORTHWEST ABORTION ACCESS FUND, and INDIGENOUS IDAHO ALLIANCE,<br><br>       Plaintiffs,<br><br>  v.<br><br>RAÚL LABRADOR, in his capacity as the Attorney General for the State of Idaho,<br><br>       Defendant. | Case No. 1:23-cv-00323-DKG<br><br>REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER, OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

ARGUMENT ...........................................................................................................................1

I.      PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO SUCCEED ON
        THE MERITS ................................................................................................................2

        A.      The Abortion Travel Ban Infringes on Plaintiffs' First Amendment
                Rights of Speech, Association, and Expressive Conduct. ........................................3

        B.      The Abortion Travel Ban Is Vague Because Its Language Is
                Unclear and as Defendant Interprets Its Intent Element, It Does
                Not Provide Notice to a Person of Ordinary Intelligence. ......................................7

        C.      Defendant's Asserted State Interest Is Not Narrowly Tailored. ...........................10

II.     PLAINTIFFS WILL BE IRREPARABLY HARMED BY VIOLATION
        OF THEIR CONSTITUTIONAL RIGHTS.......................................................................16

III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVORS
        AN INJUNCTION..........................................................................................................16

IV.     IDAHO ATTORNEY GENERAL RAUL LABRADOR IS THE PROPER
        DEFENDANT.................................................................................................................17

CONCLUSION........................................................................................................................17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*303 Creative LLC v. Elenis*,
   143 S. Ct. 2298 (2023) ....................................................................................... 4

*Bartosz v. Jones*,
   146 Idaho 449, 197 P.3d 310 (2008) ................................................................ 13

*Boe v. Boe*,
   163 Idaho 922, 422 P.3d 1128 (2018) .............................................................. 12

*Cal. Tchrs. Ass'n v. State Bd. of Educ.*,
   271 F.3d 1141 (9th Cir. 2001) ............................................................................ 8

*Case v. Ivey*,
   No. 21-12276, 2022 U.S. App. LEXIS 18433 (11th Cir. July 5, 2022) ............. 13

*Coal. to Defend Affirmative Action v. Brown*,
   674 F.3d 1128 (9th Cir. 2012) .......................................................................... 17

*Danti v. Danti*,
   146 Idaho 929, 204 P.3d 1140 (2009) .............................................................. 12

*Elrod v. Burns*,
   427 U.S. 347 (1976) .......................................................................................... 16

*Ex Parte Young*,
   209 U.S. 123 (1908) .......................................................................................... 17

*Farris v. Seabrook*,
   677 F.3d 858 (9th Cir. 2012) ............................................................................ 16

*Gabriel v. Lavison*,
   No. 2:22-cv-00006, 2022 U.S. Dist. LEXIS 36025 (W.D. Wash. Mar. 1, 2022) ............... 12

*Gault*,
   387 U.S. 1 (1967) ........................................................................................ 14, 15

*Giboney v. Empire Storage & Ice. Co.*,
   336 U.S. 490 (1949) ............................................................................................ 3

*Gordon v. Holder*,
   721 F.3d 638 (D.C. Cir. 2013) .......................................................................... 16

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) ............................................................................................ 8

*Hopper v. Hopper*,
144 Idaho 624, 167 P.3d 761 (2007) .................................................................. 12

*Hopper v. Swinnerton*,
155 Idaho 801, 317 P.3d 698 (2013) .................................................................. 12

*King v. Governor of the State of New Jersey*,
767 F.3d 216 (3d Cir. 2014) ............................................................................... 3

*Klein v. City of San Clemente*,
584 F.3d 1196 (9th Cir. 2009) ........................................................................... 16

*Martin v. Vincent*,
34 Idaho 432, 201 P. 492 (Idaho 1921) ............................................................. 13

*McGee v. Va. High Sch. League*,
801 F. Supp. 2d 526 (W.D. Va. 2011) ............................................................... 13

*Nelson v. Evans*,
170 Idaho 887, 517 P.3d 816 (2022) .................................................................. 13

*Parents for Privacy v. Barr*,
949 F.3d 1210 (9th Cir. 2020) ........................................................................... 12

*Parham v. J.R.*,
442 U.S. 584 (1979) ........................................................................................... 13

*Planned Parenthood Greater N.W. v. Labrador*,
No. 1:23-cv-001420, 2023 WL 4864962 (D. Idaho July 31, 2023) ..................... 6

*Planned Parenthood of Cent. Mo. v. Danforth*,
428 U.S. 52 (1976) ............................................................................................. 15

*Planned Parenthood of Idaho, Inc., v. Wasden*,
376 F.3d 908 (9th Cir. 2004) ............................................................................. 17

*Prince v. Massachusetts*,
321 U.S. 158 (1944) ........................................................................................... 13

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) ........................................................................................ 5, 6

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995) ............................................................................................. 6

