RAÚL R. LABRADOR
ATTORNEY GENERAL

LINCOLN DAVIS WILSON, ISB #11860
Chief, Civil Litigation and
Constitutional Defense

JAMES E. M. CRAIG, ISB #6365
Deputy Division Chief
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
lincoln.wilson@ag.idaho.gov
james.craig@ag.idaho.gov

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| LAURDES MATSUMOTO, NORTHWEST ABORTION ACCESS FUND, and INDIGENOUS IDAHO ALLIANCE,<br><br>               Plaintiffs,<br><br>v.<br><br>RAÚL LABRADOR, in his capacity as the Attorney General for the State of Idaho,<br><br>               Defendant. | Case No. 1:23-cv-00323-DKG<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

INTRODUCTION ........................................................................................ 1

STANDARD OF DECISION ........................................................................... 3

ARGUMENT ............................................................................................. 3

I.    Plaintiffs fail to state a claim ........................................................  3

II.   The Court lacks subject matter jurisdiction.................................  6

      A.  Plaintiffs lack standing because they lack a cognizable injury...........  6

      B.  Entity Plaintiffs lack associational and organizational standing.....................  10

      C.  Plaintiffs' claims are barred by the Eleventh Amendment................................  11

      CONCLUSION ....................................................................................  16

TABLE OF AUTHORITIES

CASES

*Arizona Right to Life Political Action Community v. Bayless,*
   320 F.3d 1002 (9th Cir. 2003)..................................................................... 8

*Association General Contractors of America, San Diego Chapter, Inc. v. California*
   *Department of Transportation,*
   713 F.3d 1187 (9th Cir. 2013)................................................................... 10

*Attorney General of New York v. Soto-Lopez,*
   476 U.S. 898 (1986).................................................................................. 4

*Babbit v. United Farm Workers National Union,*
   442 U.S. 289 (1979).................................................................................. 7

*Bell Atlantic Corporation v. Twombly,*
   550 U.S. 544 (2007).................................................................................. 3

*Bellotti v. Baird,*
   443 U.S. 622 (1979).................................................................................. 1

*Bartosz v. Jones,*
   146 Idaho 449, 197 P.3d 310 (Idaho 2008)............................................... 1

*Carney v. Adams,*
   592 U.S. ___ 141 S. Ct. 493 (2020) ......................................................... 7

*Carrico v. City and County of San Fransisco,*
   656 F.3d 1002 (9th Cir. 2011) ............................................................ 8, 9

*Cetacean Comm. v. Bush,*
   386 F.3d 1169 (9th Cir. 2004)................................................................... 3

*Clapper v. Amnesty International USA,*
   568 U.S. 398 (2013).................................................................................. 7

*Department of Education v. Brown,*
   600 U.S. ___, 143 S. Ct. 2343 (2023) ...................................................... 7

*Dream Palace v. County of Maricopa,*
   384 F.3d 990 (9th Cir. 2004)..................................................................... 8

*Ex parte Young,*
    209 U.S. 123 (1908)..................................................................................... 12, 16

*Havens Realty Corporation v. Coleman,*
    455 U.S. 363 (1982)......................................................................................... 11

*H.L. v. Matheson,*
    450 U.S. 398 (1981)........................................................................................... 1

*Hunt v. Washington State Apple Advertising Commission,*
    432 U.S. 333 (1977)......................................................................................... 10

*Johnson v. City of Cincinnati,*
    310 F.3d 484 (6th Cir. 2002)............................................................................. 6

*King v. New Rochelle Municipal Housing Authority,*
    442 F.2d 646 (2d Cir. 1971) ............................................................................. 6

*Legal Services of Northern California, Inc. v. Arnett,*
    114 F.3d 141 (1997) ....................................................................................... 16

*Lopez v. Candaele,*
    630 F.3d 775 (9th Cir. 2010).......................................................................... 8, 9

*Los Angeles County Bar Association v. Eu,*
    979 F.2d 697 (9th Cir. 1992)........................................................................... 12

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)........................................................................................... 7

*Lutz v. City of York, PA.,*
    899 F.2d 255 (3d Cir. 1990) ............................................................................. 6

*Matsuo v. United States,*
    586 F.3d 1180 (9th Cir. 2009)........................................................................... 4

*McBurney v. Cuccinelli,*
    616 F.3d 393 (4th Cir. 2010)........................................................................... 12

