WENDY J. OLSON, Bar No. 7634
wendy.olson@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000

WENDY S. HEIPT (admitted pro hac vice)
wheipt@legalvoice.org
LEGAL VOICE
907 Pine Street, #500
Seattle, WA  98101
Telephone:  206.954.6798

KELLY O'NEILL, Bar No. 9303
koneill@legalvoice.org
LEGAL VOICE
P.O. Box 50201
Boise, ID 83705
Telephone: 208.649.4942

JAMILA A. JOHNSON (admitted pro hac vice)
jjohnson@lawyeringproject.org
THE LAWYERING PROJECT
3157 Gentilly Blvd. #2231
New Orleans, LA  70122
Telephone: 347.706.4981

PAIGE SUELZLE (admitted pro hac vice)
psuelzle@lawyeringproject.org
THE LAWYERING PROJECT
2501 SW Trenton Street #1097
Seattle, WA 98106
Telephone: 347.515.6073

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LOURDES MATSUMOTO, NORTHWEST ABORTION ACCESS FUND, and INDIGENOUS IDAHO ALLIANCE, <br><br> Plaintiffs, <br><br> v. <br><br> RAÚL LABRADOR, in his capacity as the Attorney General for the State of Idaho, <br><br> Defendant. | Case No. 1:23-cv-00323-DKG <br><br> PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

FACTUAL BACKGROUND .................................................................................... 1

ARGUMENT ........................................................................................................... 2

I.    PLAINTIFFS' COMPLAINT STATES FOUR CLAIMS FOR WHICH RELIEF
      CAN BE GRANTED. ..................................................................................... 3

      A.    Plaintiffs Properly Pled Their Vagueness and First Amendment Claims. ............. 3

      B.    Plaintiffs Adequately Pled Their Interstate Travel Claim. .................................... 6

            1.    Plaintiffs Pled a Viable Cause of Action Because They Show
                  Impeding Travel Is the Predominant Purpose of the Law. ....................... 7

            2.    The Abortion Travel Ban Impedes Plaintiffs' Right to Travel. ................. 8

            3.    Plaintiffs' Claims Neither Invite nor Require the Invalidation of
                  Sex Trafficking Statutes. ........................................................................ 10

      C.    Plaintiffs Have Sufficiently Alleged a Claim for a Right to Intrastate
            Travel. ................................................................................................................. 11

II.   PLAINTIFFS PROPERLY INVOKE FEDERAL SUBJECT MATTER
      JURISDICTION. ........................................................................................... 13

      A.    Plaintiff Matsumoto, as an Individual, Has Standing. ....................................... 14

      B.    NWAAF and IIA Have Organizational Standing. ............................................. 16

      C.    Idaho Attorney General Raúl Labrador Is the Proper Defendant. ...................... 18

CONCLUSION ...................................................................................................... 19

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Animal Legal Def. Fund v. Wasden*,
   878 F.3d 1184 (9th Cir. 2018) ............................................................................5

*Ariz. Right to Life Pol. Action Comm. v. Bayless*,
   320 F.3d 1002 (9th Cir. 2003) ...........................................................................14

*Ashcroft v. ACLU*,
   535 U.S. 564 (2002) ............................................................................................5

*Att'y Gen. of N.Y. v. Soto-Lopez*,
   476 U.S. 898 (1986) ....................................................................................6, 7, 9

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979) ..........................................................................................14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................3

*Cal. Tchrs. Ass'n v. State Bd. of Educ.*,
   271 F.3d 1141 (9th Cir. 2001) .............................................................................4

*Cal. Trucking Ass'n v. Bonta*,
   996 F.3d 644 (9th Cir. 2021) .............................................................................15

*Coal. to Defend Affirmative Action v. Brown*,
   674 F.3d 1128 (9th Cir. 2012) ...........................................................................18

*Crandall v. Nevada*,
   73 U.S. 35 (1867) ....................................................................................6, 8, 9, 10

*Culinary Workers Union, Loc. 226 v. Del Papa*,
   200 F.3d 614 (9th Cir. 1999) .............................................................................18

*East Bay Sanctuary Covenant v. Biden*,
   993 F.3d 640 (9th Cir. 2021) .............................................................................17

*East Bay Sanctuary Covenant v. Trump*,
   950 F.3d 1242 (9th Cir. 2020) ...........................................................................14

*Edwards v. California*,
   314 U.S. 160 (1941) ........................................................................................8, 9

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) ............................................................................................4

# TABLE OF AUTHORITIES
(continued)

Page

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982).................................................................................................17

*Idaho v. Coeur d'Alene Tribe,*
    49 F. Supp. 3d 751 (D. Idaho 2014) ........................................................................4

*Johnson v. United States,*
    576 U.S. 591 (2015).................................................................................................4

*Kent v. Dulles,*
    357 U.S. 116 (1958)...............................................................................................11

*King v. New Rochelle Mun. Hous. Auth.,*
    442 F.2d 646 (2d Cir. 1971)..................................................................................12

*Klein v. City of San Clemente,*
    584 F.3d 1196 (9th Cir. 2009) ...............................................................................16

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994)...............................................................................................13

*Kolender v. Lawson,*
    461 U.S. 352 (1983).................................................................................................4

*Laird v. Tatum,*
    408 U.S. 1 (1972)...................................................................................................17

*Larez v. Holcomb,*
    16 F.3d 1513 (9th Cir. 1994) .................................................................................13

*Lopez v. Candaele,*
    630 F.3d 775 (9th Cir. 2010) ...........................................................................14, 17

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992)...............................................................................................14