*State v. Levicek*,
131 Idaho 130, 953 P.2d 214 (1998) .................................................................. 12

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING
ORDER, OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION - iii

*Texas v. Johnson*,
    491 U.S. 397 (1989) ........................................................... 4

*Troxel v. Granville*,
    530 U.S. 57 (2000) ........................................................... 12

*Turner Broad. Sys., Inc. v. F.C.C.*,
    512 U.S. 622 (1994) .......................................................... 4

*Wallis v. Spencer*,
    202 F.3d 1126 (9th Cir. 2000) ............................................ 13

**Statutes**

Idaho Code § 18-623 ............................................................ 2, 3, 4

Idaho Code § 18-623(1) ......................................................... passim

Idaho Code § 18-4506 ........................................................... 12

**Other Authorities**

Am. Acad. of Pediatrics, Comm. on Adolescence, *The Adolescent's Right to
    Confidential Care When Considering Abortion*, 139 Pediatrics e20163861 (2017)............ 21

*EugeneVolokh, Speech as Conduct: Generally Applicable Laws, Illegal Courses
    of Conduct, "Situation-Altering Utterances,"* and the Uncharted Zones,
    90 Cornell L. Rev. 1277 (2005)............................................ 4

J. Shoshanna Ehrlich, *Grounded in the Reality of Their Lives: Listening to Teens
    Who Make the Abortion Decision Without Involving Their Parents*,
    18 Berkeley Women's L.J. 61 (2003) ...................................... 21

Marcia D. Greenberger & Katherine Connor, *Parental Notice and Consent for
    Abortion: Out of Step with Family Law Principles and Policies*, Family Planning
    Perspectives, vol. 23, no. 1 (1991) ...................................... 22

Rachel *K. Jones et al., Adolescents' Reports of Parental Knowledge of Adolescents' Useof
    Sexual Health Services and Their Reactions to Mandated Parental Notificationfor
    Prescription Contra*ception, 293 JAMA 340 (2005). ....................... 21

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING
ORDER, OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION - iv

Defendant Raúl Labrador acknowledges in his Opposition that he intends to prosecute Plaintiffs for exercising their First Amendment rights to assist pregnant Idaho minors obtain lawful abortions in neighboring states. He admits that in his interpretation of the statute, persons who fail to affirmatively notify a pregnant minor's parents have violated Idaho Code § 18-623, although that language is not in the statute. In short, Defendant's Opposition underscores that Idaho's Abortion Travel Ban violates Plaintiffs' First and Fourteenth Amendment rights. This Court should enjoin him from enforcing it.

## ARGUMENT

Plaintiffs seek preliminary injunctive relief. They ask this Court to enjoin Defendant from enforcing Idaho Code § 18-623, which seeks to punish adults who assist pregnant minors obtain lawful abortion care outside of Idaho. Plaintiffs do not seek to replace or become anyone's parents. Rather, they wish to continue expressive activity in support of pregnant minors who seek their assistance. Plaintiffs understand that Idaho has chosen to criminalize abortion care. Thus, Plaintiffs intend to engage in expressive activity that assists pregnant minors obtain abortion care only where it is lawful. Plaintiffs also understand that to prove a violation of a criminal statute, Defendant must prove every element beyond a reasonable doubt. That basic constitutional requirement for a criminal conviction does not mean that it is permissible for some words or phrases or a single element within a criminal statute to be unconstitutionally vague, however.

Plaintiffs in their motion for a preliminary injunction assert that Idaho Code § 18-623 violates their First and Fourteenth Amendment rights. Plaintiffs argue that the statute infringes on their First Amendment rights to associate freely with each other and with pregnant Idahoans; to engage in expressive conduct, including providing funding or practical support for pregnant minors traveling to access out-of-state services that are legal where rendered; and to receive and

provide information on specific content: abortion care. Defendant's Opposition addresses only the first two arguments and insists that Plaintiffs' expressive conduct is not protected because it relates to a crime. Defendant ignores that Plaintiffs seek to assist pregnant minors obtain *lawful* abortion care, that is, abortion care outside of Idaho. Idaho Code § 18-623 unconstitutionally chills Plaintiffs' exercise of First Amendment rights related to that lawful abortion care outside of Idaho; hence, it is an Abortion Travel Ban.

Plaintiffs also argue that the statute is unconstitutionally vague because it fails to give persons of ordinary intelligence fair notice of the conduct it punishes. Idaho Code § 18-623 is vague in at least three respects. First, it is unclear what conduct it targets, and it appears to target behaviors that are otherwise legal in the states where those behaviors occur. Defendant does not address this argument. Second, it uses terms that are vague and for which no definitions are provided. Third, it is unclear what contact adults who help and mentor youth would need to have with a pregnant minor's parent or guardian to avoid liability or avail themselves of the statute's so-called affirmative defense. Defendant's Opposition addresses only the last two arguments.