*Mecinas v. Hobbs,*
    30 F.4th 890 (9th Cir. 2022) ........................................................................... 12

*Michael Morgan v. State Bar of California*,
  Case No. CV-23-903-MWF, 2023 WL 5505909 at *2 (C.D. Cal. July 7, 2023) ........ 3

*Newman v. Lance*,
  129 Idaho 98, 922 P.2d 395 (1996) ........................................................................ 13

*Papasan v. Allain*,
  478 U.S. 265 (1986) ................................................................................................ 3

*Planned Parenthood of Central Missouri v. Danforth*,
  428 U.S. 52 (1976) ................................................................................................. 1

*Planned Parenthood of Idaho, Inc. v. Wasden*,
  376 F.3d 908 (9th Cir. 2004) ........................................................................... 12, 14

*Raines v. Byrd*,
  521 U.S. 811 (1997) ............................................................................................... 6

*Rodriguez v. City of San Jose*,
  930 F.3d 1123 (9th Cir. 2019) .............................................................................. 10

*Saenz v. Roe*,
  526 U.S. 489 (1999) ............................................................................................... 4

*San Diego County Gun Rights Commission v. Reno*,
  98 F.3d 1121 (9th Cir. 1996) ................................................................................. 7

*Sato v. Orange County Department of Education*,
  861 F.3d 923 (9th Cir. 2017) ................................................................................. 3

*Smith v. Pacific Properties and Development Corporation*,
  358 F.3d 1097 (9th Cir. 2004) .............................................................................. 11

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................................... 6

*State v. Summer*,
  139 Idaho 219, 76 P.3d 963 (Idaho 2003) ............................................................ 13

*Summers v. Earth Island Inst.*
  555 U.S. 498 (2009) .............................................................................................. 10

*Sullivan v. Ferguson,*
  636 F.Supp.3d 1276 (W.D. Wash. 2022) ............................................................. 12

*Susan B. Anthoney List v. Driehaus,*
  573 U.S. 149 (2014) ................................................................................................ 7

*Thomas v. Anchorage Equal Rights Commission,*
  220 F.3d 1134 .............................................................................................. 7, 8, 9

*Troxel v. Granville,*
  530 U.S. 57 (2000) .................................................................................................. 1

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,*
  517 U.S. 544 (1996) .............................................................................................. 10

*United Public Workers of America (C.I.O.) v. Mitchell,*
  330 U.S. 75 (1947) .................................................................................................. 8

*Universal Life Church Monastery Storehouse v. Nabors,*
  35 F.4th 1021 (6th Cir. 2022) ............................................................................. 13

*Wallis v. Spencer,*
  202 F.3d 1126 (9th Cir. 2000) ............................................................................... 2

*Wheeler v. City of Santa Clara,*
  894 F.3d 1046 (9th Cir. 2018) ............................................................................. 13

*Whole Women's health v. Jackson,*
  142 S. Ct. 522 (2021) ............................................................................................ 12

*Wright v. City of Jacson, Mississippi,*
  506 F.2d 900 (5th Cir. 1975) ................................................................................. 5

*Younger v. Harris,*
  401 U.S. 37 (1971) .................................................................................................. 9

## STATUTES

Idaho Code § 18-114 ............................................................................................... 9

Idaho Code § 18-623 ...................................................................................... *passim*

Idaho Code § 18-8602 .............................................................................................. 5

18 U.S.C. § 1591.................................................................................................. 5

**RULES AND REGULATIONS**

U.S. Constitution Article III, § 2 ................................................................... 6

**OTHER AUTHORITIES**

Attorney General Opinion, 23-1 (April 27, 2023) ......................................... 13, 14, 15

## INTRODUCTION

Plaintiffs say they have constitutional rights to help minors travel to other states to get abortions without their parents' knowledge or consent and that Idaho's criminal prohibition of the practice is void. But Plaintiffs themselves acknowledge that "[p]regnancy, childbirth and parenting significantly impact an individual's physical and mental health, finances, and personal relationships" and that "[t]he decision to impact one's health with a pregnancy or to become a parent is extremely personal and permanent." Dkt. 1 ¶ 27. Given the "profound moral and religious concerns" associated with abortion, *Bellotti v. Baird*, 443 U.S. 622, 640 (1979), and the "potentially grave emotional and psychological consequences of the decision to abort[,]" *H.L. v. Matheson*, 450 U.S. 398, 412–13 (1981), "a girl of tender years, under emotional stress, may be ill-equipped to make" a decision of whether to have an abortion. *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 91 (1976) (Stewart, J. concurring). So it is critically important that a minor receive the advice and support of her parents, who have a "fundamental right 'to make decisions concerning the care, custody and control of their children.'" *Bartosz v. Jones*, 146 Idaho 449, 465, 197 P.3d 310, 326 (Idaho 2008) (Eismann, J., concurring) (quoting *Troxel v. Granville*, 530 U.S. 57, 66 (2000)).