*Matsuo v. United States,*
    586 F.3d 1180 (2009)...............................................................................................7

*Maya v. Centex Corp.,*
    658 F.3d 1060 (9th Cir. 2011) ...............................................................................14

*Mecinas v. Hobbs,*
    30 F.4th 890 (9th Cir. 2022) ..................................................................................18

# TABLE OF AUTHORITIES
(continued)

**Page**

*Nunez by Nunez v. City of San Diego*,
114 F.3d 935 (9th Cir. 1997) ...........................................................................11, 12

*Papachristou v. City of Jacksonville*,
405 U.S. 156 (1972)..............................................................................................11

*Planned Parenthood of Idaho, Inc. v. Wasden*,
376 F.3d 908 (9th Cir. 2004) ..........................................................................18, 19

*Preminger v. Peake*,
552 F.3d 757 (9th Cir. 2008) ...............................................................................16

*Ramos v. Town of Vernon*,
353 F.3d 171 (2d Cir. 2003)..................................................................................11

*Saenz v. Roe*,
526 U.S. 489 (1999)............................................................................................6, 9

*Shapiro v. Thompson*,
394 U.S. 618 (1969), *overruled on other grounds by*
*Edelman v. Jordan*, 415 U.S. 651 (1974) ..............................................................6

*Tingley v. Ferguson*,
47 F.4th 1055 (9th Cir. 2022) ....................................................................4, 14, 15

*Unified Data Servs., LLC v. Fed. Trade Comm'n*,
39 F.4th 1200 (9th Cir. 2022) ..............................................................................14

*United States v. Guest*,
383 U.S. 745 (1966)............................................................................................6, 7

*United States v. Stevens*,
559 U.S. 460 (2010)................................................................................................5

*United States v. Wheeler*,
254 U.S. 281 (1920)..............................................................................................12

*Valle del Sol Inc. v. Whiting*,
732 F.3d 1006 (9th Cir. 2013) ........................................................................16, 17

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977)..............................................................................................16

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ..............................................................................13

## TABLE OF AUTHORITIES
(continued)

Page

*Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold &*
   *Easement in the Cloverly Subterranean Geological Formation,*
   524 F.3d 1090 (9th Cir. 2008) ............................................................................ 3

*Winter v. Nat. Res. Def. Council, Inc.,*
   *555 U.S. 7 (2008)* ............................................................................................... 4

*Woodrum v. Woodward Cnty., Okla.,*
   866 F.2d 1121 (9th Cir. 1989) ........................................................................... 13

*Ex parte Young,*
   209 U.S. 123 (1908) ..................................................................................... 18, 19

*Zobel v. Williams,*
   457 U.S. 55 (1982) (Brennan, J., concurring) .................................................... 6

**Statutes**

Ala. Code § 26-23H-4 ........................................................................................... 10

Ark. Code Ann. § 5-61-304 ................................................................................... 10

Idaho Code § 18-622 ............................................................................................. 10

Idaho Code § 18-623 ..................................................................................... passim

Ky. Rev. Stat. Ann. § 311.772 .............................................................................. 10

La. Stat. Ann. § 40:1061 ....................................................................................... 10

Miss. Code Ann. § 41-41-45 .................................................................................. 10

Mo. Rev. Stat. § 188.017 ...................................................................................... 10

Nev. Rev. Stat. § 201.301 ..................................................................................... 10

Okla. Stat. Ann. tit. 21, § 861 ............................................................................... 10

S.D. Codified Laws § 22-17-5.1 ........................................................................... 11

Tenn. Code Ann. § 39-15-213 .............................................................................. 11

Tex. Health & Safety Code Ann. § 170A.002 ...................................................... 11

W. Va. Code § 16-2R-3 ......................................................................................... 11

# TABLE OF AUTHORITIES
(continued)

**Page**

Wis. Stat. § 940.04 .............................................................................................11

**Rules**

Fed. R. Civ. P. 11 ...............................................................................................13

Fed. R. Civ. P. 12(b)(1).................................................................................3, 13

Fed. R. Civ. P. 12(b)(6)...................................................................................3, 4

**Constitutional Provisions**

U.S. Const. amend. I ................................................................................. passim

U.S. Const. amend. XI ..................................................................................13, 18

U.S. Const. amend. XIV ...............................................................................2, 5

U.S. Const. amend. XIV, Due Process Clause...........................................4, 16

**Other Authorities**

S.B. 1, 122nd Leg., 1st Spec. Sess. (Ind. 2022).............................................10

S.B. 2150, 68th Leg. Sess., Reg. Sess. (N.D. 2023) .......................................10

Six weeks after Plaintiffs filed a motion for preliminary injunctive relief, more than a month after this Court extended the time for Defendant to oppose the motion for preliminary injunctive relief and allowed him 10 additional pages to respond, and after that motion was fully briefed by the parties, Defendant filed a motion to dismiss. Dkt. 35. In his memorandum in support of his motion (Dkt. 35-1), Defendant incorporates his arguments from his opposition to the motion for preliminary injunctive relief and adds a bare-boned and unsupported argument seeking to dismiss Plaintiffs' interstate and intrastate right-to-travel claims. Defendant also challenges this Court's subject matter jurisdiction and Plaintiffs' standing.

Defendant's arguments were not persuasive in opposition to Plaintiffs' motion for preliminary injunctive relief, and they are not persuasive here. Plaintiffs' complaint set forth sufficient facts to support each of their claims, this Court has jurisdiction, and Plaintiffs handily demonstrate standing. This Court should deny Defendant's motion to dismiss in its entirety.