## I.  PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS

Defendant's Opposition boils down to four arguments: (1) § 18-623 punishes conduct, not speech; (2) Plaintiffs ignore the statute's intent to conceal element; (3) § 18-623 is just like sex trafficking, so it is not vague; and (4) § 18-623 is narrowly tailored to serve Idaho's compelling interest in preserving parental rights, thereby justifying the statute's infringement on the constitutional rights of Plaintiffs and others. Each argument fails. At bottom, Defendant's position is that a minor cannot obtain an abortion in a state where it is lawful without the permission of their parents or guardian. But if that is what they seek to accomplish, that is not the

statute the Legislature passed. And it ignores Idaho's long-standing statutory support for minors making decisions about their own medical care.

A.     **The Abortion Travel Ban Infringes on Plaintiffs' First Amendment Rights of Speech, Association, and Expressive Conduct.**

Defendant's Opposition insists that because abortion is a crime in Idaho, this Court's First Amendment analysis must view Plaintiffs' expressive conduct and associational rights through that lens. Defendant's Opposition to Plaintiffs' Motion for TRO or Preliminary Injunction ("Opp.") at 11-12. But the cases Defendant cites do not support that argument. And First Amendment case law makes clear that the Abortion Travel Ban infringes on Plaintiffs' First Amendment rights to speech and association.

Relying on a 1949 U.S. Supreme Court decision, *Giboney v. Empire Storage & Ice. Co.*, 336 U.S. 490 (1949), Defendant argues that any speech at issue is part of "'a single and integrated course of conduct' in violation of a valid criminal statute." *Id.* at 12-13. Setting aside the continuing validity of *Giboney*,[1] this argument fails for two reasons. First, it presumes that Idaho Code § 18-623 is a valid criminal statute. For the reasons set out in Plaintiffs' complaint, memorandum in support of motion for a temporary restraining order, or, in the alternative, a preliminary injunction, and this reply, it is not. Second, it ignores that abortions are legal in the states in which Plaintiffs will be assisting pregnant minors obtain abortions. Abortions remain legal in the overwhelming majority of states, and in some where legislatures made it a crime,

---

[1] In *King v. Governor of the State of New Jersey*, 767 F.3d 216, 225 (3d Cir. 2014), *abrogated on other grounds by National Institute of Family and Life Advocates v. Bacerra*, 138 S. Ct. 2361 (2018), the Third Circuit noted that the passages upon which the defendants rely in *Giboney* have "been the subject of much confusion. *See* Eugene Volokh, *Speech as Conduct: Generally Applicable Laws, Illegal Courses of Conduct, "Situation-Altering Utterances," and the Uncharted Zones*, 90 Cornell L. Rev. 1277, 1314-22 (2005) (discussing eight distinct interpretations of *Giboney*'s "course of conduct" language).

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER, OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION - 3

citizen initiatives passed statutes or constitutional amendments codifying the right to abortion.

To be sure, Idaho is not one of them. Yet. But Idaho's criminalization of reproductive choice

does not make abortion care inherently criminal. Indeed, when discussing obtaining abortion care

in another state, Plaintiffs are not discussing a crime, and when driving or providing travel

money for someone to receive abortion care in another state, Plaintiffs are not assisting a crime.

And when Plaintiffs' donors fund these activities, they are not funding criminal activity. They

are discussing, providing travel assistance for, and receiving donations related to lawful conduct.

By contrast, Idaho Code § 18-623 runs afoul of basic First Amendment principles. The

First Amendment protects the right of all people to make their own decisions about "the ideas

and beliefs deserving of expression, consideration, and adherence." *Turner Broad. Sys., Inc. v.*

*F.C.C.*, 512 U.S. 622, 641 (1994), even when those ideas and beliefs are unpopular. *See 303*

*Creative LLC v. Elenis*, 143 S. Ct. 2298, 2308 (2023). The plain language of Idaho Code § 18-

623 demonstrates how the statute infringes on Plaintiffs' First Amendment rights.

First, the Abortion Travel Ban criminalizes "harboring" a pregnant minor. Idaho Code

§ 18-623(1). By doing so, the statute impinges on protected associational rights because

Plaintiffs are chilled from associating with pregnant minors and volunteers, such as by providing

a place to stay, if during that stay the minor decides to access a lawful abortion. Criminalization

of "harboring" also targets expressive conduct. If Plaintiffs or their volunteers hold themselves

out as providing a refuge for pregnant minors, such as by offering accommodations, Plaintiffs are

intending to convey a particularized message of abortion support, and this message is likely to be

understood by those who view it—that Plaintiffs support lawful abortion and will help a minor

access it. *See Texas v. Johnson*, 491 U.S. 397, 410, 411 (1989).