Idaho thus lawfully criminalized the practice of third-party adults procuring abortions for minors with the intent to conceal the abortion from the minor's parents or guardian. Idaho Code § 18-623 makes it illegal for an adult, acting with the intent

to conceal an abortion from the parents or guardian of a pregnant unemancipated minor, to procure an abortion or an abortion inducing drug for the pregnant minor by recruiting, harboring, or transporting the minor within the State of Idaho. The constitution does not recognize the right Plaintiffs argue for—to the contrary it protects the rights of parents to not only make those medical decisions for their children, but also to "be with their children while they are receiving medical attention." *Wallis v. Spencer*, 202 F.3d 1126, 1142 (9th Cir. 2000). Plaintiffs' claims fail as a matter of law and should be dismissed under Rule 12(b)(6).

In addition to failing to state a claim on the merits, Plaintiffs fail to properly invoke the Court's Article III jurisdiction. Plaintiffs say in briefing that the Attorney General "acknowledges … that he intends to prosecute Plaintiffs" for helping pregnant Idaho minors obtain lawful abortions in neighboring states. Dkt. 34 at 1. But this is patently false, since the Attorney General's briefing said the exact opposite: that he "*has no authority* to threaten criminal prosecutions of the Abortion Trafficking Ban at this time." Dkt. 32 at 26. The Attorney General cannot threaten prosecution and has not threatened prosecution. Nor have Plaintiffs adequately pled a concrete plan to violate the law. Under settled Ninth Circuit caselaw, that precludes Plaintiffs both from establishing standing and from reaching past the Attorney General's Eleventh Amendment immunity. The Court thus lacks jurisdiction and this case should be dismissed under Rule 12(b)(1) as well.

STANDARD OF DECISION

"Although for the purposes of this motion to dismiss [the Court] must take all the factual allegations in the complaint as true, [the Court is] not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).  "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at n.3.

Standing is a necessary predicate to federal subject matter jurisdiction under Article III.  *Cetacean Comm. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  If a plaintiff has not alleged an injury in fact sufficient to invoke federal jurisdiction, "the suit should be dismissed under [Federal Rule of Civil Procedure] 12(b)(6)." *Id.* at 1175.  "An Eleventh Amendment defense 'is quasi-jurisdictional in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion.'" *Michael Mogan v. State Bar of Cal.*, Case No. CV 23-903-MWF, 2023 WL 5505909 at *2 (C.D. Cal. July 7, 2023) (quoting *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 (9th Cir. 2017)).

ARGUMENT

## I. Plaintiffs fail to state a claim.

The Attorney General provided extensive argument regarding the legal defects in Plaintiffs' First Amendment and vagueness arguments in his opposition to Plaintiffs' motion for preliminary injunction and incorporates those arguments by

reference here.  Dkt. 32.  The Attorney General thus addresses in this motion the one claim as to which Plaintiffs did not seek a preliminary injunction: their claim that the Abortion Trafficking Ban violates the right to travel.

Plaintiffs fail to allege a cognizable violation of their right to interstate travel. The right to interstate travel contains three components: "the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State."  *Saenz v. Roe*, 526 U.S. 489, 500 (1999).  It is only the first of these that Plaintiffs' Complaint alleges has been violated.  Dkt. 1 ¶¶ 103–04.  "A state law implicates the right to travel when it actually deters such travel." *Att'y Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986).  This is a threshold showing for the purpose of injury sufficient to invoke standing.  *Matsuo v. United States*, 586 F.3d 1180, 1182–83 (9th Cir. 2009).  Plaintiffs fail to meet that standard here.