## FACTUAL BACKGROUND

Plaintiffs filed their complaint on July 11, 2023, bringing four claims challenging the constitutionality of Idaho Code § 18-623. Dkt. 1. Plaintiffs are two organizations with long histories of assisting pregnant persons seeking abortion care, including minors, and an individual with a long history of working with sexual violence survivors, including minors, and with advocates who assist pregnant minors. *Id.* at ¶¶ 1-6. They are all helpers who are unsure what conduct Idaho Code § 18-623 prohibits, and they are unsure whether they will be prosecuted under that statute if they work with minors in any way to obtain abortions in states where abortions remain legal. *Id.* at ¶¶ 43, 47, 49-52, 67-68. The complaint shows that these helpers have previously provided information to pregnant minors regarding lawful abortion. They have also assisted in providing travel funds and travel logistics and have helped transport minors who

sought abortion care to medical providers. *Id.* at ¶¶ 1-6, 26, 42-57. The complaint further alleges that minors will "need to rely on trusted adults to drive them from Boise, or other cities in the Treasure Valley" to medical appointments in states where those minors are lawfully permitted to make decisions about their own medical care. *Id.* at ¶ 26. And Plaintiffs detailed the explosion of abortion travel since the abortion ban. *Id.* at ¶¶ 23-25.

Plaintiffs also pled that they wish to continue to assist people, including minors, access legal abortion services outside of Idaho. *Id.* at ¶ 108 ("Plaintiffs seek to continue helping pregnant minors in Idaho travel out of state for lawful abortions but face an imminent threat of prosecution under the Abortion Travel Ban. They fear prosecution for traveling with a pregnant minor from Idaho into another state."). And that they have put all of these activities on hold because they are unsure what conduct the Abortion Travel Ban punishes and whether they will be prosecuted. *Id.* at ¶¶ 42-57, 67-68. Plaintiffs all explained that speaking with minors about abortion, and helping minors and others access legal abortion care, is an integral part of their missions, what they are known for in the communities in which they work, why many donors support them, and an expression of their sincerely held beliefs. *Id.* at ¶¶ 1-6, 40-57, 67-68. In short, they allege in their complaint that Idaho Code § 18-623 chills them and the activities that form their individual and organizational missions and infringes on their interstate and intrastate right to travel.

## ARGUMENT

The complaint properly alleges claims for violation of Plaintiffs' Fourteenth Amendment rights because the statute is vague, violates Plaintiffs' right to interstate travel, violates Plaintiffs' right to intrastate travel, and violates Plaintiffs' First Amendment rights of speech and association. In addition, all Plaintiffs allege sufficient imminent injury redressable through the

injunctive relief sought in the complaint. Nonetheless, Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs in their complaint fail to state any claim on which relief can be granted and, under Federal Rule of Civil Procedure 12(b)(1), arguing that this Court lacks subject matter jurisdiction. Both bases for a motion to dismiss fail. This Court should deny Defendant's motion to dismiss in full.

## I.   PLAINTIFFS' COMPLAINT STATES FOUR CLAIMS FOR WHICH RELIEF CAN BE GRANTED.

Dismissal for failure to state a claim under Rule 12(b)(6) is appropriate only where the Plaintiffs fail to allege enough facts in their complaint to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing whether the Plaintiffs have met this burden, the Court may only consider allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1096 (9th Cir. 2008). The Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the Plaintiffs. *Id.*

### A.   Plaintiffs Properly Pled Their Vagueness and First Amendment Claims.

For their motion to dismiss Plaintiffs' vagueness (Claim One) and First Amendment (Claim Four) claims, Defendants rely only on their opposition to Plaintiffs' motion for preliminary injunctive relief. Dkt. 35-1 at 3-4. This approach fails for two reasons. First, Plaintiffs' motion for preliminary injunctive relief is governed by a different standard than Defendant's motion to dismiss for failure to state a claim. On a motion for preliminary injunctive relief, the moving party must show "(1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of

equities tips in favor of the moving party; and (4) that an injunction is in the public interest."

*Idaho v. Coeur d'Alene Tribe*, 49 F. Supp. 3d 751, 762 (D. Idaho 2014) (citing *Winter v. Nat.*

*Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Whether a complaint states a claim on which

relief can be granted is governed by a lesser bar. Defendant fails to show (or argue) how

Plaintiffs' vagueness and First Amendment claims fail to state a claim on which relief can be

granted. Defendant's Rule 12(b)(6) motion to dismiss Plaintiffs' vagueness and First

Amendment claims should be denied for this reason alone.

Second, Plaintiffs' complaint easily meets the Rule 12(b)(6) standard for its vagueness

and First Amendment claims. A criminal law that is so vague that it "fails to give ordinary

people fair notice of the conduct it punishes, or so standardless that it invites arbitrary

enforcement" violates the Fourteenth Amendment Due Process Clause. *Johnson v. United States*,

576 U.S. 591, 595 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983)). The

operative question is whether a reasonable person would know what is prohibited by the law.

*Tingley v. Ferguson*, 47 F.4th 1055, 1089 (9th Cir. 2022). Vague statutes are particularly

objectionable when, as here, they "involve sensitive areas of First Amendment freedoms"

because "they operate to inhibit the exercise of those freedoms." *Cal. Tchrs. Ass'n v. State Bd. of*

*Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001) (citing *Grayned v. City of Rockford*, 408 U.S. 104,

108-09 (1972)).