Next, the Abortion Travel Ban criminalizes "recruiting" a pregnant minor. Idaho Code § 18-623(1). This is unconstitutional because the term "recruiting" targets a wide swath of protected speech, and it is unclear exactly what would count as recruiting. Speech that constitutes "recruiting" could include a trusted adult speaking to a minor about the availability of lawful abortion, furnishing information about abortion clinics in Washington and Oregon, and offering transportation assistance. "Recruiting" also targets expressive conduct because Plaintiffs could be seen as "recruiting" pregnant minors if they hold themselves out as trusted organizations and adults who help minors and are advocating for the accessibility of lawful abortion. "Recruiting" likewise targets protected association. It prevents Plaintiffs from working together with pregnant minors in support of lawful abortion. It amounts to the State imposing its views on groups that express views the State finds disagreeable. *See Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015) (laws are content-based regulations on speech if they were "adopted by the government because of disagreement with the message [the speech] conveys") (brackets in original; internal quotation marks and citation omitted).

Additionally, the Abortion Travel Ban criminalizes "transporting" pregnant minors, which also invades Plaintiffs' protected speech and expressive conduct. Idaho Code § 18-623(1). Plaintiffs are unsure if their speech that involves sharing information on travel will be punished by the Abortion Travel Ban. The prohibition on "transporting" a minor also targets protected association. It is unclear if the statute would criminalize a trusted adult who is associating with a minor by transporting them in their vehicle.

An adult who "procures" an abortion or "obtains" an abortion-inducing medication for a pregnant minor is also targeted by the Abortion Travel Ban. *Id.* By forbidding the "procuring" or "obtaining" of an abortion or abortion-inducing medication, the statute impermissibly restricts

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER, OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION - 5

120820422.2 0099880-01499

Plaintiffs' ability to spend money in support of lawful abortion. Plaintiff Northwest Abortion

Access Fund, as an abortion fund, spends money on lawful abortion as a core component of its

mission. Plaintiff Indigenous Idaho Alliance provides financial assistance to pregnant minors to

obtain lawful abortions. Both Plaintiffs expend funds to cover the cost of the procedure,

medication, travel, accommodations, and other logistics, and in doing so they convey a message

of support for lawful abortion.

Finally, by purporting to criminalize only those individuals and organizations that assist

pregnant minors in Idaho obtain lawful abortions outside of Idaho, Idaho Code § 18-623

prohibits speech based on content and viewpoint. Laws that target speech based on its content

"are presumptively unconstitutional." *Reed*, 576 U.S. at 163. "Viewpoint discrimination is . . . an

egregious form of content discrimination." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515

U.S. 819, 829 (1995). By criminalizing conduct by individuals and organizations who support

and fund lawful out-of-state abortions, Idaho Code § 18-623 targets speech and conduct that

expresses the view that abortion care should be accessible. For example, "recruiting" could

punish those who generally speak in favor of lawful abortion, including Plaintiffs holding

themselves out as a resource for pregnant minors, expressing support for lawful abortion, and

communicating the availability of their services. This prohibition on "recruiting" targets speech

based on its content: lawful abortion. It is also viewpoint-based because it generally targets

speech that is in support of lawful abortion, a viewpoint with which the State disagrees. *See*

*Planned Parenthood Greater N.W. v. Labrador*, No. 1:23-cv-001420, 2023 WL 4864962, at *22

(D. Idaho July 31, 2023) (threats to prosecute health care providers for referring people for out-

of-state abortion care were content- and viewpoint-based restrictions because they silence health

care providers "on a single topic—abortion," while permitting them to "provide information and referrals about out-of-state resources like anti-abortion counseling centers or prenatal care").

Plaintiffs are likely to succeed on the merits of their claim that Idaho Code § 18-623 infringes on their First Amendment speech and association rights, and this Court should enjoin Defendant. from enforcing it.

**B.      The Abortion Travel Ban Is Vague Because Its Language Is Unclear and as Defendant Interprets Its Intent Element, It Does Not Provide Notice to a Person of Ordinary Intelligence.**

Defendant insists that because the words "harboring," "recruiting," and "transporting" appear in state and federal sex trafficking and human trafficking statues, use of them in Idaho Code § 18-623 does not violate Plaintiffs' Fourteenth Amendment rights. Opp. at 3, 21-22. But abortion trafficking is not a thing. Abortion care remains legal in the majority of states, including both of Idaho's neighboring states to the west. Traveling to receive abortion care in a state where it is legal is not trafficking. Prohibiting such travel or imposing criminal penalties for such travel (even if you also have to prove the intent to conceal) is an Abortion Travel Ban.