The Abortion Trafficking Ban does not interfere with Plaintiffs' right to travel as a matter of law.  Idaho Code § 18-623 does not prevent Plaintiffs from entering or leaving the state.  It does not prevent pregnant minor Idahoans from entering or leaving the state.  It does not prevent Plaintiffs and pregnant minor Idahoans from leaving the state together for the purpose of aborting an unborn child in Washington or Oregon, or wherever else such a practice is legal.  The thing it prohibits is not travel, but rather an adult procuring the abortion for the minor by, among other

things, transporting the minor *with the intent to conceal an abortion from the minor's parents*.  Put another way, the statute does not restrict Plaintiffs in their travels into and out of the state with *any* person, rather it prohibits the acts done with the intent to conceal the procuring of a minor's abortion from the parents or guardians of that minor.  Plaintiffs can legally enter and leave Idaho.

As with their First Amendment theories, this claim fails because accepting it would require the Court to invalidate many other human trafficking statutes.  If a prohibition on trafficking a minor for the criminal purpose of abortion violates the right to travel, then it also violates the right to travel to prohibit trafficking a minor for sex or for slavery.  But as noted in the Attorney General's preliminary injunction brief, Dkt. 32 at 21, Idaho law prohibits that conduct, Idaho Code § 18-8602(1)(a)(ii), and Plaintiffs' counsel previously enforced the provisions of federal law that prohibit sex trafficking.  18 U.S.C. § 1591(a)(1).  A theory of the right to travel that would make room for such crimes is grossly overbroad.

Nor can Plaintiffs ground their interstate travel claims in speculation.  Their fears that Idaho Code § 18-623 will lead to "an arbitrary enforcement scheme" that includes "traffic stops of reproductive age female minors" are not grounded in the law or in any enforcement action that they allege has actually occurred.  Dkt. 12-1 at 15.  That is not enough to state a claim.

Finally, Plaintiffs rightly acknowledge that there is no right to intrastate travel in the Ninth Circuit but ask this Court to reach out and find one.  Dkt. 1 at 23–24, n.26; *see also Wright v. City of Jackson*, 506 F.2d 900, 901–903 (5th Cir. 1975)

(rejecting extension of right to travel to cover intrastate activity).  But even if this court finds a right to intrastate travel, Plaintiffs have no constitutional injury based on that right as it has been applied in any other circuit.  The circuits that have recognized a right to intrastate travel construe it as a "right to travel locally through public spaces and roadways," *Johnson v. City of Cincinnati*, 310 F.3d 484, 495 (6th Cir. 2002); *Lutz v. City of York*, 899 F.2d 255, 268 (3d Cir. 1990), or as being "correlative" to the interstate right to travel with the three prongs described by *Saenz*. *King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646, 648 (2d Cir. 1971).  But this too is no use to Plaintiffs because they do not plead that the Abortion Trafficking Ban restricts any travel, intrastate or otherwise.  Idaho Code § 18-623 does not prohibit any act of travel, unless such act is done to procure an abortion for a minor with the intent to conceal the abortion from the pregnant minor's parents or guardian.

## II.     The Court lacks subject matter jurisdiction.

### A.     Plaintiffs lack standing because they lack a cognizable injury.

Because Plaintiffs have not pled a reasonable fear of prosecution under Section 18-623(1) they lack a concrete and particularized injury and thus lack standing.  The judicial power of federal courts, "extends only to 'Cases' and 'Controversies,' [U.S. Const.] Art. III, § 2.  And 'no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (brackets omitted).  "'The law of Article III standing . . . serves to prevent the judicial process from being used

to usurp the powers of the political branches' . . . and confines the federal courts to a properly judicial role." *Id* at 338. (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 407 (2013)) (cleaned up).

Key to standing is "injury in fact that is both concrete and particularized[,] and actual or imminent, not conjectural or hypothetical." *Dep't of Educ. v. Brown*, 600 U.S. ___, 143 S.Ct. 2343, 2351 (2023) (citations and internal quotation marks omitted).  Plaintiffs bear the burden of demonstrating the existence of such an injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Without it, "the case begins and ends with standing." *Carney v. Adams*, 592 U.S. ___, 141 S.Ct. 493 (2020).  Here, Plaintiffs' concerns about their intended conduct fail to get their action airborne.

When standing is asserted by plaintiffs prior to enforcement of a statute, plaintiffs must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and . . . a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 160 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  To successfully plead a credible fear of prosecution, the Ninth Circuit considers three things: "[1] whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute."  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (quoting *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996)).  As the Attorney General

has already shown in his preliminary injunction brief, he has not threatened and cannot threaten any prosecution under the Abortion Trafficking Ban.  And as set forth below, Plaintiffs have also not shown that they have a concrete plan to violate that law either.