The complaint adequately alleges that Idaho Code § 18-623 is vague. Dkt. 1 at ¶¶ 60-68,

72.  For example, the complaint alleges that the "statute purports to make criminal where one

'procures' an abortion or 'obtains' an abortion-inducing medication, both completed acts, but

also purports to prohibit actions that occur well before an abortion takes place such as recruiting,

harboring, or transporting. A person of ordinary intelligence would be unable to identify at what

point she violates the statute, and at what point ordinary counseling or mentoring a pregnant minor, or traveling with such a minor within Idaho, may cross a line into attempt." *Id.* at ¶ 62. It further alleges that "Plaintiff Matsumoto is unsure of what conduct Idaho Code § 18-623 prohibits. But for the statute's lack of clarity over whether she would be prosecuted, she would assist minors in traveling to Oregon or Washington getting abortions in states where abortion remains legal," *id.* at ¶ 67, and that "Plaintiffs NWAAF and IIA likewise are unsure of what conduct Idaho Code § 18-623 prohibits. They wish to continue all of their activities that assist pregnant Idaho minors in obtaining abortions in states where abortion is legal but are uncertain whether they will be prosecuted for such actions," *id.* at ¶ 68. These allegations sufficiently state a claim that Idaho Code § 18-623 fails to give ordinary people fair notice of the conduct it punishes.

The First Amendment guarantees the rights to free speech, assembly, association, and petition. U.S. Const. amends. I, XIV; *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1193 (9th Cir. 2018). Further, the "'First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)). Thus, Plaintiffs have First Amendment rights to associate freely with each other and with pregnant Idahoans and to engage in speech and expressive conduct, including by providing information, funding, or practical support for pregnant Idahoans traveling to access out-of-state abortion care that is legal where rendered. The complaint sets forth sufficient facts alleging violations of each of these First Amendment rights. Dkt. 1 at ¶¶ 40, 41, 43, 50, 56, 82-89. For example, the complaint alleges "each Plaintiff engages in protected First Amendment activities to share and support these messages and missions. Each Plaintiff also seeks to convey accurate and complete

information about minors' lawful options when faced with a pregnancy." *id*. at ¶ 41, and that "Plaintiffs' provision of information regarding abortion access to pregnant persons in Idaho, including pregnant minors, is likewise speech and is protected by the First Amendment. . . . Idaho Code § 18-623 infringes on these rights by criminalizing speech about lawful activity," *id*. at ¶ 85. These allegations sufficiently state a claim that Idaho Code § 18-623 infringes on Plaintiffs' First Amendment speech and association rights.

Thus, this Court should deny Defendant's motion to dismiss Plaintiffs' vagueness and First Amendment claims for failure to state a claim upon which relief can be granted.

## B.     Plaintiffs Adequately Pled Their Interstate Travel Claim.

The U.S. Supreme Court has firmly established and repeatedly recognized a right to travel. *Zobel v. Williams*, 457 U.S. 55, 67 (1982) (Brennan, J., concurring); *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969), *overruled on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974). It is a right that ensures people can enter and leave any state. *Saenz v. Roe*, 526 U.S. 489, 500 (1999). The right to travel is "so elementary" that it inherently accompanies the Union that the Constitution established. *United States v. Guest*, 383 U.S. 745, 757-58 (1966). How else could a loose confederation of states be transformed into one nation? *See Zobel*, 457 U.S. at 67; *Att'y Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 902 (1986) (noting "the important role [the right to travel] . . . has played in transforming many States into a single Nation"); *Crandall v. Nevada*, 73 U.S. 35, 43 (1867) ("The people of these United States constitute one nation."). The right to travel has three components, and Plaintiffs agree with Defendant that only the first component is active in this litigation—the right to travel freely to and from any state. *See* Dkt. 1 at ¶¶ 103-04; Dkt. 35-1 at 11. That, unfortunately, is where the parties' agreement ends.

1.    **Plaintiffs Pled a Viable Cause of Action Because They Show Impeding Travel Is the Predominant Purpose of the Law.**

Plaintiffs may establish a right-to-travel violation by showing that the primary or predominant object of the law is to restrict travel or punish those who exercise their rights. *Soto-Lopez*, 476 U.S. at 903; *see also Guest*, 383 U.S. at 760. Strangely, Defendant in his motion asserts that Plaintiffs must establish actual deterrence. Dkt. 35-1 at 11. In fact, that is just one of three ways Plaintiffs may establish a right-to-travel claim. *Id.*[1] Defendant's omission of these additional options for showing a violation is suspect, as they are omitted despite being in the same sentence in *Soto-Lopez* that Defendant cites in his motion.[2]

Plaintiff's complaint sufficiently alleges that Idaho Code § 18-623's primary objective is to impede travel or punish those who exercise their rights. *See* Dkt. 1 at ¶ 106 ("The intent behind the passage of the Abortion Travel Ban was to impermissibly restrict the travel of both Plaintiffs and the pregnant minors they serve"). Plaintiffs also presented additional support for this contention. For instance, Plaintiffs allege that Representative Barbara Ehardt testified to the purpose of the legislation during the March 27, 2023, Senate State Affairs Committee hearing, stating, "it's all about parental permission, taking a minor from Idaho and trafficking that minor to another state to receive an abortion." *Id.* at ¶ 12. They further alleged that Governor Brad Little explained the legislation he signed as seeking to "prevent unemancipated minor girls from being taken across state lines for an abortion without the knowledge and consent of her parent or

---

[1] Defendant also omits the third way, by showing """"any classification which serves to penalize the exercise of that right."""" *Soto-Lopez*, 476 U.S. at 903 (citation omitted).