The Abortion Travel Ban is not just like a sex trafficking statute. Sex trafficking statutes prohibit conduct that brings vulnerable people, usually women, into the commercial sex trade through some sort of force. The conduct into which the person is brought is illegal, and it is done in some fashion against the will of the trafficked person. Here, by contrast, Defendant seeks to punish Plaintiffs who assist pregnant minors obtain *lawful* abortion care the pregnant minor seeks to obtain. Moreover, Plaintiffs, unlike sex traffickers, are not scouting for vulnerable young women to bring into illegal activity. The people they assist in obtaining abortions seek Plaintiffs' assistance. Idaho Code § 18-623 purports to criminalize conduct that is lawful in the state where it occurs. It is in that context, which is unlike the trafficking context, that

"harboring," "recruiting," and "transporting" are unconstitutionally vague. Plaintiffs, and other adults who wish to assist pregnant Idaho minors, must discern how or when ordinary acts of assistance become "harboring," "recruiting," and "transporting" for purposes of the statute.

And, for the reasons set forth above in Section I.A, these provisions infringe on Plaintiffs' First Amendment rights. Vague statutes are particularly objectionable when, as here, they "involve sensitive areas of First Amendment freedoms" because "they operate to inhibit the exercise of those freedoms." *Cal. Tchrs. Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)).

Finally, Defendant's insistence that Plaintiffs have ignored the "intent to conceal" element actually underscores that the statute is vague. Plaintiffs do not suggest that the State would not have to prove every element of Idaho Code § 18-623 beyond a reasonable doubt to obtain a conviction. Plaintiffs also well understand that one of those elements the State would have to prove is that a person acted with the "intent to conceal" the abortion from the pregnant minor's parents or guardian. Plaintiffs' vagueness argument is that they are not certain what that means, particularly in the same statute where consent of a parent is an affirmative defense.

Defendant's Opposition admits that, as Plaintiffs argued in their opening brief, the statute fails to provide adequate notice regarding what culpability attaches to communication or the lack thereof with a minor's parents and/or guardians. Memorandum in Support at 16. At least five times Defendant conflates "intent to conceal" from the pregnant minor's parent with the parent's lack of knowledge. First, Defendant argues that the specific "intent to conceal" element demonstrates that the statute is narrowly tailored to the State's interest of "helping ensure *parental involvement in the pregnant minor's decision* as to whether to have an abortion." Opp. at 18. Second, Defendant argues that "the State's interest is unrelated to the

restriction of free expression. Ensuring that any assistance for out-of-state abortions take place *only with the knowledge of a child's parents* has no relation to free speech." *Id.* Third, Defendant argues that "providing parents with notice and advance knowledge would likely prevent a prosecutor from bringing a case, while a prosecutor might be able to argue the *specific intent requirement was met if a defendant provided no notice to the child's parents*." *Id.* at 23. Fourth, Defendant asserts that "Plaintiffs' contention that the Constitution gives them the right to get minors to travel across state lines *without their parents' knowledge* is truly shocking." *Id.* at 3. Finally, Defendant asserts that "it is clear that Plaintiffs want to violate the specific intent requirement that they gloss over. Plaintiff Matsumoto, a member of the bar, "'would like to provide temporary shelter for pregnant minors . . . who are traveling to obtain . . . abortion care . . . *whether those minors' parents know or do not know'*." *Id.* at 9.

In all five instances, Defendant's own arguments suggests he is unsure what "intent to conceal" means and he contends that lack of knowledge by the pregnant minor's parent is the same as intending to conceal. But those are two different things. One is an affirmative act (intent to conceal), and the other can arise from lack of action. And if *Defendant* is confused by what "intent to conceal" means, how can the statute possibly provide adequate notice to a person of ordinary intelligence? In all five instances, Defendant also makes clear what his interpretation of the statute is and what conduct he would prosecute.

Suggesting that "intent to conceal" is the same as "without a parent's knowledge" is not the only time Defendant asks this Court to accept Defendant's interpretation of the statute different from how it is written. Defendant argues that "[t]he law does not threaten [Plaintiffs'] speech – instead it prohibits only specified conduct that *intentionally causes* a pregnant minor's abortion with an intent to conceal the abortion from the minor's parents." Opp. at 5. The words

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER, OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION - 9

120820422.2 0099880-01499

"intentionally causes" are not in Idaho Code § 18-623, however. Does telling a minor where abortion is legal "intentionally cause" an abortion? Does providing travel money "intentionally cause" an abortion? Does providing a pregnant minor a place to stay before the pregnant minor travels across state lines "intentionally cause" the abortion? To Defendant the answer to all of these questions is apparently yes. And Defendant's grafting of "intentionally causes" onto the statute is not an interpretation that a person of ordinary intelligence would understand.

This Court should find that Plaintiffs are substantially likely to succeed on the merits of their Fourteenth Amendment vagueness claim and enjoin Defendant from enforcing the Abortion Travel Ban.