Pre-enforcement standing "requires something more than a hypothetical intent to violate the law."  *Thomas,* 220 F.3d at 1139.  Plaintiffs must "articulate a concrete plan to violate" Idaho law "by giving details . . . such as when, to whom, where, or under what circumstances," they will violate the law.  *Lopez v. Candaele,* 630 F.3d 775, 787 (9th Cir. 2010) (cleaned up).  Put another way, while standing doctrine permits a "hold your tongue and challenge now" posture, *Ariz. Right Life Pol. Action Comm. v. Bayless,* 320 F.3d 1002, 1006 (9th Cir. 2003), it still requires that Plaintiffs plead that they are, in fact, holding their proverbial tongues with some specificity.  "The plaintiffs' allegations must be specific enough so that a court need not 'speculate as to . . . the contents of their proposed public statements or the circumstances of their publication.'"  *Lopez,* 630 F.3d at 787 (quoting *United Pub. Workers (C.I.O.) v. Mitchell,* 330 U.S. 75, 90 (1947)).  These requirements exist whether Plaintiffs assert a vagueness challenge or a First Amendment one.  *Carrico v. City and Cnty. of S.F.,* 656 F.3d 1002, 1006 (9th Cir. 2011).

Even pleading a chill of their First Amendment rights, Plaintiffs must satisfy "the rigid constitutional requirement that plaintiffs must demonstrate an injury in fact to invoke a federal court's jurisdiction."  *Lopez,* 630 F.3d at 785 (quoting *Dream Palace v. Cnty. of Maricopa,* 384 F.3d 990, 999 (9th Cir. 2004)).  Nor is general fear of

prosecution in the absence of concrete plans to violate the law "a genuine controversy." *Younger v. Harris,* 401 U.S. 37, 42 (1971).  Looking at each activity that Plaintiffs say the law curbs, there are only three claims: (1) "providing information regarding conduct legal in another state [where] it is illegal in this one" Dkt. 1 ¶ 124; (2) "funding or other practical support for Idahoans seeking to undertake legal conduct in another state" Dkt. 1 ¶ 125; and (3) "associat[ing] freely with each other and with pregnant Idahoans."  Dkt. 1 ¶ 126.

But Plaintiffs nowhere plead the specific intent necessary to violate the law connected with a plan to traffic.  To commit the crime of Abortion Trafficking, an adult must act "with the intent to conceal an abortion from the parents or guardian of a pregnant, unemancipated minor."  Idaho Code § 18-623(1).  This specific intent as to a particular pregnant minor Idahoan is absent from the complaint, and this fact breaks the union of act and intent that is required to violate Idaho law.  Idaho Code § 18-114.

Stating only a mere desire to violate the specific intent requirement, *see* Dkt. 32 at 9–10, their case fails for the reasons in *Younger* and *Lopez*: they have not articulated anything illegal beyond "mere 'some day intentions,' which 'do not support a finding of the actual or imminent injury that our cases require.'"  *Lopez*, 630 F.3d at 787–88 (quoting *Thomas*, 220 F.3d at 1139).  Plaintiffs have not had the law enforced against them, and there is no pending threat of enforcement.  *Carrico*, 656 F.3d at 1006 (quoting *Lopez*, 630 F.3d at 786).  Indeed, the Attorney General cannot enforce the challenged law absent circumstances not pled here, and so is not a proper

defendant. Dkt. 32 at 19–23. Plaintiffs lack a concrete and particularized injury, and therefore Article III standing.

### B. Entity Plaintiffs lack associational and organizational standing.

Plaintiffs NWAAF and IIA assert to the Court their standing as organizations to sue on behalf of their constituents. *See* Dkt. 12-1 at 10. But they do not provide any analysis for either associational or organizational standing. Plaintiffs have not alleged any basis to sue "as the representative of [their] members." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977). Associational standing requires an organization to "allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Id.* They must "include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association," *United Food & Com. Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 555 (1996), and must identify this injured member with specific allegations. *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.,* 713 F.3d 1187, 1194 (9th Cir. 2013). Plaintiffs do not come close to this threshold requirement, and this failure to name any member affected by these laws is fatal to associational standing. *Summers v. Earth Island Inst.,* 555 U.S., 488, 498 (2009).