[2] The only other case Defendant cites in his motion to dismiss also explicitly recognizes that a plaintiff can succeed by establishing that the primary objective of the law at issue is to impede travel, and yet he inexplicably argues actual deterrence is required. *Matsuo v. United States*, 586 F.3d 1180, 1182 n.2 (2009) ("Plaintiffs have provided no evidence that 'impeding travel is [the Act's] primary objective,' so we won't address that final prong of *Soto–Lopez*." (alteration in original; citation omitted)); *see also* Dkt. 35-1 at 11.

guardian." *Id.* at ¶ 13. Plaintiffs have more than sufficiently laid out a *prima facie* case, and discovery will allow them to further establish that the primary objective of the law is to impede travel or punish those who would exercise their right to travel.

### 2.      The Abortion Travel Ban Impedes Plaintiffs' Right to Travel.

The Abortion Travel Ban interferes with Plaintiffs' right to travel, contrary to Defendant's assertions. Notably he cites no cases for his position that there cannot be a right to travel infringed here. Dkt. 35-1 at 4-5. The law is clear, however, that prohibiting a person from traveling with another across state lines does impede the driver's right to travel. *Edwards v. California*, 314 U.S. 160, 174 (1941); *Crandall*, 73 U.S. at 43.

In *Edwards*, California resident Fred Edwards drove from California to Texas in late December 1939 with the goal of collecting his brother-in-law and then driving him back to California. *Edwards*, 314 U.S. at 171. His brother-in-law had $20 to his name, and because of his indigency, he believed that a family move to California would offer him new opportunities. *Id.* At the time, California law criminalized helpers like Mr. Edwards, specifically making it unlawful to transport indigent people into the state. *Id.* The trial court sentenced Mr. Edwards to six months in the county jail for coming to the aid of his brother-in-law. *Id.*

The U.S. Supreme Court found that no single state could "isolate itself" by prohibiting indigent people from entering and held that fundamental constitutional rights were at play—rights we now call "the right to travel." *Id.* at 173. The Court was not unsympathetic to the "grave and perplexing social and economic dislocation" that led California to seek to use its police power to restrict travel. *Id.* It was, after all, during what would be later known as the Great Depression. However, the state's interests in exercising its police power, no matter the import of

the goal, were not to be balanced against the importance of preserving the free movement of

people across state lines, and the Court ultimately found the restriction impermissible. *Id.*[3]

Similarly, *Crandall* also establishes that Plaintiffs have had their right to travel impeded.

In 1865, Nevada enacted a law that levied a tax of $1 upon any person leaving the state by

railroad, stagecoach, or other vehicle for hire. *Crandall*, 73 U.S. at 35-39. Nevada argued that

this tax was "not a tax upon the passenger, but upon the business of the carrier who transports

him"—an argument rejected by the U.S. Supreme Court. *Id.* at 39. The Court found Nevada's

actions in conflict with the Constitution, discussing the havoc that would befall the nation if the

government could place such conditions on the right to leave a state. "The people of these United

States constitute one nation. They have a government in which all of them are deeply interested."

*Id.* at 43. The Court explained that it is against the principles of our nation to erect barriers to

leaving a state, as such a precedent would interfere with the activities of national citizenship. *Id.*

at 43-44. "[N]o power can exist in a State to obstruct this right that would not enable it to defeat

the purposes for which the government was established." *Id.* at 44.

In summary, Defendant's only arguments—that Plaintiffs can travel if (1) the passengers

in their vehicles are not young people on their way to abortion appointments (perhaps whether or

not that abortion actually happens) or (2) a parent somehow (and it is vague as to how) knows—

are contrary to established law. The state cannot restrict the types of passengers in one's car

when moving between states. *See Edwards*, 314 U.S. at 174. And it cannot condition exiting a

state on performance of some sort of act—whether it be paying $1 in *Crandall* or ensuring some

---

[3] Notably, each U.S. Supreme Court case cited by Defendant in his motion relating to the right to travel favorably cites to *Edwards*. *See* Dkt. 35-1 at 11 (citing *Saenz*, 526 U.S. at 500 (where the court discusses *Edwards*)); *Soto-Lopez*, 476 U.S. at 902, 903 (citing *Edwards*, 314 U.S. 160).

sort of parental knowledge here.[4] State laws that inhibit or restrict the free interstate movement

of their citizens interfere with this national project, "enabl[ing] [states] to defeat the purposes for

which the [national] government was established," a power that they "very clearly do not

possess." *Crandall*, 73 U.S. at 44, 49. By criminalizing interstate travel, the Abortion Travel Ban

violates these core, constitutional principles. Except in narrow, exceptional circumstances neither

present here nor argued by Defendant, Idaho cannot obstruct and penalize travel in this way. As

such, Defendant's motion to dismiss on this basis fails.

### 3.    Plaintiffs' Claims Neither Invite nor Require the Invalidation of Sex Trafficking Statutes.

In a few passing sentences, Defendant suggests that Plaintiffs' claims invite or require

invalidation of sex trafficking statutes. They do not. Sexual coercion and slavery are universally

condemned activities that constitute crimes in all 50 states.[5] Defendant's comparison of abortion

to these activities may reflect his personal values, but it ignores both reality and the laws of the

majority of states, where abortion is a lawful activity.[6] Indeed, in many states abortion access is

---

[4] Defendant repeatedly changes his interpretation of what this law requires. About half of the time, he classifies the statute as requiring notice to a parent. As is true with all the claims in this litigation, the right-to-travel claim is also affected by the significant confusion about what exactly this statute allows or does not allow. Dkt. 1 at ¶¶ 71-73. Plaintiffs also assert that their right to travel is being impacted by conditions it cannot reasonably predict. As a result, Plaintiffs do not know if they can travel in all the circumstances the statute may or may not permit, and therefore the statute at issue is indeed deterring travel that may be lawful but is not clear under the text of the statute. *See id.* Moreover, because of the confusion created by the disconnect between Defendant's briefs and his arguments, Plaintiffs are in an even more uncertain space.