### C.     Defendant's Asserted State Interest Is Not Narrowly Tailored.

Plaintiffs are helpers in the community seeking to deliver accurate information to young people, who themselves have certain rights to receive that information, even if Plaintiffs' lawsuit does not bring their claims. Defendant distorts this into a parental rights issue. To distract from Idaho Code § 18-623's unconstitutional intrusion into Plaintiffs' rights, Defendant paints a picture of nefarious Plaintiffs coercing minors into obtaining abortions and invading and usurping the right to parent. In reality, Plaintiffs do not contend that they can substitute themselves for the role of the parent. Plaintiffs merely contend that they are trusted adults in the community who young people can come to for support, including by engaging in constitutional speech and expressive conduct that help young people obtain lawful out-of-state abortions. Plaintiffs are not intruding upon parental rights. Further, to the extent that parental rights are implicated, the statute is not narrowly tailored to a compelling state interest, and thus does not survive strict scrutiny.

Defendant contends that "[t]he Plaintiffs are asserting the right to determine for themselves whether a parent is fit in order to decide whether it is okay to conceal information about a pregnant minor's abortion from the parents." Opp.at 24. That is false. Plaintiffs make no judgment about a pregnant minor or the pregnant minor's parents or guardians. They know from experience that the pregnant minors who seek their assistance do so for a variety of reasons, including because Plaintiffs are trusted adults or because there is no parent in the pregnant minor's life, or because the pregnant minor does not have or feel the ability to place trust in their parents, or because the pregnant minor has been the victim of sexual or domestic abuse that makes seeking the guidance of a parent or guardian unsafe. Plaintiffs' assisting those minors involves no judgment of a parent.

In its effort to find legal support for its argument that Plaintiffs are intruding on established parental rights, and thus that Idaho Code § 18-623 is narrowly tailored to a compelling state interest, Defendant first points to Idaho Code § 18-4506, Child Custody Interference. Defendant claims that Plaintiffs' actions in assisting a minor access a legal abortion already violate this law, and that Idaho Code § 18-623 is simply a more specific way to protect a parent's right to know, particularly on the sensitive topic of abortion. Opp. at 2, 6-7, 14.

But Idaho Code § 18-4506, properly understood, does not proscribe Plaintiffs' conduct, and Defendant's reliance on it is misplaced. Idaho Code § 18-4506 was enacted to protect the custody rights of parents, to prevent parental abduction, and to provide specific defenses for parents accused under the statute. The statement of purpose accompanying the child custody interference bill confirms this, stating: "The purpose of this bill is to provide a definition of child custody and visitation and to provide penalties for violation. Under present law there is no enforceable remedy for a parent or custodian except for an expensive, usually lengthy, court

battle . . . ." This comports with the intention of the forwarding legislators, as reflected in the Committee Minutes, where the statute is referred to as "parental kidnapping." February 13, 1987, House Judiciary, Rules & Administration Committee Minutes.

This purpose of Idaho Code § 18-4506 to address issues of custody interference in divorce, domestic violence, and parental alienation situations is reflected in Idaho court cases. *See, e.g., Boe v. Boe*, 163 Idaho 922, 933-34, 422 P.3d 1128, 1139-40 (2018) (divorce appeal addressing issues of education and custody); *Hopper v. Swinnerton*, 155 Idaho 801, 317 P.3d 698 (2013) (domestic dispute case noting that § 18-4506 does not create a private cause of action for damages); *Danti v. Danti*, 146 Idaho 929, 204 P.3d 1140 (2009) (§ 18-4506 mentioned in case involving custody disputes in a divorce); *Hopper v. Hopper*, 144 Idaho 624, 167 P.3d 761 (2007) (divorce action involving lack of statutory defenses under § 18-4506); *State v. Levicek,* 131 Idaho 130, 953 P.2d 214 (1998) (appeal on restitution amount in case where father pled guilty under § 18-4506 after improperly taking his daughter out of the United States). In short, Idaho Code § 18-4506 was not intended to, and does not, address the issues at hand.

The State also relies on *Troxel v. Granville*, 530 U.S. 57 (2000), as further support for its overall assertion of the supremacy of parental rights and its argument that assuring a parent's right to know is a compelling state interest. Opp. at 6, 7. While *Troxel*, a case with two concurring opinions and three separate dissents, recognizes parental interests, it does not stand for the proposition that those rights are unlimited. The plurality opinion in *Troxel* recognized that there are situations where intervention in a family is warranted. *Troxel*, 530 U.S. at 68-69. Further, *Troxel*'s applicability outside the context of third-party visitation has been questioned, both in the Ninth Circuit and beyond. *See Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020) (*Troxel* was a visitation case and could not be extended to educational policies); *Gabriel v.*

*Lavison*, No. 2:22-cv-00006, 2022 U.S. Dist. LEXIS 36025, at *6 (W.D. Wash. Mar. 1, 2022)

(noting *Troxel* "involves the visitation rights of grandparents" and did not apply in another

context); *Case v. Ivey*, No. 21-12276, 2022 U.S. App. LEXIS 18433, at *8 (11th Cir. July 5,

2022) (noting no case has extended *Troxel* to situations involving how to dress one's child or

what medical care to provide for them); *McGee v. Va. High Sch. League*, 801 F. Supp. 2d 526

(W.D. Va. 2011) ("Although it is well-established that the Constitution protects the fundamental

right of parents to make decisions concerning the care, custody, and control of their children, it is

equally apparent that the right is neither absolute nor unqualified." (citation omitted)).[2]

　　　　Even in Idaho, parental rights are not absolute. Like most states, Idaho allows minors to

consent to certain medical services themselves, without parental consent or even notification.