The same analysis applies to organizational standing: it too requires "(1) injury in fact, (2) causation, and (3) redressability." *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019). Beyond this, it requires an organizational plaintiff to

allege "(1) frustration of its organizational mission; and (2) diversion of its resources" to mitigate the effects of the challenged action. *Smith v. Pac. Props. And Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) (citation omitted). An organizational plaintiff must allege "more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Rather, there must be "*concrete* and *demonstrable* injury to the organization's activities—with the consequent drain on the organization's resources." *Id.* (emphasis added). Plaintiffs do not allege such injury.

Organizational plaintiffs allege nothing more than a bare ideological "injury"— for much the same reasons as the individual plaintiffs. They too do not allege the specific intent necessary to commit the crime. Dkt. 1 ¶¶ 48–57. They nowhere allege an intent to engage in a specific plan that would violate the law. *Id.* The entity Plaintiffs themselves have pled no injury, and their claims should be dismissed for lack of standing.

## C.   Plaintiffs' claims are barred by the Eleventh Amendment.

Even beyond the lack of an injury in fact, the Attorney General's inability to enforce the statute means he is not a proper party. Plaintiffs' suit against the Attorney General is barred by sovereign immunity because Idaho Code § 18-623 provides no legal authority to initiate prosecutions. Sovereign Immunity is a jurisdictional defense as provided by the Eleventh Amendment. U.S. CONST. amend. XI. "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States." *Id.*

The potentially available exception to sovereign immunity—an official capacity suit for prospective relief under *Ex parte Young*, 209 U.S. 123 (1908)—does not apply here. Whether a state official is appropriately named under *Young* overlaps with the traceability and redressability components of standing doctrine in the Ninth Circuit. *Sullivan v. Ferguson*, 636 F.Supp.3d 1276, 1287 (W.D. Wash. 2022) (citing *Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022); *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004). The *Ex parte Young* exception to Eleventh Amendment immunity in challenges to the constitutionality of a statute only applies where the named public official has some special relationship with the challenged statute. *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992); *see also Ex parte Young*, 209 U.S. 123, 155–56 (1908). The "special relation" "must be fairly direct; a generalized duty to enforce state law or general supervisory power . . . for enforcing the challenged provision will not subject an official to suit." *Eu*, 979 F.2d at 704; *see also McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010). That connection does not exist here.

Cases such as *Whole Women's Health v. Jackson* make clear that to have a redressable constitutional injury against a state official, that official must be in a position where he "may or must" take an enforcement action under law. 142 S.Ct. 522, 535 (2021). Mere contingencies, separate from the discretionary authority of the official, do not count. *Id.* at 534 (rejecting *Ex parte Young* exception as to Texas Attorney General). This lack of "real likelihood" is the problem here: the legislature has authorized the Attorney General to proceed of his own initiative only where local

prosecutors attempt to nullify the statute by declaring that they would never prosecute a crime under that section with no consideration of the facts and circumstances surrounding the crime.  Idaho Code § 18-623.  Where the legislature expresses that an act may be done under certain conditions, the omission of other conditions operates as an exclusion of other cases.  *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1055 (9th Cir. 2018).  Because the Attorney General is only expressly authorized to act under this section if referred by a county prosecutor or if a county prosecutor declines to perform his or her duties, the Attorney General is powerless to enforce the act in other circumstances.  Formal Att'y Gen. Op. 23-1.  An injunction against him would not address the harms alleged by Plaintiffs and their alleged injury traceable to him: the Act may only be enforced by county prosecutors yet unnamed.  *See Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1033 (6th Cir. 2022).

The Attorney General does not have the freestanding ability to enforce the criminal laws of the State of Idaho.  *Newman v. Lance*, 129 Idaho 98, 102-3, 922 P.2d 395, 399 (1996).  It is the legislature that prescribes the scope of the Attorney General's enforcement authority.  *See State v. Summer*, 139 Idaho 219, 224, 76 P.3d 963, 968 (Idaho 2003) (recognizing legislature's limitation on such authority).  This has been recognized by the Attorney General himself in an opinion delineating his enforcement authority: absent a motion by a county prosecutor, the Attorney General may not enforce general criminal law.  Att'y Gen. Op. 23-1 (April 27, 2023).  This is particularly true where, as here, the legislature has specified that the sole condition

in which the attorney general may enforce the Abortion Trafficking Law is where the "prosecuting attorney authorized to prosecute criminal violations of this section refuses to prosecute violations of any of the provisions of this section by any person *without regard to the facts or circumstances*." Idaho Code § 18-623(4) (emphasis added). Put another way, absent an attempt at prosecutorial nullification of this section, the Attorney General has no self-starting authority to enforce this section.