[5] Defendant frequently ignores that sex trafficking and coerced sex work are not analogous because sex trafficking and coerced sex work are illegal in all 50 states, including Nevada. *See* Nev. Rev. Stat. § 201.301. Moreover, neither minor sex work nor forced labor is lawful anywhere in this country.

[6] Only 13 states criminalize most abortion. Ala. Code § 26-23H-4 (Alabama); Ark. Code Ann. § 5-61-304 (Arkansas); Idaho Code § 18-622 (Idaho); S.B. 1, 122nd Leg., 1st Spec. Sess. (Ind. 2022) (Indiana); Ky. Rev. Stat. Ann. § 311.772 (Kentucky); La. Stat. Ann. § 40:1061 (Louisiana); Miss. Code Ann. § 41-41-45 (Mississippi); Mo. Rev. Stat. § 188.017 (Missouri); S.B. 2150, 68th Leg. Sess., Reg. Sess. (N.D. 2023) (North Dakota); Okla. Stat. Ann. tit. 21, §

(continued . . .)

statutorily or constitutionally protected. A ruling that Idaho may not impose criminal liability on people who help their neighbors travel for the purpose of engaging in conduct lawful in the destination jurisdiction poses no threat to laws that prohibit transporting people for purposes that are unlawful everywhere. Defendant's slippery slope argument to the contrary is not supported by logic or by precedent. Moreover, the courts have never approved of a law in a right-to-travel challenge that criminalizes travel to engage in activity that is expressly lawful where it occurs.

### C.    Plaintiffs Have Sufficiently Alleged a Claim for a Right to Intrastate Travel.

Plaintiffs have also stated a claim that the Abortion Travel Ban infringes on their freedom of movement, Dkt. 1 at ¶¶ 76-78, which courts have also referred to as the right to intrastate travel. *See Ramos v. Town of Vernon*, 353 F.3d 171, 176 (2d Cir. 2003). "Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage. . . . It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values." *Kent v. Dulles*, 357 U.S. 116, 126 (1958).

In the Ninth Circuit, it is unquestionable that "[c]itizens have a fundamental right of free movement, 'historically part of the amenities of life as we have known them.'" *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997) (quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 164 (1972)). "'In all the [s]tates from the beginning down to the adoption of the Articles of Confederation the citizens thereof possessed the fundamental right, inherent in citizens of all free governments, peacefully to dwell within the limits of their respective [s]tates, to move at will from place to place therein, and to have free ingress thereto

---

861 (Oklahoma); S.D. Codified Laws § 22-17-5.1 (South Dakota); Tenn. Code Ann. § 39-15-213 (Tennessee); Tex. Health & Safety Code Ann. § 170A.002 (Texas); W. Va. Code § 16-2R-3 (West Virginia); Wis. Stat. § 940.04 (Wisconsin).

and egress therefrom . . . .'" *Id.* (alterations in original) (quoting *United States v. Wheeler*, 254 U.S. 281, 293 (1920)). This right of free movement necessarily entails not only the ability to cross state borders, but also the ability to move freely within a state. In fact, it defies logic to argue that a person can cross a state border, but that they are not permitted to reach that border by traveling within their home state. *See id.* at 946 (holding that in a challenge to a juvenile curfew ordinance, minors had a right to free movement); *King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646, 648 (2d Cir. 1971) ("It would be meaningless to describe the right to travel between states as a fundamental precept of personal liberty and not to acknowledge a correlative constitutional right to travel within a state.").

Plaintiffs have sufficiently alleged throughout their complaint their desire to travel within the state of Idaho to reach the border, and that their ability to do so is impacted by the Abortion Travel Ban. *See, e.g.*, Dkt. 1 at ¶ 26 ("Under Idaho Code § 18-623, the simple act of driving a minor to the Oregon border to get an abortion without the minor's parent or guardian knowing—or even providing advice on how to do that—could result in a mandatory minimum of two years and up to five years in prison."); *id.* at ¶ 42 ("Each of the Plaintiffs wishes to drive pregnant minors within the State of Idaho in furtherance of securing, for those who desire it, lawful abortion medical care, as one of many important services offered."). Plaintiffs' right to travel intrastate is implicated by the Abortion Travel Ban because they cannot exercise their rights to cross state borders to where abortion is lawful without first traveling within the state of Idaho. *See id.* at ¶ 118 ("In order to travel out of state, Plaintiffs must travel freely in state.").

The only argument raised by Defendant for why this Court should dismiss Plaintiffs' intrastate travel claim is that the Ninth Circuit has not yet directly recognized a right to intrastate travel. This is not grounds for dismissal. Plaintiffs are permitted to advance good-faith arguments

for extending or modifying the law. *See Woodrum v. Woodward Cnty., Okla.*, 866 F.2d 1121, 1127 (9th Cir. 1989) (discussing how the court is "[m]indful of the potential chilling effects on civil rights plaintiffs who argue in good faith for the modification or extension of rights and remedies under § 1983" when deciding to impose Rule 11 sanctions); *Larez v. Holcomb*, 16 F.3d 1513, 1522 (9th Cir. 1994) (holding that claims were not frivolous because the court "must exercise extreme caution in sanctioning attorneys under Rule 11, *particularly* where such sanctions emerge from an attorney's efforts to secure the court's recognition of new rights"). As stated, the Ninth Circuit has already recognized a right to free movement. Plaintiffs should have the opportunity to build their case through discovery.