This confidentiality improves outcomes for minors and does not stop minors from consulting

with their parents, in situations where it is safe to do so.[3] What mandatory notification does not

---

[2] Other cases relied on by Defendant to support his parental rights argument address far different circumstances than the case before the Court. *See, e.g., Nelson v. Evans*, 170 Idaho 887, 517 P.3d 816 (2022) (visitation statute unconstitutional as, *inter alia*, not narrowly tailored); *Bartosz v. Jones*, 146 Idaho 449, 465, 197 P.3d 310, 326 (2008) (Eismann, J., concurring) (parent's ability to relocate out of state with a shared minor child); *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000) (case involving false allegations of sexual abuse and satanic ritual, which led authorities to remove two minors from their home and have them undergo intrusive medical examinations); *Parham v. J.R.*, 442 U.S. 584, 603 (1979) (inquiry by a neutral factfinder, and not formal hearings, required when a parent sought to admit a minor to a mental health facility and recognizing that "a state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized"); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) (court affirmed conviction for violation of state labor laws where a minor was street preaching as "neither rights of religion nor rights of parenthood are beyond limitation"); *Martin v. Vincent*, 34 Idaho 432, 201 P. 492 (Idaho 1921) (case involving a minor who was physically detained at the Idaho Industrial Training School and his parents given no opportunity to challenge his detention in court).

[3] One study found that 60 percent of adolescents receiving confidential sexual health care services had told their parents or guardian. Rachel K. Jones *et al., Adolescents' Reports of Parental Knowledge of Adolescents' Use of Sexual Health Services and Their Reactions to Mandated Parental Notification for Prescription Contraception*, 293 JAMA 340 (2005).

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING
ORDER, OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION - 13

protect, however, are those minors who are not living in Defendant's idealized world. These

minors face the prospect of being parents themselves while living in situations of instability,

violence, or dysfunction; have been the victims of sexual violence or coercion; and suffer from

mental and physical health challenges.[4]

      In Idaho, minors 14 or older can consent to medical treatment for reportable infectious,

contagious, or communicable diseases. Idaho Code § 39-3801 ("The consent of the parent,

parents, or legal guardian of such minor shall not be necessary . . . ."). Minors 16 or older may

request drug treatment medical services without parental notification. Idaho Code § 37-3102.

Minors 17 or older may donate blood without parental permission. Idaho Code § 39-3701(1).

Idaho allows doctors to provide contraceptive prescriptions and devices to "any person" they

deem able to understand the information, Idaho Code § 18-603, and allows minors to place their

own child for adoption without parental consent. Idaho Code § 16-1504(7). Minors may consent

to any medical care for their own child without parental consent, in recognition of the reality that

pregnant or parenting minors are the appropriate decision makers in these circumstances.[5]

      Defendant ignores that minors have constitutional rights in other contexts as well,

including in the criminal justice system. *In re Gault*, 387 U.S. 1, 13 (1967) (juvenile defendants

---

[4] *See* Am. Acad. of Pediatrics, Comm. on Adolescence, *The Adolescent's Right to Confidential Care When Considering Abortion*, 139 Pediatrics e20163861 (2017); J. Shoshanna Ehrlich, *Grounded in the Reality of Their Lives: Listening to Teens Who Make the Abortion Decision Without Involving Their Parents*, 18 Berkeley Women's L.J. 61 (2003).

[5] Idaho allows minors to consent to their own health care more generally. Idaho Code 39-4503 ("Any person . . . who comprehends the need for, the nature of, and the significant risks ordinarily inherent in any contemplated health care services is competent to consent . . . ."). This makes sense, as medical standards and ethics already govern the doctor patient relationship and allow the doctor to do what is best for the person seeking their care. *See generally* Marcia D. Greenberger & Katherine Connor, *Parental Notice and Consent for Abortion: Out of Step with Family Law Principles and Policies*, Family Planning Perspectives, vol. 23, no. 1 (1991).

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER, OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION - 14

have rights to counsel, notice of charges, confront and cross-examine witnesses, be free from self-incrimination, review discovery, and appellate review). "[W]hatever may be their precise impact, neither the Fourteenth Amendment, nor the Bill of Rights, is for adults alone." *Id.* "Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights." *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 74 (1976). Defendants in the juvenile justice system do not have all the same rights as defendants in criminal court because the juvenile justice system does not operate at the same level of severity and permanence as the adult system. Pregnancy, and becoming a parent, however, have the same impact of severity and permanence on all individuals, regardless of age.