The Attorney General recently explained and clarified these principles in a formal opinion construing the limits on his own prosecutorial powers. Att'y Gen. Op. 23-1 (April 27, 2023). As he explained, he has prosecutorial authority only "if requested by county prosecutors and approved by a state district judge" or "if specifically conferred by the Legislature." *Id.* at 2. That definitive construction of the limits of his own powers supersedes the Ninth Circuit's interpretation of Idaho law in *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 920 (9th Cir. 2004), which stated that the Attorney General was a proper defendant to a challenge to the State's abortion laws because "the attorney general may in effect deputize himself (or be deputized by the governor) to stand in the role of a county prosecutor." Since neither of the two conditions for the Attorney General's prosecutorial authority—referral by a county prosecutor or a specific legislative grant—are met here, the Attorney General has no authority to stand in the role of the county prosecutor.

*First*, no county prosecutor has referred any case under the Abortion Trafficking Ban to the Attorney General, and Plaintiffs do not allege otherwise. The Attorney General would not have referral authority to prosecute violations of this

statute unless there were a specific case considered by a specific county prosecutor who asked the Attorney General for help. Plaintiffs do not allege that such a case exists. They want to violate the law, sure enough, but they do not allege any specific circumstances in which they intend to do so. Nor have they sued any of the county prosecutors who would have direct prosecutorial authority if they did violate the law. Instead, they have only sued the Attorney General, whose purely derivative authority has not yet been triggered.

*Second*, the limited legislative grant of prosecutorial authority to the Attorney General under the Abortion Trafficking Ban has not been triggered here. See Att'y Gen. Op. 23-1 at 2–3. That limited authority is still contingent on actions by county prosecutors: he "has the authority, at [his] sole discretion, to prosecute a person for a criminal violation of this section if the prosecuting attorney authorized to prosecute criminal violations of this section refuses to prosecute violations of any of the provisions of this section by any person without regard to the facts or circumstances." Idaho Code § 18-623(4) (emphasis added). Thus, the Attorney General does not have any prosecutorial authority unless a county prosecutor first refuses to exercise his or her authority. Plaintiffs have alleged no facts that indicate that any prosecutor in Idaho has so refused to enforce this section of code. Indeed, none have. The Attorney General thus lacks any prosecutorial authority under the Abortion Trafficking Ban at this time.

Because the Attorney General would have authority under this statute only based on actions of county prosecutors that have not yet occurred, he is not a proper defendant under *Ex parte Young*, and retains his Eleventh Amendment immunity.

## CONCLUSION

For these reasons, the Court should dismiss the Complaint for failure to state a claim and for lack of jurisdiction.  The Attorney General reserves his right to seek attorneys' fees under 42 U.S.C. § 1988 for actions "found to be unreasonable, frivolous, meritless, or vexatious."  *Legal Servs. of N. Cal., Inc. v. Arnett*, 114 F.3d 135, 141 (1997) (cleaned up).

DATED:  September 12, 2023

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


By*:*   /s/ *James E. M. Craig*
          JAMES E. M. CRAIG
          Deputy Chief, Civil Litigation and
          Constitutional Defense

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 12, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Cristina Sepe
cristina.sepe@atg.wa.gov

Emily A MacMaster
emacmaster07@gmail.com
emily@macmasterlaw.com

Emma Grunberg
emma.grunberg@atg.wa.gov

Wendy Olson
wendy.olson@stoel.com
docketclerk@stoel.com
emina.hasonovic@stoel.com
hillary.bibb@stoel.com
karissa.armbrust@stoel.com
kelly.tonikin@stoel.com
tracy.horan@stoel.com

Jamila Asha Johnson
jjohnson@lawyeringproject.org

Kelly O'Neill
koneill@lagalvoice.org

Paige Butler Suelzle
psuelzle@lawyeringproject.org

Wendy S. Heipt
wheipt@legalvoice.org

*Counsel for Plaintiffs*

   /s/ *James E. M. Craig*
JAMES E. M. CRAIG
Chief, Civil Litigation and
Constitutional Defense