## II.   PLAINTIFFS PROPERLY INVOKE FEDERAL SUBJECT MATTER JURISDICTION.

Rule 12(b)(1) provides that an action may be dismissed for lack of subject matter jurisdiction. Federal courts have "limited jurisdiction" and the plaintiff bears the burden to prove federal subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial 12(b)(1) motion involves an inquiry confined to the allegations in the complaint. Defendant here challenges the allegations in Plaintiffs' complaint, arguing that it fails to establish subject matter jurisdiction for three reasons: (1) Plaintiffs lack standing because they lack a cognizable injury; (2) the entity Plaintiffs lack associational and organizational standing; and (3) Plaintiffs' claims are barred by the Eleventh Amendment. Each argument fails.

To establish standing, a plaintiff must demonstrate "that (1) they have suffered an injury-in-fact" that is "'concrete and particularized' and 'actual and imminent,' (2) the alleged injury is 'fairly traceable' to the defendants' conduct, and (3) it is 'more than speculative' that the injury

is judicially redressable." *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1265 (9th Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "Organizations can assert standing on behalf of their own members or in their own right." *Id.* (citation omitted). "'Each element of standing "must be supported with the manner and degree of evidence required at the successive stages of the litigation."'" *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1209 (9th Cir. 2022) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011)).

### A.     Plaintiff Matsumoto, as an Individual, Has Standing.

Plaintiff Matsumoto has sufficiently alleged standing as an individual. It is well established that a plaintiff need not "'first expose himself to actual arrest or prosecution to be entitled to challenge the statute that he claims deters the exercise of his constitutional rights'" but may bring a pre-enforcement challenge seeking injunctive or declaratory relief where, as here, they face a "credible threat of prosecution." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (brackets and citation omitted). Pre-enforcement standing is particularly favored in cases like this one, involving violations of the First Amendment right to free speech. *Tingley*, 47 F.4th at 1066-67 ("The 'unique standing considerations' in the First Amendment context 'tilt dramatically toward a finding of standing' when a plaintiff brings a pre-enforcement challenge." (quoting *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010))); *see Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) ("In an effort to avoid the chilling effect of sweeping restrictions, the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences.").

The Ninth Circuit applies a three-factor inquiry to "determine whether a threat of enforcement is genuine enough to confer an Article III injury" for pre-enforcement standing: "(1) whether the plaintiff has a 'concrete plan' to violate the law, (2) whether the enforcement authorities have 'communicated a specific warning or threat to initiate proceedings,' and (3) whether there is a 'history of past prosecution or enforcement.'" *Tingley*, 47 F.4th at 1067 (citation omitted). Defendant ignores the facts and this binding precedent and instead argues that a plaintiff must allege "when, to whom, where, or under what circumstances" Plaintiffs intend to violate the statute, Dkt. 35-1 at 8, a proposition expressly rejected by the Ninth Circuit in *Tingley, see* 47 F. 4th at 1068 ("But we do not require plaintiffs to specify 'when, to whom, where, or under what circumstances' they plan to violate the law when they have already violated the law in the past." (citation omitted)). Finally, the Ninth Circuit has repeatedly recognized that the history of enforcement is entitled to "little weight" for recent laws, such that standing must be found where the other two factors are satisfied. *Id.* at 1069 (citation omitted); *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021).

Plaintiff Matsumoto has alleged facts necessary to establish standing for this pre-enforcement challenge on constitutional, and particularly First Amendment, grounds. Dkt. 1 at ¶¶ 1, 17-18, 42-43, 57, 67. Plaintiff Matsumoto has a concrete plan to violate the law because she wishes to engage in speech and conduct that is prohibited by the Abortion Travel Ban. Plaintiff Matsumoto alleges that Defendant's enforcement of Idaho Code § 18-623 will effectively bar her from assisting pregnant minors obtain lawful abortion care in Idaho's neighboring states. *Id.* at ¶¶ 42-43, 57, 67. She must choose between providing information, travel assistance, and shelter to pregnant minors in Idaho, and thereby risking criminal prosecution, or refrain from engaging in these constitutionally protected activities altogether. *Id.* As an individual, she faces a credible

threat of prosecution under the Abortion Travel Ban for the speech and acts she wishes to engage in. Thus, she will suffer imminent and concrete injuries to her rights protected by the First Amendment, the Fourteenth Amendment's Due Process Clause, and the rights to interstate and intrastate travel. *See Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009) (recognizing loss of First Amendment freedoms as a cognizable harm). In addition, these injuries are more than fairly traceable to Defendant's enforcement of Idaho Code § 18-623 and would be redressed by an order enjoining enforcement.

### B.      NWAAF and IIA Have Organizational Standing.

Because Plaintiff Matsumoto has established standing, the Court need not consider the standing of the organizational Plaintiffs. *See, e.g.*, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 n.9 (1977) ("Because of the presence of this plaintiff [with standing], we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit."). It is well settled that, where one plaintiff has standing to assert a claim for relief, a federal court need not consider the standing of other plaintiffs asserting the same claim. *Preminger v. Peake*, 552 F.3d 757, 764 (9th Cir. 2008) (the general rule applicable to federal court is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others). The organizational Plaintiffs assert all of the same claims here as Plaintiff Matsumoto. If the Court nevertheless elects to consider the standing of the organizational Plaintiffs, NWAAF and IIA have still satisfied the requirements of organizational standing, and Defendant misunderstands those requirements.