The exceptions to mandatory parental involvement in adolescent care set out above evince Idaho's understanding that while familial involvement in all aspects of a young person's life may be the ideal the State desires, that hope must be reconciled with the reality that many minors will not or cannot avail themselves of important services if they must involve their parents. The fact that, post-*Dobbs*, Idaho can criminalize abortion health care for most of its citizens does not mean that the State also has the authority to subject minors in the state to a rigid and expanded definition of parental rights, especially where that definition would limit the First Amendment rights of other citizens and would put many minors in harm's way. Idaho's many statutes allowing minors to make a variety of health and welfare decisions for themselves are consistent with the long-standing awareness that while Idaho may wish that every family were a happy one and every teenager an open book, minors need access to legal health care and Plaintiffs have the constitutional right to discuss and support this access. Defendant's attempt to use parental rights as cover for an unconstitutional statute should not be permitted to stand.

And if a pregnant minor truly were taken across state lines against their will, Idaho already has a statute that proscribes such conduct: kidnapping. Idaho Code § 18-4501, *et seq.* Defendant does not refer to the state kidnapping statute in his Opposition, likely because the kidnapping statute requires that the act be committed "with intent" to hold someone "against [their] will." Idaho Code § 18-4501(1). Should any person run afoul of the state's kidnapping statute, Defendant has been and remains free to prosecute them. But Defendant knows that no one has or will be held against their will in the situations at issue here, and no kidnapping law has been or will be broken.

## II.   PLAINTIFFS WILL BE IRREPARABLY HARMED BY VIOLATION OF THEIR CONSTITUTIONAL RIGHTS.

Defendant insists there is no injury because there is no constitutional violation. He thus concedes, as he must, that if there is constitutional injury, there is irreparable harm. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009); *Farris v. Seabrook*, 677 F.3d 858, 868 (9th Cir. 2012). Plaintiffs face the real threat of prosecution, by Defendant's own admissions, for having conversations with pregnant minors about legal abortion care if that minor then travels outside of Idaho to obtain abortion care.

## III.   THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVORS AN INJUNCTION.

Defendant also insists that the balance of equities and public interest weigh against injunctive relief, again, because there is no constitutional violation. They thus concede, as they must, that if there is constitutional injury, the balance of equities and public interest fall strongly in Plaintiffs' favor. "[E]nforcement of an unconstitutional law is always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013).

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER, OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION - 16

120820422.2 0099880-01499

## IV.    IDAHO ATTORNEY GENERAL RAÚL LABRADOR IS THE PROPER DEFENDANT.

Defendant argues that Plaintiffs have no injury because the Attorney General is not the proper defendant. Opp. at 25-27. Defendant's argument has been rejected by the Ninth Circuit and by this Court. *Planned Parenthood of Idaho, Inc., v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) (even where the Idaho Attorney General does not have direct enforcement power, his assistance powers make it possible for him to have enforcement authority and bring him within the exception in *Ex Parte Young,* 209 U.S. 123 (1908), allowing federal court actions against state officers in their official capacities); *Planned Parenthood Greater Nw.*, Memorandum Decision and Order, at 18-21 (July 31, 2023) (same); *see also Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). Here, where the statute specifically provides authority to enforce the at-issue statute where a county prosecutor will not, the *Ex Parte Young* exception is even more availing.

Defendant also argues that his formal opinion construing the limits of his prosecutorial powers issued April 27, 2023, supersedes the Ninth Circuit's interpretation of his powers in *Wasden*. Opp. at 26-27. Defendant identifies no authority for this proposition and acknowledges in a footnote that *Planned Parenthood Greater Northwest* is to the contrary. *Id.* at 27 n.2. Until and unless the Ninth Circuit overrules *Wasden* or establishes a different test for determining when an attorney general has sufficient connection to enforcement of a statute, Attorney General Labrador is the proper defendant.

## CONCLUSION

For the reasons set forth above, and in Plaintiffs' opening memorandum, this Court should enter an order enjoining the Defendant from enforcing Idaho Code § 18-623.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER, OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION - 17

120820422.2 0099880-01499

DATED:  September 11, 2023.                    STOEL RIVES LLP


                                               /s/ Wendy J. Olson
                                               Wendy J. Olson


                                               LEGAL VOICE


                                               /s/ Wendy S. Heipt
                                               Wendy S. Heipt
                                               Kelly O'Neill


                                               THE LAWYERING PROJECT


                                               /s/ Jamila A. Johnson
                                               Jamila A. Johnson
                                               Paige Suelzle

                                               *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 11, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following person:

Lincoln Davis Wilson
Lincoln.wilson@ag.idaho.gov

James E.M. Craig
james.craig@ag.idaho.gov

/s/ Wendy J. Olson
Wendy J. Olson