A constitutional challenge grows out of a genuine dispute where the allegedly unconstitutional statute interferes with the way a plaintiff would normally conduct its affairs. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 (9th Cir. 2013) (finding a case and controversy when a plaintiff planned to provide shelter and transportation for undocumented

people, which the challenged law purported to prohibit). The manner in which the unconstitutional statute interferes with the way a plaintiff would ordinarily conduct its affairs must be specifically pled, as was done here. *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"); *see also Lopez*, 630 F.3d at 790, 792 (finding no injury in fact because plaintiff had not "adequately proven his intent to violate the policy" at issue and that "self-censorship alone is insufficient to show injury"). Organizational Plaintiffs NWAAF and IIA have sufficiently pled that they have an injury that is "concrete and particularized" and "actual and imminent," and "fairly traceable" to Defendant's conduct, and judicially redressable through the relief sought. *See* Dkt. 1 at ¶¶ 1-6, 43, 47, 49-52, 67-68.

Defendant's insistence that to establish organizational standing Plaintiffs NWAAF and IIA must also specifically allege that they have diverted resources based on the unconstitutional features of the Abortion Travel Ban misunderstands Ninth Circuit case law and basic standing requirements. As set forth in *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662-63 (9th Cir. 2021), to determine whether organizational standing requirements have been satisfied, courts "'conduct the same inquiry as in the case of an individual: Has the plaintiff "alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction?"'" *Id.* at 662 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982)). While organizations *may* establish standing by showing a frustration of mission *and* diversion of resources, *id.* at 663, that does not mean that a direct showing of injury, without a diversion of resources, is insufficient. *See, e.g.*, *Valle del Sol Inc.,* 732 F.3d at 1015. Indeed, *East Bay Sanctuary Covenant v. Biden* and other Ninth Circuit cases that refer to frustration of mission and diversion of resources are interpreting the Supreme Court's directive from *Havens.*

Here, the allegations of Plaintiffs NWAAF and IIA establish a personal stake in the outcome of the controversy more than sufficient to warrant the invocation of federal court jurisdiction. Their missions have not just been frustrated, with respect to their assistance of and support for pregnant minors, their missions have been halted altogether by the unclear threat of prosecution under the Abortion Travel Ban. They have standing and this Court has subject matter jurisdiction.

### C.      Idaho Attorney General Raúl Labrador Is the Proper Defendant.

The Eleventh Amendment generally prohibits federal courts from hearing lawsuits brought against the state or its instrumentality in the absence of consent. *Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022) (citing *Culinary Workers Union, Loc. 226 v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999)). *Ex parte Young*, 209 U.S. 123 (1908), creates an exception for actions seeking "'injunctive relief against state officers in their official capacities for their alleged violations of federal law' so long as the state officer has 'some connection with enforcement of the act.'" *Mecinas*, 30 F.4th at 903 (quoting *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012)). In the Ninth Circuit, this "modest [connection] requirement" merely demands that the implicated state official have a relevant role that goes beyond "'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision.'" *Id.* at 903-04 (quoting *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004)).

Defendant argues nonetheless that this Court lacks subject matter jurisdiction because the Attorney General is not the proper Defendant and has disavowed any authority or intent to prosecute violations of Idaho Code § 18-623. Dkt. 35-1 at 12-14. Defendant's argument has been squarely rejected by the Ninth Circuit and by this Court. *Planned Parenthood of Idaho, Inc.*, 376 F.3d at 919 (even where the Attorney General does not have direct enforcement power, his assistance powers make it possible for him to have enforcement authority and bring him within

the exception in *Ex parte Young*); *Planned Parenthood Greater Nw.*, Memorandum Decision and Order, at 18-21 (July 31, 2023) (same). Here, where the statute at issue specifically provides authority for the Attorney General to enforce the law where a county prosecutor will not, the *Ex parte Young* exception is even more availing.

Defendant simply cites and relies on case law that does not set forth the applicable standard. Dkt. 35-1 at 12-13. He also improperly argues that his informal opinion construing the limits of his prosecutorial powers issued April 27, 2023, supersedes the Ninth Circuit's interpretation of his powers in *Wasden*. *Id.* at 13-14. Defendant identifies no authority for this proposition. Until and unless the Ninth Circuit overrules *Wasden* or establishes a different test for determining when an attorney general has sufficient connection to enforcement of a statute, Attorney General Labrador is the proper Defendant.

## CONCLUSION

For the reasons set forth above, this Court should deny Defendant's motion to dismiss.

DATED:  October 3, 2023.                    STOEL RIVES LLP


                                            /s/ Wendy J. Olson
                                            Wendy J. Olson


                                            LEGAL VOICE


                                            /s/ Wendy S. Heipt
                                            Wendy S. Heipt
                                            Kelly O'Neill


                                            THE LAWYERING PROJECT


                                            /s/ Jamila A. Johnson
                                            Jamila A. Johnson
                                            Paige Suelzle

                                            *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 3, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following person:

Lincoln Davis Wilson
Lincoln.wilson@ag.idaho.gov

James E.M. Craig
james.craig@ag.idaho.gov

Cristina Sepe
cristina.sepe@atg.wa.gov

Emma Grunberg
Emma.grunberg@atg.wa.gov

Emily MacMaster
emily@macmasterlaw.com

/s/ Wendy J. Olson
Wendy J. Olson